# EXHIBIT A

Distribution:
Dockets (2)               NDube
AEC PDR                   VAMoore
Local PDR                 DDavis
LWR 2-3 Rdg               WMiller, DR:OA
OGC (Paton)               SReed, EP
RO (3)                    GDittman, EP
BJones (4)                DMuller, EP
EIGoulbourne (2)          W.Regan, EP
ACRS (16)

Docket Nos. 50-438
         and  50-439

DEC 2 4 1974

Tennessee Valley Authority
Attn:  Mr. James E. Watson
       Manager of Power
818 Power Building
Chattanooga, Tennessee   37401

Gentlemen:

The Atomic Energy Commission has issued Construction Permits Nos.
CPPR-122 and CPPR-123 to the Tennessee Valley Authority authorizing
construction of Bellefonte Nuclear Plant, Units 1 and 2, two pressurized
water reactors.  The construction permits have been issued pursuant to
an Initial Decision by the Atomic Safety and Licensing Board.

Copies of the construction permits, the related notice, which has
been forwarded to the Office of the Federal Register for publication,
and the Initial Decision are enclosed.

                              Sincerely,

                              Original Signed by

                              A. Schwencer, Chief
                              Light Water Reactors Branch 2-3
                              Directorate of Licensing

Enclosures:
1.  Construction Permits
    Nos. CPPR-122 and CPPR-123
2.  Federal Register Notice
3.  Initial Decision— will be provided by SECY

ccs:  See next page

                    OGC                OGC(Antitrust)
                    W. D. Paton
                    12/23/74           12/5/74

                                                              L6

| OFFICE ▶ | x7886/LWR 2-3 | x7886/LWR 2-3 | x7886/LWR 2-3 | x6965/AD:EP | x7793/AD/LWR2 | x7370/DD:RP |
|---|---|---|---|---|---|---|
| SURNAME ▶ | EGoulbourne:rm | DDavis | ASchwencer | DMuller | VAMoore | AGiambusso |
| DATE ▶ | 11/25/74 | 11/26/74 | 11/26/74 | 12/10/74 | 12/17/74 | 12/24/74 |

Form AEC-318 (Rev. 9-53) AECM 0240           ☆ U. S. GOVERNMENT PRINTING OFFICE: 1974-526-166

Tennessee Valley Authority          – 2 –

ccs w/encl:                                          DEC 2 4 1974

William E. Garner, Esquire
Route 4, Box 354
Scottsboro, Alabama   35768

Alabama Development Office
State Office Building
Montgomery, Alabama   36104

Top of Alabama Regional Council
  of Governments
P. O. Box 308
City Hall – 6th Floor
Huntsville, Alabama   35801

Honorable John Reid
Mayor of the City of Scottsboro
City Hall
Scottsboro, Alabama   35768

Honorable Eugene Dutton
Mayor of the City of Hollywood
City Hall
Hollywood, Alabama

Mr. John Robins
Office of Planning & Budget
Room 615C
270 Washington Street, S. W.
Atlanta, Georgia   30334

Mr. Walter Lambert, Director
Office of Urban & Federal Affairs
321 Seventh Avenue, North
Nashville, Tennessee   37219

Mr. J. L. Church, Jr., Director
Bureau of Environmental Health Services
Tennessee Department of Public Health
Cordell Hull Building
Nashville, Tennessee   37219

Office of Urban & Federal Affairs
Suite 1025
Andrew Jackson State Office Building
Nashville, Tennessee   37219

Robert H. Marquis, Esquire
David G. Powell, Esquire
Tennessee Valley Authority
New Sprankle Building
Knoxville, Tennessee   37902

Lewis E. Wallace, Esquire
Alvin H. Gutterman, Esquire
Division of Law
Tennessee Valley Authority
New Sprankle Building
Knoxville, Tennessee   37902

Ira L. Myers, M.D.
State Health Officer
State of Alabama Department
  of Public Health
State Office Building
Montgomery, Alabama   36104

Mr. Bruce Blanchard, Director
Office of Environmental Projects Review
Department of Interior – Rm. 5321
18th & C Streets, N. W.
Washington, D. C.   20240

Mr. Sheldon Myers
ATTN:  Jack Anderson
Office of Federal Activities
Environmental Protection Agency
Rm. W-541 Waterside Mall
401 M Street, S. W.
Washington, D. C.   20460

U. S. Army Engineering District,
  Nashville
P. O. Box 1070
Nashville, Tennessee   37202

| OFFICE ▶ | | | | | | |
|---|---|---|---|---|---|---|
| SURNAME ▶ | | | | | | |
| DATE ▶ | | | | | | |

Tennessee Valley Authority          - 3 -

DEC   4 1974

ccs w/encl:  (cont'd)

Mr. James W. Warr
Alabama Water Improvement Commission
749 State Office Building
Montgomery, Alabama  36104

Mr. Charles B. Kelley
Department of Conservation
  & Natural Resources
Division of Game & Fish
84 North Union Street
Montgomery, Alabama  36104

| OFFICE ▶ | | | | | | |
|---|---|---|---|---|---|---|
| SURNAME ▶ | | | | | | |
| DATE ▶ | | | | | | |



UNITED STATES
## ATOMIC ENERGY COMMISSION
WASHINGTON, D.C. 20545

TENNESSEE VALLEY AUTHORITY
DOCKET NO. 50-438
BELLEFONTE NUCLEAR PLANT, UNIT 1
CONSTRUCTION PERMIT

Construction Permit No. CPPR-122

1.   The Atomic Energy Commission (the Commission) having found that:

    A.   The application for construction permit complies with the
requirements of the Atomic Energy Act of 1954, as amended, and
the rules and regulations of the Commission, there is reasonable
assurance that the activities authorized by the permit will be
conducted in compliance with the rules and regulations of the
Commission, and all required notifications to other agencies
or bodies have been duly made;

    B.   The Tennessee Valley Authority (the applicant) has described
the proposed design of the Bellefonte Nuclear Plant, Unit 1
(the facility), including, but not limited to, the principal
architectural and engineering criteria for the design and has
identified the major features or components incorporated
therein for the protection of the health and safety of the
public;

    C.   Such further technical or design information as may be required
to complete the safety analysis, and which can reasonably be
left for later consideration, will be supplied in the final
safety analysis report;

    D.   Safety features or components, if any, which require research
and development have been described by the applicant and the
applicant has identified, and there will be conducted, a
research and development program reasonably designed to
resolve any safety questions associated with such features or
components;

    E.   On the basis of the foregoing, there is reasonable assurance
that (i) such safety questions will be satisfactorily resolved
at or before the latest date stated in the application for
completion of construction of the proposed facility and (ii)
taking into consideration the site criteria contained in 10
CFR Part 100, the proposed facility can be constructed and
operated at the proposed location without undue risk to the
health and safety of the public;

- 2 -

F.  The applicant is technically qualified to design and construct the proposed facility;

G.  The applicant is financially qualified to design and construct the proposed facility;

H.  The issuance of a permit for the construction of the facility will not be inimical to the common defense and security or to the health and safety of the public; and

I.  After weighing the environmental, economic, technical and other benefits of the facility against environmental and other costs and considering available alternatives, the issuance of a construction permit subject to the conditions for protection of the environment set forth herein is in accordance with 10 CFR Part 50, Appendix D of the Commission's regulations and all applicable requirements have been satisfied.

2.  Pursuant to Section 103 of the Atomic Energy Act of 1954, as amended (the Act), and Title 10, Chapter I, Code of Federal Regulations, Part 50, "Licensing of Production and Utilization Facilities," and pursuant to the Initial Decision of the Atomic Safety and Licensing Board, dated December 23, 1974, the Atomic Energy Commission (the Commission) hereby issues a construction permit to the applicant for a utilization facility designed to operate at 3600 megawatts thermal as described in the application and amendments thereto (the application) filed in this matter by the applicant and as more fully described in the evidence received at the public hearing upon the application. The facility, known as the Bellefonte Nuclear Plant, Unit 1 will be located on the applicant's site in Jackson County, Alabama.

3.  This permit shall be deemed to contain and be subject to the conditions specified in Sections 50.54 and 50.55 of said regulations; is subject to all applicable provisions of the Act, and rules, regulations, and orders of the Commission now or hereafter in effect, and is subject to the conditions specified or incorporated below:

A.  The earliest date for the completion of the facility is June 1, 1979, and the latest date for completion is December 1, 1979.

B.  The facility shall be constructed and located at the site as described in the application, in Jackson County, Alabama.

C.  This construction permit authorizes the applicant to construct the facility described in the application and the hearing record, in accordance with the principal architectural and

- 3 -

engineering criteria and environmental protection commitments
set forth therein.

D.   This facility is subject to the following conditions for the
protection of the environment:

(1)   An approved sampling program, as outlined in Section
5.4.2.5 and 6.2.1.1 of the AEC staff's Final Environ-
mental Statement (SFES) will be implemented to obtain
data necessary for assessment of the significance of the
loss of icthyoplankton through entrainment in the pro-
posed intake.

(2)   The data obtained in the program specified in (1) above
shall be submitted to the staff for review on a continuing
basis and shall form the basis for a final decision on
the acceptability of the proposed intake.   The results
will be subjected to thorough evaluation and a decision
on the intake acceptability will be made on the basis of
a cost-benefit analysis which will include both projected
losses of fisheries resources on the entire reservoir and
real and projected costs for the plant.

(3)   The applicant shall not use the broadcast application of
herbicides on the right-of-way covered under Step One
(Section 3.3, SFES) of the transmission line construction
plan.   (Section 5.4.1 and Appendix B, SFES).

The applicant shall conduct studies which will assess the
impacts of various alternative methods of transmission
line construction and maintenance, and prior to any
construction of Steps Two and Three (Section 3.3 SFES),
the applicant shall submit (1) for staff evaluation the
results of these studies and (2) an updated version of
its proposed clearing and maintenance methods for staff
approval.   This submittal should include analysis of cost
experience factors as well as environmental impacts such
as the effects on vegetation, wildlife and soil stability.
(Sections 4.1.2 and 9.2.4 SFES)

(4)   Prior to initiating construction of the discharge facility,
the applicant shall provide the results of thermal-
hydraulic analytical studies and plans for physical
modelling experiments to be conducted in support of the
final design and location of the plant cooling water
discharge. (Sections 5.4.2.3.1 and 9.2.5 SFES)

- 4 -

(5) The applicant shall take the necessary mitigating actions, including those summarized in Section 4.4, SFES, during construction of the plant and associated transmission lines to avoid unnecessary adverse environmental impacts from construction activities.

(6) A control program shall be established by the applicant to provide for a periodic review of all construction activities to assure that those activities conform to the environmental conditions set forth in the construction permit.

(7) Before engaging in a construction activity which may result in a significant adverse environmental impact that was not evaluated or that is significantly greater than that evaluated in the SFES, the applicant shall provide written notification to the Director of Licensing.

(8) The applicant may develop either, but not both, of the two alternative access routes to the plant as the permanent plant access road; provided that approximately 500 acres of land located on the northeast tip of Bellefonte peninsula will be developed as a "generally dispersed recreation area" as defined in Tennessee Valley Authority's Recreation Plan, Volume 1, Methodology (1973); and that the proposed recreation area will be developed consistent with maximum "peak hour recreation visits" of approximately 800 visits within a two mile radius of the plant for the life of the facility.

(9) In the event that it is determined by the Environmental Protection Agency (EPA) that area rainfall runoff limitations are applicable to plants under construction, the applicant shall comply with the limitations for area rainfall runoff established by EPA for steam electric power generating plants or the provisions of an appropriate National Pollutant Discharge Elimination System (NPDES) Permit.

E.  In view of the fact that the Attorney General has not recommended an antitrust hearing in this matter, that no antitrust issues have been raised by another in a manner according with the Commission's Rules of Practice, and that no finding has been made that an antitrust hearing is otherwise required (10 CFR Part 2, Section 2.104(d)), antitrust review of the application for this construction permit under Section 105c of the Atomic Energy Act of 1954, as amended, has been completed and a hearing thereon determined to be unnecessary.

- 5 -

4.  This permit is subject to the limitation that a license authorizing operation of the facility will not be issued by the Commission unless (a) the applicant submits to the Commission the complete final safety analysis report, portions of which may be submitted and evaluated from time to time; (b) the Commission finds that the final design provides reasonable assurance that the health and safety of the public will not be endangered by the operation of the facility in accordance with procedures approved by it in connection with the issuance of said license; (c) the Commission finds that operation of the facility will be in accordance with 10 CFR Part 51, of the Commission's regulations and all applicable requirements have been satisfied; and (d) the applicant submits proof of financial protection and executes an indemnity agreement as required by Section 170 of the Act.

5.  This permit is effective as of its date of issuance and shall expire on the latest completion date indicated in paragraph 3.A above.

FOR THE ATOMIC ENERGY COMMISSION

A. Giambusso, Deputy Director
    for Reactor Projects
Directorate of Licensing

Date of Issuance:        DEC 2 4 1974



UNITED STATES
**ATOMIC ENERGY COMMISSION**
WASHINGTON, D.C. 20545

TENNESSEE VALLEY AUTHORITY
DOCKET NO. 50-439
BELLEFONTE NUCLEAR PLANT, UNIT 2
CONSTRUCTION PERMIT

Construction Permit No. CPPR-123

1.   The Atomic Energy Commission (the Commission) having found that:

A.   The application for construction permit complies with the
requirements of the Atomic Energy Act of 1954, as amended, and
the rules and regulations of the Commission, there is reasonable
assurance that the activities authorized by the permit will be
conducted in compliance with the rules and regulations of the
Commission, and all required notifications to other agencies
or bodies have been duly made;

B.   The Tennessee Valley Authority (the applicant) has described
the proposed design of the Bellefonte Nuclear Plant, Unit 2
(the facility), including, but not limited to, the principal
architectural and engineering criteria for the design and has
identified the major features or components incorporated
therein for the protection of the health and safety of the
public;

C.   Such further technical or design information as may be required
to complete the safety analysis, and which can reasonably be
left for later consideration, will be supplied in the final
safety analysis report;

D.   Safety features or components, if any, which require research
and development have been described by the applicant and the
applicant has identified, and there will be conducted, a
research and development program reasonably designed to
resolve any safety questions associated with such features or
components;

E.   On the basis of the foregoing, there is reasonable assurance
that (i) such safety questions will be satisfactorily resolved
at or before the latest date stated in the application for
completion of construction of the proposed facility and (ii)
taking into consideration the site criteria contained in 10
CFR Part 100, the proposed facility can be constructed and
operated at the proposed location without undue risk to the
health and safety of the public;

- 2 -

F.   The applicant is technically qualified to design and construct the proposed facility;

G.   The applicant is financially qualified to design and construct the proposed facility;

H.   The issuance of a permit for the construction of the facility will not be inimical to the common defense and security or to the health and safety of the public; and

I.   After weighing the environmental, economic, technical and other benefits of the facility against environmental and other costs and considering available alternatives, the issuance of a construction permit subject to the conditions for protection of the environment set forth herein is in accordance with 10 CFR Part 50, Appendix D of the Commission's regulations and all applicable requirements have been satisfied.

2.   Pursuant to Section 103 of the Atomic Energy Act of 1954, as amended (the Act), and Title 10, Chapter I, Code of Federal Regulations, Part 50, "Licensing of Production and Utilization Facilities," and pursuant to the Initial Decision of the Atomic Safety and Licensing Board, dated December 23, 1974, the Atomic Energy Commission (the Commission) hereby issues a construction permit to the applicant for a utilization facility designed to operate at 3600 megawatts thermal as described in the application and amendments thereto (the application) filed in this matter by the applicant and as more fully described in the evidence received at the public hearing upon the application.  The facility, known as the Bellefonte Nuclear Plant, Unit 2 will be located on the applicant's site in Jackson County, Alabama.

3.   This permit shall be deemed to contain and be subject to the conditions specified in Sections 50.54 and 50.55 of said regula-tions; is subject to all applicable provisions of the Act, and rules, regulations, and orders of the Commission now or hereafter in effect, and is subject to the conditions specified or incor-porated below:

A.   The earliest date for the completion of the facility is March 1, 1980 and the latest date for completion is September 1, 1980.

B.   The facility shall be constructed and located at the site as described in the application, in Jackson County, Alabama.

C.   This construction permit authorizes the applicant to construct the facility described in the application and the hearing record, in accordance with the principal architectural and

- 3 -

engineering criteria and environmental protection commitments
set forth therein.

D.   This facility is subject to the following conditions for the
protection of the environment:

(1)   An approved sampling program, as outlined in Section
5.4.2.5 and 6.2.1.1 of the AEC staff's Final Environ-
mental Statement (SFES) will be implemented to obtain
data necessary for assessment of the significance of the
loss of icthyoplankton through entrainment in the pro-
posed intake.

(2)   The data obtained in the program specified in (1) above
shall be submitted to the staff for review on a continuing
basis and shall form the basis for a final decision on
the acceptability of the proposed intake.   The results
will be subjected to thorough evaluation and a decision
on the intake acceptability will be made on the basis of
a cost-benefit analysis which will include both projected
losses of fisheries resources on the entire reservoir and
real and projected costs for the plant.

(3)   The applicant shall not use the broadcast application of
herbicides on the right-of-way covered under Step One
(Section 3.3, SFES) of the transmission line construction
plan.   (Section 5.4.1 and Appendix B, SFES).

The applicant shall conduct studies which will assess the
impacts of various alternative methods of transmission
line construction and maintenance, and prior to any
construction of Steps Two and Three (Section 3.3 SFES),
the applicant shall submit (1) for staff evaluation the
results of these studies and (2) an updated version of
its proposed clearing and maintenance methods for staff
approval.   This submittal should include analysis of cost
experience factors as well as environmental impacts such
as the effects on vegetation, wildlife and soil stability.
(Sections 4.1.2 and 9.2.4 SFES)

(4)   Prior to initiating construction of the discharge facility,
the applicant shall provide the results of thermal-
hydraulic analytical studies and plans for physical
modelling experiments to be conducted in support of the
final design and location of the plant cooling water
discharge. (Sections 5.4.2.3.1 and 9.2.5 SFES)

- 4 -

(5)  The applicant shall take the necessary mitigating actions,
     including those summarized in Section 4.4, SFES, during
     construction of the plant and associated transmission
     lines to avoid unnecessary adverse environmental impacts
     from construction activities.

(6)  A control program shall be established by the applicant
     to provide for a periodic review of all construction
     activities to assure that those activities conform to the
     environmental conditions set forth in the construction
     permit.

(7)  Before engaging in a construction activity which may
     result in a significant adverse environmental impact that
     was not evaluated or that is significantly greater than
     that evaluated in the SFES, the applicant shall provide
     written notification to the Director of Licensing.

(8)  The applicant may develop either, but not both, of the
     two alternative access routes to the plant as the permanent
     plant access road; provided that approximately 500 acres
     of land located on the northeast tip of Bellefonte
     peninsula will be developed as a "generally dispersed
     recreation area" as defined in Tennessee Valley Authority's
     Recreation Plan, Volume 1, Methodology (1973); and that
     the proposed recreation area will be developed consistent
     with maximum "peak hour recreation visits" of approximately
     800 visits within a two mile radius of the plant for the
     life of the facility.

(9)  In the event that it is determined by the Environmental
     Protection Agency (EPA) that area rainfall runoff
     limitations are applicable to plants under construction,
     the applicant shall comply with the limitations for area
     rainfall runoff established by EPA for steam electric
     power generating plants or the provisions of an appropriate
     National Pollutant Discharge Elimination System (NPDES)
     Permit.

E.   In view of the fact that the Attorney General has not recommended
     an antitrust hearing in this matter, that no antitrust issues
     have been raised by another in a manner according with the
     Commission's Rules of Practice, and that no finding has been
     made that an antitrust hearing is otherwise required (10 CFR
     Part 2, Section 2.104(d)), antitrust review of the application
     for this construction permit under Section 105c of the Atomic
     Energy Act of 1954, as amended, has been completed and a
     hearing thereon determined to be unnecessary.

- 5 -

4.   This permit is subject to the limitation that a license authorizing
     operation of the facility will not be issued by the Commission
     unless (a) the applicant submits to the Commission the complete
     final safety analysis report, portions of which may be submitted
     and evaluated from time to time; (b) the Commission finds that
     the final design provides reasonable assurance that the health and
     safety of the public will not be endangered by the operation of the
     facility in accordance with procedures approved by it in connection
     with the issuance of said license; (c) the Commission finds that
     operation of the facility will be in accordance with 10 CFR Part
     51, of the Commission's regulations and all applicable requirements
     have been satisfied; and (d) the applicant submits proof of financial
     protection and executes an indemnity agreement as required by
     Section 170 of the Act.

5.   This permit is effective as of its date of issuance and shall
     expire on the latest completion date indicated in paragraph 3.A
     above.

                              FOR THE ATOMIC ENERGY COMMISSION


                              A. Giambusso, Deputy Director
                                 for Reactor Projects
                              Directorate of Licensing

Date of Issuance:
                    DEC 2 4 1974

UNITED STATES ATOMIC ENERGY COMMISSION

DOCKET NOS. 50-438 AND 50-439

TENNESSEE VALLEY AUTHORITY

BELLEFONTE NUCLEAR PLANT, UNITS 1 AND 2

NOTICE OF ISSUANCE OF CONSTRUCTION PERMITS

Notice is hereby given that, pursuant to the Initial Decision of the Atomic Safety and Licensing Board, dated December 23, 1974, the Atomic Energy Commission (the Commission) has issued Construction Permits Nos. CPPR-122 and CPPR-123 to the Tennessee Valley Authority for construction of two pressurized water nuclear reactors at the applicant's site in Jackson County, Alabama. The proposed reactors, known as the Bellefonte Nuclear Plant, Units 1 and 2, are each designed for a rated power of 3600 megawatts thermal with a gross electrical output of approximately 1329 megawatts.

The Initial Decision is subject to review by an Atomic Safety and Licensing Appeal Board prior to its becoming final. Any decision or action taken by an Atomic Safety and Licensing Appeal Board in connection with the Initial Decision may be reviewed by the Commission.

The Commission has made appropriate findings as required by the Atomic Energy Act of 1954, as amended (the Act), and the Commission's rules and regulations in 10 CFR Chapter I, which are set forth in the construction permits. The application for the construction permits complies with the standards and requirements of the Act and the Commission's rules and regulations.

The construction permits are effective as of their date of issuance. The earliest date for the completion of Unit 1 is June 1, 1979, and the latest date for completion is December 1, 1979. The earliest date for the completion

of Unit 2 is March 1, 1980, and the latest date for completion is
September 1, 1980.  Each permit shall expire on the latest date for
completion of the facility.

A copy of (1) the Initial Decision, dated    DEC 2 3 1974    ; (2)
Construction Permits Nos. CPPR-122 and CPPR-123; (3) the report of
the Advisory Committee on Reactor Safeguards, dated July 16, 1974;
(4) the Directorate of Licensing's Safety Evaluation, dated May 24,
1974 and the supplement thereto; (5) the Preliminary Safety Analysis
Report and amendments thereto; (6) the applicant's Draft Environmental
Statement, dated March 6, 1973 and supplements thereto; (7) the
applicant's Final Environmental Statement, dated May 24, 1974; (8)
the AEC's Draft Environmental Statement, dated February 1974; and
(9) the AEC's Final Environmental Statement, dated June 1974, are
available for public inspection at the Commission's Public Document
Room at 1717 H Street, N. W., Washington, D. C. and the Scottsboro
Public Library, 1002 South Broad Street, Scottsboro, Alabama 35768.
Copies of the construction permits and the Safety Evaluation may be
obtained upon request addressed to the U. S. Atomic Energy Commission,
Washington, D. C. 20545, Attnetion:  Deputy Director for Reactor
Projects, Directorate of Licensing - Regulation.

Dated at Bethesda, Maryland, this 24th day of December , 1974.

FOR THE ATOMIC ENERGY COMMISSION

A. Schwencer, Chief
Light Water Reactors Branch 2-3
Directorate of Licensing