FILED
2019 Feb-04  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT B

**REGULATORY DOCKET FILE COPY**

DISTRIBUTION:

| | |
|---|---|
| Docket Files | J. Knight |
| TERA | R. Tedesco |
| NRC/PDR | V. Noonan |
| L/PDR | R. Hartfield, MPA |
| LB#1 Rdg. | OELD |
| NRR Rdg. | OIE (3) |
| D. Eisenhut | |
| R. Purple | bcc: ACRS (16) |
| J. Youngblood | NSIC |
| C. Moon | TIC |
| M. Rushbrook | |
| P. Check | |
| L. Rubenstein | |
| A. Schwencer | |
| J. Miller | |
| R. Vollmer | |
| D. Ross | |
| R. Mattson | |

AUG 0 6 1980

Docket Nos.: 50-443
and 50-444

Mr. W. C. Tallman, President
Public Service Company of
New Hampshire
1000 Elm Street
Manchester, New Hampshire 03105

Dear Mr. Tallman:

SUBJECT:  AMENDMENTS TO CONSTRUCTION PERMITS FOR SEABROOK STATION,
UNITS 1 AND 2

Your letters of May 16, 1979 and March 14, 1980, transmitted an application
(Amendment No. 40 to the License Application) for amendments to the construction
permits for Seabrook Station, Units 1 and 2, to decrease the percent ownership
interest of four participants, to increase the percent ownership interest of seven
participants, to add one participant, and to reinstate a participant as an applicant.

We have reviewed your application and have concluded that the new participant,
New Hampshire Electric Cooperative, Inc. (2.17391 percent) is financially qualified
to assume its respective ownership interest in the Seabrook Station. Prior to the
issuance of the construction permits, the Connecticut Light and Power Company was
found to be financially qualified to assume its orginial ownership interest of
11.9776 percent which is in excess of its retained ownership interest of 4.49317
percent for reinstatement as an applicant. Amendments No. 1 to the construction
permits, dated January 31, 1979 had authorized transfer of this ownership interest
of 4.49317 percent to Montaup Electric Company (1.03542 percent), New Bedford
Gas and Edison Light Company (3.02443 percent) and Fitchburg Gas and Electric
Light Company (0.43332 percent). Reinstatement of Connecticut Light and Power
Company with an ownership interest of 4.49317 percent is effected in Amendments
No. 3 by authorization to "transfer" the above ownership percentages from Montaup
Electric Company, and Fitchburg Gas and Electric Light Company back to the Connecticut
Light and Power Company. In Supplement 4 to Amendment 40 of the Application you
state that on December 26, 1979, New Bedford announced that it would not be extending
its Sales Agreement with Connecticut Light and Power Company, but that proceedings
have been pending since October, 1978 before the Massachusetts Department of
Public Utilities for the transfer by Connecticut Lighting and Power Company of
0.43332 percent to Fitchburg Gas and Electric Light Company and 1.03542 percent
to Montaup Electric Company. Although the authorization in Amendments No. 1 to the
construction permits for these two transfers has now been withdrawn by Amendments
No. 3, the Safety Evaluation includes a finding that both Fitchburg Gas and Electric
Light Company and Montaup Electric Company are financially qualified to assume these
ownership percentages for a total of 0.86519 and 5.00000 percent, respectively. If
and when advised that these transfers to Fitchburg and Montaup from Connecticut

| OFFICE ▶ | | | | | | |
|---|---|---|---|---|---|---|
| SURNAME ▶ | | | | | | |
| DATE ▶ | | | | | | |

8008140 **165**

NRC FORM 318 (9-76) NRCM 0240                    ☆U.S. GOVERNMENT PRINTING OFFICE: 1979-289-369

Mr. W. C. Tallman, President          - 2 -                    AUG 06 1980

Light and Power Company will be consumated we will evaluate a request for an additional amendment authorizing these ownership transfers on the basis of the Safety Evaluation attached to Amendments No. 3 or upon a new Safety Evaluation if this Safety Evaluation is no longer current and applicable as it applies to the financial qualifications of Fitchburg Gas and Electric Light Company and Montaup Electric Company.

We have also concluded that Central Maine Power Company is financially qualified to increase its ownership interest to 6.04178 percent, Town of Hudson Light and Power Department to 0.07737 percent, Massachusetts Municipal Wholesale Electric Company to 11.59340 percent, Bangor Hydro-Electric Company to 2.17391 percent and Taunton Municipal Lighting Plant 0.43479 percent.

We have also concluded that the inclusion of this new participant and the increased percent ownership interest for these eight original participants does not involve a significant hazards consideration, does not constitute an unreasonable risk to the health and safety of the public, and is not inimical to the common defense and security. The bases for these conclusions are set forth in the enclosed Safety Evalution.

We have also concluded that the amendments involve actions which are insignificant from the standpoint of environmental impact and pursuant to 10 CFR Section 51.5(d)(4) that an environmental impact statement or negative declaration, and environmental impact appraisal need not be prepared in connection with the issuance of these amendments.

Enclosed is Amendment No. 3 to CPPR-135 and Amendment No. 3 to CPPR-136 for the Seabrook Station, Units 1 and 2, which modify the construction permits.

Also enclosed is a copy of a related notice which has been forwarded to the Office of the Federal Register for publication.

                                  Sincerely,

                                  R. Purple /for

                                  Darrell G. Eisenhut, Director
                                  Division of Licensing
                                  Office of Nuclear Reactor Regulation

Enclosures:
1.  Amendment No. 3 to Construction
      Permit CPPR-135
2.  Amendment No. 3 to Construction
      Permit CPPR-136
3.  Federal Register Notice
4.  Safety Evaluation Report

ccs w/enclosures:
See next page

| OFFICE | DL:LB#1 | DL:LB#1 | DL:LB#1 | OELD | DL:AD | DL:DIR |
|---|---|---|---|---|---|---|
| SURNAME | CMoon/ls 7/24/80 | MRushbrook | BJYoungblood | R.C.Gerry | RLTedesco | RPurple DEisenhut |
| DATE | 7/29/80 | 7/29/80 | 7/29/80 | 873/80 | 8/5/80 | 8/6/80 |

Public Service Company of New Hampshire

AUG 0 6 1980

ccs:
John A. Ritscher, Esq.
Ropes and Gray
225 Franklin Street
Boston, Massachusetts 02110

Ralph H. Wood, Esq.
General Counsel
Public Service Company of New Hampshire
1000 Elm Street
Manchester, New Hampshire 03105

Mr. John Haseltine, Project Manager
Yankee Atomic Electric Company
20 Turnpike Road
Westboro, Massachusetts 01581

Mr. Bruce B. Beckley, Project Manager
Public Service Company of New Hampshire
1000 Elm Street
Manchester, New Hampshire 03105

Ms. Elizabeth H. Weinhold
3 Godfrey Avenue
Hampton, New Hampshire 03842

Robert A. Backus, Esq.
O'Neill, Backus, and Spielman
116 Lowell Street
Manchester, New Hampshire 03105

Norman Ross, Esq.
30 Francis Street
Brookline, Massachusetts 02146

Karin P. Sheldon, Esq.
Sheldon, Harmon & Weiss
1725 I Street, N. W.
Washington, D. C. 20006

Laurie Burt, Esq.
Office of the Assistant Attorney General
Environmental Protection Division
One Ashburton Place
Boston, Massachusetts 02108

AUG 0 6 1980

Public Service Company of New Hampshire

ccs (continued)
E. Tupper Kinder, Esq.
Assistant Attorney General
Office of Attorney General
208 State House Annex
Concord, New Hampshire 03301

Samuel Chilk
Secretary of the Commission
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Alan S. Rosenthal, Esq.
Atomic Safety and Licensing Appeal Board
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Dr. John J. Buck
Atomic Safety and Licensing Appeal Board
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Michael C. Farrar, Esq.
Atomic Safety and Licensing Appeal Board
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Ivan W. Smith, Esq.
Atomic Safety and Licensing Board
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Dr. Ernest Salo, Professor
Fisheries Research Institute - WH-10
College of Fisheries
University of Washington
Seattle, Washington 98195

Mr. Arnie Wight
New Hampshire House of Representatives
Science, Technology and Energy
  Committee
State House
Concord, New Hampshire  03301

Resident Inspector
Seabrook Nuclear Power Station
c/o U.S. Nuclear Regulatory Commission
P. O. Box 1149
Seabrook, New Hampshire  03874

Attorney General
State House Annex
Concord, New Hampshire  03301

State House Annex
ATTN:  Assistant to the Director,
        Office of Comprehensive Planning
Concord, New Hampshire  03301

Director, Technical Assessment Division
Office of Radiation Programs (AW-459)
U. S. Environmental Protection Agency
Crystal Mall #2
Arlington, Virginia  20460

EIS Coordinator
U. S. Environmental Protection Agency
Region I Office
JFK Federal Building
Boston, Massachusetts 02203

Office of the First Selectman
Town of Seabrook
Seabrook, New Hampshire  03874

Chairman
New Hampshire Public Utilities Commission
26 Pleasant Street
Concord, New Hampshire  03301

Attorney General
Department of Attorney General
State House
Augusta, Maine  04330

State Planning Officer
Executive Department
State of Maine
189 State Street
Augusta, Maine  04330

Attorney General
State House
Boston, Massachusetts  02133

Massachusetts Department of Public Health
ATTN:  Commissioner of Public Health
600 Washington Street
Boston, Massachusetts  02111

Water Quality & Environmental Commission
Department of Environmental Quality
  Engineering
100 Cambridge Street
Boston, Massachusetts  02202

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE
THE UNITED ILLUMINATING COMPANY
CENTRAL MAINE POWER COMPANY
CENTRAL VERMONT PUBLIC SERVICE CORPORATION
FITCHBURG GAS AND ELECTRIC LIGHT COMPANY
MONTAUP ELECTRIC COMPANY
NEW BEDFORD GAS AND EDISON LIGHT COMPANY
NEW ENGLAND POWER COMPANY
TOWN OF HUDSON, MASSACHUSETTS, LIGHT AND POWER DEPARTMENT
VERMONT ELECTRIC COOPERATIVE, INC.
BANGOR HYDRO-ELECTRIC COMPANY
TAUNTON MUNICIPAL LIGHTING PLANT COMMISSION
MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC COMPANY
MAINE PUBLIC SERVICE COMPANY

DOCKET NO. 50-443

SEABROOK STATION, UNIT 1

AMENDMENT TO CONSTRUCTION PERMIT

Amendment No. 3
Construction Permit No. CPPR-135

1. The Nuclear Regulatory Commission (the Commission) having found that:

A. The application for amendment contained in a letter, dated May 16,
1979, and amended by letter dated March 14, 1980, complies with the
standards and requirements of the Atomic Energy Act of 1954, as
amended, and the Commission's rules and regulations set forth in
10 CFR Chapter I;

B. The issuance of this amendment will not be inimical to the common
defense and security or to the health and safety of the public;

C. The following is financially qualified to assume its ownership
interest in the Seabrook Station, Unit 1, shown below:

New Hampshire Electric Coop. Inc.                    2.17391

                                        [Sum:    2.17391];

D. Each of the following is financially qualified to increase its
percent ownership interest in the Seabrook Station, Unit 1,
shown below:

Central Maine Power Company        to  6.04178  from 2.54178
Montaup Electric Company           to  3.96458[1] from 2.93531

---

[1]Montaup is financially qualified to increase its ownership percentage to 5.00000
by an additional transfer of 1.03542 ownership percentage from the Connecticut
Light and Power Company, but authorization is withdrawn pending confirmation that
transfer will be consumated.

| OFFICE ▶ | | | | |
|---|---|---|---|---|
| SURNAME ▶ | | | | |
| DATE ▶ | | | | |

- 2 -

| | | | |
|---|---|---|---|
| The Connecticut Light and Power Company | to | 4.49317[2] | from 0.00000 |
| Town of Hudson Light and Power Department | to | 0.07737 | from 0.05780 |
| Massachusetts Municipal Wholesale Electric Company | to | 11.59340 | from 5.59249 |
| Bangor Hydro-Electric Company | to | 2.17391 | from 0.37249 |
| Taunton Municipal Lighting Plant | to | 0.43479 | from 0.10034 |

[Sum: to 28.779    from 11.60021];

E.  After the transfer of ownership interests is completed, the percent ownership interest (shown below) for each of the following will be equal to or less than its original percent ownership interest as amended by Amendments 1 and 2 (shown in parentheses) in the Seabrook Station, Unit 1. (The percent ownership interests shown in 1.C, 1.D, and 1.E add up to one hundred percent).

| | | |
|---|---|---|
| Public Service Company of New Hampshire | 35.23497 | (50.00000) |
| The United Illuminating Company | 16.43531 | (20.00000) |
| New England Power Company | 9.95766 | ( 9.95766) |
| New Bedford Gas & Electric Lighting Company | 3.52317 | ( 4.37370) |
| Central Vermont Public Service Corporation | 1.59096[3] | ( 1.59096) |
| Fitchburg Gas & Electric Light Company | 0.43187[3] | ( 0.60432) |
| Vermont Electric Corporative, Inc. | 0.41259 | ( 0.41259) |
| Maine Public Service Company | 1.46056 | ( 1.46056) |

[Sum:   69.04709   (88.39979)];

F.  Prior public notice of this amendment is not required since the amendment does not involve a significant hazards consideration.

2.  Accordingly, Construction Permit No. CPPR-135 is amended to reflect a change in the ownership of the facility by adding New Hampshire Electric Coop., Inc., and by transferring ownership interests as follows:

A.  The following paragraph (3.F.) is added to the construction permit:

3.F  The following percent ownership interests may be transferred from Transferors to Transferees:

| To: | | |
|---|---|---|
| Central Maine Power Company | 2.50000 | |
| Montaup Electric Company | 1.06469 | |
| | 3.56469 | |

---

[2] Retained from original ownership share of 11.9776 instead of being transferred as contemplated under Amendment No. 1

[3] Fitchburg is financially qualified to increase its ownership percentage to 0.86159 by an additional transfer of 0.43332 ownership percentage from Connecticut Light and Power Company, but authorization is withdrawn pending confirmation that the transfer will be consumated.

```
From:  United Illuminating Company               3.56469

  To:  Massachusetts Municipal Wholesale
           Electric Company                       6.00091
       New Hampshire Electric Cooperative, Inc.   2.17391
       New Bedford Gas & Edison Light Company     2.17390
       Bangor Hydro-Electric Company              1.80142
       Montaup Electric Company                   1.00000
       Central Maine Power Company                1.00000
       Taunton Municipal Lighting Plant
           Commission                             0.33445
       Fitchburg Gas & Electric Light Company     0.26087
       Town of Hudson Light & Power Company       0.01957
                                                 14.76503

From:  Public Service Company of New
           Hampshire                             14.76503

  To:  The Connecticut Light and Power            4.493174
           Company (shares now retained
           even though transfer was
           authorized by Amendment No. 1)

From:  New Bedford Gas & Edison Light Company     3.02443
       Fitchburg Gas & Electric Light Company     0.43332
       Montaup Electric Comapny                   1.03542
```

B.  In all references in Construction Permit No. CPPR-135 to "applicants"
    include:

    The Connecticut Light and Power Company
    New Hampshire Electric Coop., Inc.

3.  This amendment is effective as of the date of issuance.

                    FOR THE NUCLEAR REGULATORY COMMISSION

                    R. Purple /for

                    Darrell G. Eisenhut, Director
                    Division of Licensing
                    Office of Nuclear Reactor Regulation

Date of Issuance: AUG 06 1980

---

4 Authorization of these transfers in effect withdraws the authorization of Amendment
No. 1 for the reverse transfers.  The proposed transfer of 3.02443 percent from
Connecticut Light and Power Company to New Bedford authorized by Amendment No. 1
was cancelled by New Bedford.  Verification of the proposed transfer from
Connecticut Light and Power to Fitchburg of 0.43332 percent and to Montaup of
1.03542 percent was withdrawn by Supplement 4 to Amendment 40 to the application.

| OFFICE | DL:LB#1 CMoon/ls | DL:LB | OELD | DL:AD | DL:DIR RPurple |  |
|---|---|---|---|---|---|---|
| SURNAME | MRushbrook | BJYoungblood | Jessy | RLTedesco | DEisenhut |  |
| DATE | Js Peterse 7-29-80 | 7/29/80 | 7/3 /80 | 8/5 /80 | 8/6 /80 |  |

NRC FORM 318 (9-76) NRCM 0240      7-29-80      ☆U.S. GOVERNMENT PRINTING OFFICE: 1979-289-369

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE
THE UNITED ILLUMINATING COMPANY
CENTRAL MAINE POWER COMPANY
CENTRAL VERMONT PUBLIC SERVICE CORPORATION
FITCHBURG GAS AND ELECTRIC LIGHT COMPANY
MONTAUP ELECTRIC COMPANY
NEW BEDFORD GAS AND EDISON LIGHT COMPANY
NEW ENGLAND POWER COMPANY
TOWN OF HUDSON, MASSACHUSETTS, LIGHT AND POWER DEPARTMENT
VERMONT ELECTRIC COOPERATIVE, INC.
BANGOR HYDRO-ELECTRIC COMPANY
TAUNTON MUNICIPAL LIGHTING PLANT COMMISSION
MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC COMPANY
MAINE PUBLIC SERVICE COMPANY

DOCKET NO. 50-444

SEABROOK STATION, UNIT 2

AMENDMENT TO CONSTRUCTION PERMIT

Amendment No. 3
Construction Permit No. CPPR-136

1. The Nuclear Regulatory Commission (the Commission) having found that:

A. The application for amendment contained in a letter, dated May 16,
1979, and amended by letter dated March 14, 1980, complies with the
standards and requirements of the Atomic Energy Act of 1954, as
amended, and the Commission's rules and regulations set forth in
10 CFR Chapter I;

B. The issuance of this amendment will not be inimical to the common
defense and security or to the health and safety of the public;

C. The following is financially qualified to assume its ownership
interest in the Seabrook Station, Unit 2, shown below:

New Hampshire Electric Coop. Inc.                    2.17391

                                          [ Sum:    2.17391];

D. Each of the following is financially qualified to increase its
percent ownership interest in the Seabrook Station, Unit 2,
shown below:

Central Maine Power Company        to  6.04178  from 2.54178
Montaup Electric Company           to  3.96458[1] from 2.93531

---

[1]Montaup is financially qualified to increase its ownership percentage to 5.00000
by an additional transfer of 1.03542 ownership percentage from the Connecticut
Light and Power Company, but authorization is withdrawn pending confirmation that
transfer will be consumated.

| OFFICE ▶ | | | | | |
|---|---|---|---|---|---|
| SURNAME ▶ | | | | | |
| DATE ▶ | | | | | |

- 2 -

| | | | | |
|---|---|---|---|---|
| The Connecticut Light and Power Company | to | $4.49317^2$ | from | 0.00000 |
| Town of Hudson Light and Power Department | to | 0.07737 | from | 0.05780 |
| Massachusetts Municipal Wholesale Electric Company | to | 11.59340 | from | 5.59249 |
| Bangor Hydro-Electric Company | to | 2.17391 | from | 0.37249 |
| Taunton Municipal Lighting Plant | to | 0.43479 | from | 0.10034 |

[Sum: to 28.779   from 11.60021];

E.  After the transfer of ownership interests is completed, the percent ownership interest (shown below) for each of the following will be equal to or less than its original percent ownership interest as amended by Amendments 1 and 2 (shown in parentheses) in the Seabrook Station, Unit 2. (The percent ownership interests shown in 1.C, 1.D, and 1.E add up to one hundred percent).

| | | |
|---|---|---|
| Public Service Company of New Hampshire | 35.23497 | (50.00000) |
| The United Illuminating Company | 16.43531 | (20.00000) |
| New England Power Company | 9.95766 | ( 9.95766) |
| New Bedford Gas & Electric Lighting Company | 3.52317 | ( 4.37370) |
| Central Vermont Public Service Corporation | 1.59096 | ( 1.59096) |
| Fitchburg Gas & Electric Light Company | $0.43187^3$ | ( 0.60432) |
| Vermont Electric Corporative, Inc. | 0.41259 | ( 0.41259) |
| Maine Public Service Company | 1.46056 | ( 1.46056) |

[Sum:   69.04709   (88.39979)];

F.  Prior public notice of this amendment is not required since the amendment does not involve a significant hazards consideration.

2.  Accordingly, Construction Permit No. CPPR-136 is amended to reflect a change in the ownership of the facility by adding New Hampshire Electric Coop., Inc., and by transferring ownership interests as follows:

A.  The following paragraph (3.F.) is added to the construction permit:

3.F  The following percent ownership interests may be transferred from Transferors to Transferees:

| | | |
|---|---|---|
| To: | Central Maine Power Company | 2.50000 |
| | Montaup Electric Company | 1.06469 |
| | | 3.56469 |

---

[2]Retained from original ownership share of 11.9776 instead of being transferred as contemplated under Amendment No. 1

[3]Fitchburg is financially qualified to increase its ownership percentage to 0.86159 by an additional transfer of 0.43332 ownership percentage from Connecticut Light and Power Company, but authorization is withdrawn pending confirmation that the transfer will be consumated.

| OFFICE ▶ | | | | | | | |
|---|---|---|---|---|---|---|---|
| SURNAME ▶ | | | | | | | |
| DATE ▶ | | | | | | | |

|  | | |
|---|---|---|
| From: | United Illuminating Company | 3.56469 |

| | | |
|---|---|---|
| To: | Massachusetts Municipal Wholesale Electric Company | 6.00091 |
| | New Hampshire Electric Cooperative, Inc. | 2.17391 |
| | New Bedford Gas & Edison Light Company | 2.17391 |
| | Bangor Hydro-Electric Company | 1.80142 |
| | Montaup Electric Company | 1.00000 |
| | Central Maine Power Company | 1.00000 |
| | Taunton Municipal Lighting Plant Commission | 0.33445 |
| | Fitchburg Gas & Electric Light Company | 0.26087 |
| | Town of Hudson Light & Power Company | 0.01957 |
| | | 14.76503 |

| | | |
|---|---|---|
| From: | Public Service Company of New Hampshire | 14.76503 |

| | | |
|---|---|---|
| To: | The Connecticut Light and Power Company (shares now retained even though transfer was authorized by Amendment No. 1) | 4.49317[4] |

| | | |
|---|---|---|
| From: | New Bedford Gas & Edison Light Company | 3.02443 |
| | Fitchburg Gas & Electric Light Company | 0.43332 |
| | Montaup Electric Comapny | 1.03542 |

B. In all references in Construction Permit No. CPPR-136 to "applicants" include:

The Connecticut Light and Power Company
New Hampshire Electric Coop., Inc.

3. This amendment is effective as of the date of issuance.

FOR THE NUCLEAR REGULATORY COMMISSION

*A. Purple /for*

Darrell G. Eisenhut, Director
Division of Licensing
Office of Nuclear Reactor Regulation

Date of Issuance: AUG 06 1980

---

[4] Authorization of these transfers in effect withdraws the authorization of Amendment No. 1 for the reverse transfers. The proposed transfer of 3.02443 percent from Connecticut Light and Power Company to New Bedford authorized by Amendment No. 1 was cancelled by New Bedford. Verification of the proposed transfer from Connecticut Light and Power to Fitchburg of 0.43332 percent and to Montaup of 1.03542 percent was withdrawn by Supplement 4 to Amendment 40 to the application.

| | DL:LB#1 | DL:LB#1 | OELD | DL:DXL | DL:DIR |  |
|---|---|---|---|---|---|---|
| OFFICE ▶ | CMoon/ls | | | | RPurple | |
| SURNAME ▶ | MRushbrook | BJYoungblood | RJ Lissy | RLTedesco | DEisenhut | |
| DATE ▶ | 7/29/80 | 7/ /80 | 7/3 /80 | 8/5 /80 | 8/ 6/80 | |

UNITED STATES NUCLEAR REGULATORY COMMISSION

DOCKET NOS. 50-443 AND   50-444

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, ET AL

NOTICE OF ISSUANCE OF AMENDMENT TO CONSTRUCTION PERMITS

Notice is hereby given that the U. S. Nuclear Regulatory Commission (the Commission) has issued Amendment No. 3 to Construction Permit No. CPPR-135 and Amendment No. 3 to Construction Permit No. CPPR-136 issued to the Public Service Company of New Hampshire, The United Illuminating Company, Central Maine Power Company, Central Vermont Public Service Corporation, Fitchburg Gas and Electric Light Company, Montaup Electric Company, New Bedford Gas & Edison Light Company, New England Power Company, Town of Hudson, Massachusetts, Light and Power Department, Vermont Electric Cooperative, Inc., Bangor Hydro-Electric Company, Massachusetts Municipal Wholesale Electric Company, Maine Public Service Company and Taunton Municipal Lighting Plant.  The amendments reflect changes in ownership and transfer of shares of the Seabrook Station, Units 1 and 2 (the facility), located in Rockingham County, New Hampshire. The amendments are effective as of their date of issuance.

These amendments provide for the addition of New Hampshire Electric Coop, Inc., and the reinstatement of The Connecticut Light and Power Company as applicants for all licenses previously requested, and the transfer of partial ownership shares as noted in the construction permit amendments for these applicants and for ten other continuing applicants.

The application for the amendments complies with the standards and requirements of the Atomic Energy Act of 1954, as amended (the Act), and the Commission's rules and regulations.  The Commission has made

8008140

| | | | | | |
|---|---|---|---|---|---|
| OFFICE ▶ | | | | | |
| SURNAME ▶ | | | | | |
| DATE ▶ | | | | | |

- 2 -

appropriate findings as required by the Act and the Commission's rules
and regulations in 10 CFR Chapter I, which are set forth in the amendment.
Prior public notice of this amendment was not required since the amendment
does not involve a significant hazards consideration.

For further details with respect to this action, see (1) the application
for amendments contained in Public Service Company of New Hampshire's
letters, dated May 16, 1979, and March 14, 1980; (2) Amendment Nos. 1 and 2
to Construction Permit No. CPPR-135; (3) Amendment Nos. 1 and 2 to Construction
Permit No. CPPR-136; and (4) the Commission's letter to Public Service
Company of New Hampshire and the related Safety Evaluation attached thereto.
All of these items are available for public inspection at the Commission's
Public Document Room, 1717 H Street, NW, Washington, D.C. and at the Exeter
Public Library, Front Street, Exeter, New Hampshire 03833.

A copy of items (2) and (3) may be obtained upon request addressed
to the U.S. Nuclear Regulatory Commission, Washington, D.C.  20555, Attention:
Director, Division of Licensing.

Dated at Bethesda, Maryland this 6th day of August, 1980.

FOR THE NUCLEAR REGULATORY COMMISSION

B. J. Youngblood, Chief
Licensing Branch No. 1
Division of Licensing

See previous yellow for concurrence

| | | | | | | |
|---|---|---|---|---|---|---|
| OFFICE ▶ | DL/LB#1 | DL/LB#1 | OELD | BC/LB#1 | | |
| SURNAME ▶ | CMoon/ls | MRushbrook | R. Lessy | BJYoungblood | | |
| DATE ▶ | 8/5/80 | 7/28/80 | 7/31/80 | 8/5/80 | | |

NRC FORM 318 (9-76) NRCM 0240          ☆U.S. GOVERNMENT PRINTING OFFICE: 1979-289-369

- 2 -

appropriate findings as required by the Act and the Commission's rules
and regulations in 10 CFR Chapter I, which are set forth in the amendments.

For further details with respect to this action, see (1) the application
for amendments contained in Public Service Company of New Hampshire's
letters, dated May 16, 1979, and March 14, 1980; (2) Amendment Nos. 1 and 2
to Construction Permit No. CPPR-135; (3) Amendment Nos. 1 and 2 to Construction
Permit No. CPPR-136; and (4) the Commission's letter to Public Service
Company of New Hampshire and the related Safety Evaluation attached thereto.
All of these items are available for public inspection at the Commission's
Public Document Room, 1717 H Street, NW, Washington, D.C. and at the Exeter
Public Library, Front Street, Exeter, New Hampshire 03833.

A copy of items (2) and (3) may be obtained upon request addressed
to the U.S. Nuclear Regulatory Commission, Washington, D.C.  20555, Attention:
Director, Division of Licensing.

Dated at Bethesda, Maryland this      day of                  1980.

FOR THE NUCLEAR REGULATORY COMMISSION

B. J. Youngblood, Chief
Licensing Branch No. 1
Division of Licensing

| OFFICE | DL:LB#1 | DL:LB#1 | OELD | DL:LB#1 | | | |
|---|---|---|---|---|---|---|---|
| SURNAME | CMoon/ls | MRushbrook | dPeterson | BJYoungblood | | | |
| DATE | 7/29/80 | 7/ /80 | 7/31/80 | 7/ /80 | | | |

NRC FORM 318 (9-76) NRCM 0240                    ☆ U.S. GOVERNMENT PRINTING OFFICE: 1979-289-369



UNITED STATES
NUCLEAR REGULATORY COMMISSION
WASHINGTON, D. C. 20555

AUG 0 6 1980

Docket Nos.:   50-443
    and   50-444

Mr. W. C. Tallman, President
Public Service Company of
  New Hampshire
1000 Elm Street
Manchester, New Hampshire   03105

Dear Mr. Tallman:

SUBJECT:   AMENDMENTS TO CONSTRUCTION PERMITS FOR SEABROOK STATION,
UNITS 1 AND 2

Your letters of May 16, 1979 and March 14, 1980, transmitted an application
(Amendment No. 40 to the License Application) for amendments to the construction
permits for Seabrook Station, Units 1 and 2, to decrease the percent ownership
interest of four participants, to increase the percent ownership interest of seven
participants, to add one participant, and to reinstate a participant as an applicant.

We have reviewed your application and have concluded that the new participant,
New Hampshire Electric Cooperative, Inc. (2.17391 percent) is financially qualified
to assume its respective ownership interest in the Seabrook Station.  Prior to the
issuance of the construction permits, the Connecticut Light and Power Company was
found to be financially qualified to assume its orginial ownership interest of
11.9776 percent which is in excess of its retained ownership interest of 4.49317
percent for reinstatement as an applicant.  Amendments No. 1 to the construction
permits, dated January 31, 1979 had authorized transfer of this ownership interest
of 4.49317 percent to Montaup Electric Company (1.03542 percent), New Bedford
Gas and Edison Light Company (3.02443 percent) and Fitchburg Gas and Electric
Light Company (0.43332 percent).  Reinstatement of Connecticut Light and Power
Company with an ownership interest of 4.49317 percent is effected in Amendments
No. 3 by authorization to "transfer" the above ownership percentages from Montaup
Electric Company, and Fitchburg Gas and Electric Light Company back to the Connecticut
Light and Power Company.  In Supplement 4 to Amendment 40 of the Application you
state that on December 26, 1979, New Bedford announced that it would not be extending
its Sales Agreement with Connecticut Light and Power Company, but that proceedings
have been pending since October, 1978 before the Massachusetts Department of
Public Utilities for the transfer by Connecticut Lighting and Power Company of
0.43332 percent to Fitchburg Gas and Electric Light Company and 1.03542 percent
to Montaup Electric Company.  Although the authorization in Amendments No. 1 to the
construction permits for these two transfers has now been withdrawn by Amendments
No. 3, the Safety Evaluation includes a finding that both Fitchburg Gas and Electric
Light Company and Montaup Electric Company are financially qualified to assume these
ownership percentages for a total of 0.86519 and 5.00000 percent, respectively.  If
and when advised that these transfers to Fitchburg and Montaup from Connecticut

Mr. W. C. Tallman, President          - 2 -                    AUG 0 6 1980

Light and Power Company will be consumated we will evaluate a request for an
additional amendment authorizing these ownership transfers on the basis of the
Safety Evaluation attached to Amendments No. 3 or upon a new Safety Evaluation
if this Safety Evaluation is no longer current and applicable as it applies
to the financial qualifications of Fitchburg Gas and Electric Light Company
and Montaup Electric Company.

We have also concluded that Central Maine Power Company is financially
qualified to increase its ownership interest to 6.04178 percent, Town of
Hudson Light and Power Department to 0.07737 percent, Massachusetts Municipal
Wholesale Electric Company to 11.59340 percent, Bangor Hydro-Electric Company
to 2.17391 percent and Taunton Municipal Lighting Plant 0.43479 percent.

We have also concluded that the inclusion of this new participant and the
increased percent ownership interest for these eight original participants
does not involve a significant hazards consideration, does not constitute an
unreasonable risk to the health and safety of the public, and is not inimical
to the common defense and security.  The bases for these conclusions are
set forth in the enclosed Safety Evaluation.

We have also concluded that the amendments involve actions which are insignificant
from the standpoint of environmental impact and pursuant to 10 CFR Section 51.5(d)
(4) that an environmental impact statement or negative declaration, and environ-
mental impact appraisal need not be prepared in connection with the issuance of
these amendments.

Enclosed is Amendment No. 3 to CPPR-135 and Amendment No. 3 to CPPR-136 for the
Seabrook Station, Units 1 and 2, which modify the construction permits.

Also enclosed is a copy of a related notice which has been forwarded to the
Office of the Federal Register for publication.

                              Sincerely,

                              Darrell G. Eisenhut, Director
                              Division of Licensing
                              Office of Nuclear Reactor Regulation

Enclosures:
1.  Amendment No. 3 to Construction
       Permit CPPR-135
2.  Amendment No. 3 to Construction
       Permit CPPR-136
3.  Federal Register Notice
4.  Safety Evaluation Report

ccs w/enclosures:
See next page

AUG 06 1980

Public Service Company of New Hampshire

ccs (continued)
E. Tupper Kinder, Esq.
Assistant Attorney General
Office of Attorney General
208 State House Annex
Concord, New Hampshire 03301

Samuel Chilk
Secretary of the Commission
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Alan S. Rosenthal, Esq.
Atomic Safety and Licensing Appeal Board
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Dr. John J. Buck
Atomic Safety and Licensing Appeal Board
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Michael C. Farrar, Esq.
Atomic Safety and Licensing Appeal Board
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Ivan W. Smith, Esq.
Atomic Safety and Licensing Board
U.S. Nuclear Regulatory Commission
Washington, D. C. 20555

Dr. Ernest Salo, Professor
Fisheries Research Institute - WH-10
College of Fisheries
University of Washington
Seattle, Washington 98195

Mr. Arnie Wight
New Hampshire House of Representatives
Science, Technology and Energy
 Committee
State House
Concord, New Hampshire 03301

Resident Inspector
Seabrook Nuclear Power Station
c/o U.S. Nuclear Regulatory Commission
P. O. Box 1149
Seabrook, New Hampshire 03874

Attorney General
State House Annex
Concord, New Hampshire 03301

State House Annex
ATTN: Assistant to the Director,
        Office of Comprehensive Planning
Concord, New Hampshire 03301

Director, Technical Assessment Division
Office of Radiation Programs (AW-459)
U. S. Environmental Protection Agency
Crystal Mall #2
Arlington, Virginia 20460

EIS Coordinator
U. S. Environmental Protection Agency
Region I Office
JFK Federal Building
Boston, Massachusetts 02203

Office of the First Selectman
Town of Seabrook
Seabrook, New Hampshire 03874

Chairman
New Hampshire Public Utilities Commission
26 Pleasant Street
Concord, New Hampshire 03301

Attorney General
Department of Attorney General
State House
Augusta, Maine 04330

State Planning Officer
Executive Department
State of Maine
189 State Street
Augusta, Maine 04330

Attorney General
State House
Boston, Massachusetts 02133

Massachusetts Department of Public Health
ATTN: Commissioner of Public Health
600 Washington Street
Boston, Massachusetts 02111

Water Quality & Environmental Commission
Department of Environmental Quality
 Engineering
100 Cambridge Street

Public Service Company of New Hampshire

AUG 0 6 1980

ccs:
John A. Ritscher, Esq.
Ropes and Gray
225 Franklin Street
Boston, Massachusetts 02110

Ralph H. Wood, Esq.
General Counsel
Public Service Company of New Hampshire
1000 Elm Street
Manchester, New Hampshire 03105

Mr. John Haseltine, Project Manager
Yankee Atomic Electric Company
20 Turnpike Road
Westboro, Massachusetts 01581

Mr. Bruce B. Beckley, Project Manager
Public Service Company of New Hampshire
1000 Elm Street
Manchester, New Hampshire 03105

Ms. Elizabeth H. Weinhold
3 Godfrey Avenue
Hampton, New Hampshire 03842

Robert A. Backus, Esq.
O'Neill, Backus, and Spielman
116 Lowell Street
Manchester, New Hampshire 03105

Norman Ross, Esq.
30 Francis Street
Brookline, Massachusetts 02146

Karin P. Sheldon, Esq.
Sheldon, Harmon & Weiss
1725 I Street, N. W.
Washington, D. C. 20006

Laurie Burt, Esq.
Office of the Assistant Attorney General
Environmental Protection Division
One Ashburton Place
Boston, Massachusetts 02108

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE
THE UNITED ILLUMINATING COMPANY
CENTRAL MAINE POWER COMPANY
CENTRAL VERMONT PUBLIC SERVICE CORPORATION
FITCHBURG GAS AND ELECTRIC LIGHT COMPANY
MONTAUP ELECTRIC COMPANY
NEW BEDFORD GAS AND EDISON LIGHT COMPANY
NEW ENGLAND POWER COMPANY
TOWN OF HUDSON, MASSACHUSETTS, LIGHT AND POWER DEPARTMENT
VERMONT ELECTRIC COOPERATIVE, INC.
BANGOR HYDRO-ELECTRIC COMPANY
TAUNTON MUNICIPAL LIGHTING PLANT COMMISSION
MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC COMPANY
MAINE PUBLIC SERVICE COMPANY

DOCKET NO. 50-443

SEABROOK STATION, UNIT 1

AMENDMENT TO CONSTRUCTION PERMIT

Amendment No. 3
Construction Permit No. CPPR-135

1.  The Nuclear Regulatory Commission (the Commission) having found that:

    A.  The application for amendment contained in a letter, dated May 16,
        1979, and amended by letter dated March 14, 1980, complies with the
        standards and requirements of the Atomic Energy Act of 1954, as
        amended, and the Commission's rules and regulations set forth in
        10 CFR Chapter I;

    B.  The issuance of this amendment will not be inimical to the common
        defense and security or to the health and safety of the public;

    C.  The following is financially qualified to assume its ownership
        interest in the Seabrook Station, Unit 1, shown below:

        New Hampshire Electric Coop. Inc.                    2.17391

                                             [Sum:   2.17391];

    D.  Each of the following is financially qualified to increase its
        percent ownership interest in the Seabrook Station, Unit 1,
        shown below:

        Central Maine Power Company      to  6.04178  from 2.54178
        Montaup Electric Company         to  3.96458[1]  from 2.93531

---

[1]Montaup is financially qualified to increase its ownership percentage to 5.00000
by an additional transfer of 1.03542 ownership percentage from the Connecticut
Light and Power Company, but authorization is withdrawn pending confirmation that
transfer will be consumated.

- 2 -

The Connecticut Light and Power
  Company                 to  4.49317[2] from  0.00000
Town of Hudson Light and Power
  Department              to  0.07737  from  0.05780
Massachusetts Municipal Wholesale
  Electric Company        to 11.59340  from  5.59249
Bangor Hydro-Electric Company  to  2.17391  from  0.37249
Taunton Municipal Lighting Plant  to  0.43479  from  0.10034

[Sum: to 28.779    from 11.60021];

E. After the transfer of ownership interests is completed, the percent
ownership interest (shown below) for each of the following will be
equal to or less than its original percent ownership interest as
amended by Amendments 1 and 2 (shown in parentheses) in the Seabrook
Station, Unit 1. (The percent ownership interests shown in 1.C,
1.D, and 1.E add up to one hundred percent).

Public Service Company of New Hampshire   35.23497  (50.00000)
The United Illuminating Company        16.43531  (20.00000)
New England Power Company            9.95766  ( 9.95766)
New Bedford Gas & Electric Lighting
  Company                          3.52317  ( 4.37370)
Central Vermont Public Service Corporation 1.59096  ( 1.59096)
Fitchburg Gas & Electric Light Company  0.43187[3] ( 0.60432)
Vermont Electric Corporative, Inc.     0.41259  ( 0.41259)
Maine Public Service Company        1.46056  ( 1.46056)

[Sum:    69.04709  (88.39979)];

F. Prior public notice of this amendment is not required since the
amendment does not involve a significant hazards consideration.

2. Accordingly, Construction Permit No. CPPR-135 is amended to reflect a
change in the ownership of the facility by adding New Hampshire Electric
Coop., Inc., and by transferring ownership interests as follows:

  A. The following paragraph (3.F.) is added to the construction permit:

    3.F  The following percent ownership interests may be transferred
        from Transferors to Transferees:

    To:  Central Maine Power Company      2.50000
        Montaup Electric Company        1.06469
                             3.56469

---

[2] Retained from original ownership share of 11.9776 instead of being transferred
as contemplated under Amendment No. 1

[3] Fitchburg is financially qualified to increase its ownership percentage to
0.86159 by an additional transfer of 0.43332 ownership percentage from
Connecticut Light and Power Company, but authorization is withdrawn pending
confirmation that the transfer will be consumated.

- 3 -

| From: | United Illuminating Company | 3.56469 |
|---|---|---|

| To: | Massachusetts Municipal Wholesale Electric Company | 6.00091 |
|---|---|---|
| | New Hampshire Electric Cooperative, Inc. | 2.17391 |
| | New Bedford Gas & Edison Light Company | 2.17390 |
| | Bangor Hydro-Electric Company | 1.80142 |
| | Montaup Electric Company | 1.00000 |
| | Central Maine Power Company | 1.00000 |
| | Taunton Municipal Lighting Plant Commission | 0.33445 |
| | Fitchburg Gas & Electric Light Company | 0.26087 |
| | Town of Hudson Light & Power Company | 0.01957 |
| | | 14.76503 |

| From: | Public Service Company of New Hampshire | 14.76503 |
|---|---|---|

| To: | The Connecticut Light and Power Company (shares now retained even though transfer was authorized by Amendment No. 1) | 4.49317[4] |
|---|---|---|

| From: | New Bedford Gas & Edison Light Company | 3.02443 |
|---|---|---|
| | Fitchburg Gas & Electric Light Company | 0.43332 |
| | Montaup Electric Comapny | 1.03542 |

B. In all references in Construction Permit No. CPPR-135 to "applicants" include:

The Connecticut Light and Power Company
New Hampshire Electric Coop., Inc.

3. This amendment is effective as of the date of issuance.

FOR THE NUCLEAR REGULATORY COMMISSION

Darrell G. Eisenhut, Director
Division of Licensing
Office of Nuclear Reactor Regulation

Date of Issuance: AUG 06 1980

---

[4]Authorization of these transfers in effect withdraws the authorization of Amendment No. 1 for the reverse transfers. The proposed transfer of 3.02443 percent from Connecticut Light and Power Company to New Bedford authorized by Amendment No. 1 was cancelled by New Bedford. Verification of the proposed transfer from Connecticut Light and Power to Fitchburg of 0.43332 percent and to Montaup of 1.03542 percent was withdrawn by Supplement 4 to Amendment 40 to the application.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE
THE UNITED ILLUMINATING COMPANY
CENTRAL MAINE POWER COMPANY
CENTRAL VERMONT PUBLIC SERVICE CORPORATION
FITCHBURG GAS AND ELECTRIC LIGHT COMPANY
MONTAUP ELECTRIC COMPANY
NEW BEDFORD GAS AND EDISON LIGHT COMPANY
NEW ENGLAND POWER COMPANY
TOWN OF HUDSON, MASSACHUSETTS, LIGHT AND POWER DEPARTMENT
VERMONT ELECTRIC COOPERATIVE, INC.
BANGOR HYDRO-ELECTRIC COMPANY
TAUNTON MUNICIPAL LIGHTING PLANT COMMISSION
MASSACHUSETTS MUNICIPAL WHOLESALE ELECTRIC COMPANY
MAINE PUBLIC SERVICE COMPANY

DOCKET NO. 50-444

SEABROOK STATION, UNIT 2

AMENDMENT TO CONSTRUCTION PERMIT

Amendment No. 3
Construction Permit No. CPPR-136

1.  The Nuclear Regulatory Commission (the Commission) having found that:

    A.  The application for amendment contained in a letter, dated May 16,
        1979, and amended by letter dated March 14, 1980, complies with the
        standards and requirements of the Atomic Energy Act of 1954, as
        amended, and the Commission's rules and regulations set forth in
        10 CFR Chapter I;

    B.  The issuance of this amendment will not be inimical to the common
        defense and security or to the health and safety of the public;

    C.  The following is financially qualified to assume its ownership
        interest in the Seabrook Station, Unit 2, shown below:

        New Hampshire Electric Coop. Inc.              2.17391

                                           [Sum:    2.17391];

    D.  Each of the following is financially qualified to increase its
        percent ownership interest in the Seabrook Station, Unit 2,
        shown below:

        Central Maine Power Company        to  6.04178  from 2.54178
        Montaup Electric Company           to  3.96458[1] from 2.93531

---

[1]Montaup is financially qualified to increase its ownership percentage to 5.00000
by an additional transfer of 1.03542 ownership percentage from the Connecticut
Light and Power Company, but authorization is withdrawn pending confirmation that
transfer will be consumated.

- 2 -

| | | | | |
|---|---|---|---|---|
| The Connecticut Light and Power Company | to | $4.49317^2$ | from | 0.00000 |
| Town of Hudson Light and Power Department | to | 0.07737 | from | 0.05780 |
| Massachusetts Municipal Wholesale Electric Company | to | 11.59340 | from | 5.59249 |
| Bangor Hydro-Electric Company | to | 2.17391 | from | 0.37249 |
| Taunton Municipal Lighting Plant | to | 0.43479 | from | 0.10034 |

[Sum: to 28.779     from 11.60021];

E. After the transfer of ownership interests is completed, the percent ownership interest (shown below) for each of the following will be equal to or less than its original percent ownership interest as amended by Amendments 1 and 2 (shown in parentheses) in the Seabrook Station, Unit 2. (The percent ownership interests shown in 1.C, 1.D, and 1.E add up to one hundred percent).

| | | |
|---|---|---|
| Public Service Company of New Hampshire | 35.23497 | (50.00000) |
| The United Illuminating Company | 16.43531 | (20.00000) |
| New England Power Company | 9.95766 | ( 9.95766) |
| New Bedford Gas & Electric Lighting Company | 3.52317 | ( 4.37370) |
| Central Vermont Public Service Corporation | 1.59096 | ( 1.59096) |
| Fitchburg Gas & Electric Light Company | $0.43187^3$ | ( 0.60432) |
| Vermont Electric Corporative, Inc. | 0.41259 | ( 0.41259) |
| Maine Public Service Company | 1.46056 | ( 1.46056) |

[Sum:     69.04709   (88.39979)];

F. Prior public notice of this amendment is not required since the amendment does not involve a significant hazards consideration.

2. Accordingly, Construction Permit No. CPPR-136 is amended to reflect a change in the ownership of the facility by adding New Hampshire Electric Coop., Inc., and by transferring ownership interests as follows:

A. The following paragraph (3.F.) is added to the construction permit:

3.F   The following percent ownership interests may be transferred from Transferors to Transferees:

| To: | | |
|---|---|---|
| | Central Maine Power Company | 2.50000 |
| | Montaup Electric Company | 1.06469 |
| | | 3.56469 |

---

[2]Retained from original ownership share of 11.9776 instead of being transferred as contemplated under Amendment No. 1

[3]Fitchburg is financially qualified to increase its ownership percentage to 0.86159 by an additional transfer of 0.43332 ownership percentage from Connecticut Light and Power Company, but authorization is withdrawn pending confirmation that the transfer will be consumated.

- 3 -

| From: | United Illuminating Company | 3.56469 |
|---|---|---|

| To: | Massachusetts Municipal Wholesale Electric Company | 6.00091 |
|---|---|---|
| | New Hampshire Electric Cooperative, Inc. | 2.17391 |
| | New Bedford Gas & Edison Light Company | 2.17390 |
| | Bangor Hydro-Electric Company | 1.80142 |
| | Montaup Electric Company | 1.00000 |
| | Central Maine Power Company | 1.00000 |
| | Taunton Municipal Lighting Plant Commission | 0.33445 |
| | Fitchburg Gas & Electric Light Company | 0.26087 |
| | Town of Hudson Light & Power Company | 0.01957 |
| | | 14.76503 |

| From: | Public Service Company of New Hampshire | 14.76503 |
|---|---|---|

| To: | The Connecticut Light and Power Company (shares now retained even though transfer was authorized by Amendment No. 1) | 4.49317[4] |
|---|---|---|

| From: | New Bedford Gas & Edison Light Company | 3.02443 |
|---|---|---|
| | Fitchburg Gas & Electric Light Company | 0.43332 |
| | Montaup Electric Comapny | 1.03542 |

B.   In all references in Construction Permit No. CPPR-136 to "applicants" include:

The Connecticut Light and Power Company
New Hampshire Electric Coop., Inc.

3.   This amendment is effective as of the date of issuance.

FOR THE NUCLEAR REGULATORY COMMISSION

Darrell G. Eisenhut, Director
Division of Licensing
Office of Nuclear Reactor Regulation

Date of Issuance:  AUG 06 1980

---

[4] Authorization of these transfers in effect withdraws the authorization of Amendment No. 1 for the reverse transfers. The proposed transfer of 3.02443 percent from Connecticut Light and Power Company to New Bedford authorized by Amendment No. 1 was cancelled by New Bedford. Verification of the proposed transfer from Connecticut Light and Power to Fitchburg of 0.43332 percent and to Montaup of 1.03542 percent was withdrawn by Supplement 4 to Amendment 40 to the application.

7590-01

## UNITED STATES NUCLEAR REGULATORY COMMISSION
## DOCKET NOS. 50-443 AND   50-444
## PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, ET AL
## NOTICE OF ISSUANCE OF AMENDMENT TO CONSTRUCTION PERMITS

Notice is hereby given that the U. S. Nuclear Regulatory Commission (the Commission) has issued Amendment No. 3 to Construction Permit No. CPPR-135 and Amendment No. 3 to Construction Permit No. CPPR-136 issued to the Public Service Company of New Hampshire, The United Illuminating Company, Central Maine Power Company, Central Vermont Public Service Corporation, Fitchburg Gas and Electric Light Company, Montaup Electric Company, New Bedford Gas & Edison Light Company, New England Power Company, Town of Hudson, Massachusetts, Light and Power Department, Vermont Electric Cooperative, Inc., Bangor Hydro-Electric Company, Massachusetts Municipal Wholesale Electric Company, Maine Public Service Company and Taunton Municipal Lighting Plant.  The amendments reflect changes in ownership and transfer of shares of the Seabrook Station, Units 1 and 2 (the facility), located in Rockingham County, New Hampshire. The amendments are effective as of their date of issuance.

These amendments provide for the addition of New Hampshire Electric Coop, Inc., and the reinstatement of The Connecticut Light and Power Company as applicants for all licenses previously requested, and the transfer of partial ownership shares as noted in the construction permit amendments for these applicants and for ten other continuing applicants.

The application for the amendments complies with the standards and requirements of the Atomic Energy Act of 1954, as amended (the Act), and the Commission's rules and regulations.  The Commission has made

8008140 171

7590-01

- 2 -

appropriate findings as required by the Act and the Commission's rules and regulations in 10 CFR Chapter I, which are set forth in the amendment. Prior public notice of this amendment was not required since the amendment does not involve a significant hazards consideration.

For further details with respect to this action, see (1) the application for amendments contained in Public Service Company of New Hampshire's letters, dated May 16, 1979, and March 14, 1980; (2) Amendment Nos. 1 and 2 to Construction Permit No. CPPR-135; (3) Amendment Nos. 1 and 2 to Construction Permit No. CPPR-136; and (4) the Commission's letter to Public Service Company of New Hampshire and the related Safety Evaluation attached thereto. All of these items are available for public inspection at the Commission's Public Document Room, 1717 H Street, NW, Washington, D.C. and at the Exeter Public Library, Front Street, Exeter, New Hampshire 03833.

A copy of items (2) and (3) may be obtained upon request addressed to the U.S. Nuclear Regulatory Commission, Washington, D.C.  20555, Attention: Director, Division of Licensing.

Dated at Bethesda, Maryland this 6 th day of August,    1980.

FOR THE NUCLEAR REGULATORY COMMISSION

B. J. Youngblood, Chief
Licensing Branch No. 1
Division of Licensing

AUG 0 6 1980

SAFETY EVALUATION

SUPPORTING AMENDMENT NO. 3 TO

CONSTRUCTION PERMIT NOS. CPPR-135 AND CPPR-136

SEABROOK STATION, UNITS 1 AND 2

Introduction

On July 7, 1976, Construction Permit Nos. CPPR-135 and CPPR-136 were issued to the joint owners of the Seabrook Station, Units 1 and 2.  Subsequently, Amendment Nos. 1 and 2 were issued (December 27, 1978 and January 31, 1979, respectively) approving certain ownership transfers.  The respective current ownership interests of each of the co-holders of the above construction permits are shown in column I of Table 1.

By letter dated May 16, 1979 (Amendment 40 to the License Application) and as amended by letter dated March 14, 1980 (Supplement No. 4 to Amendment 40), a further amendment to the permits was requested, whereby ownership interests in the facility are proposed to be rearranged among several of the existing participants and an interest would be assumed by one new proposed joint owner.  In order to further clarify the proposed transfer and to respond to the staff's request for additional financial information, the applicants submitted additional information on June 1, 1979; August 8, 1979; October 10, 1979; March 14, 1980; April 24, 1980; and May 15, 1980.  The proposed respective ownership interests of each of the participants are shown in column III of Table 1.  The amount of the respective net increase in ownership interests for each of the

- 2 -

TABLE 1

| Participant | Seabrook Station, Units 1 and 2 Percent Ownership Interest | | |
|---|---|---|---|
| | (I) Previous | (II) Amount of Increase | (III) Proposed |
| Public Service Company of New Hampshire | 50.00000 | --- | 35.23497 |
| The United Illuminating Company | 20.00000 | --- | 16.43531 |
| Central Maine Power Company | 2.54178 | 3.50000 | 6.04178 |
| Central Vermont Public Service Corporation | 1.59096 | --- | 1.59096 |
| The Connecticut Light & Power Company[1] | 3.02443 | --- | 3.02443 |
| Fitchburg Gas and Electric Light Company[2] | 0.60432 | 0.26087 | 0.86519 |
| Montaup Electric Company[2] | 2.93531 | 2.06469 | 5.00000 |
| New Bedford Gas and Edison Light Company[1] | 1.34927 | 2.17390 | 3.52317 |
| New England Power Company | 9.95766 | --- | 9.95766 |
| Town of Hudson Light and Power Department | 0.05780 | 0.01957 | 0.07737 |
| Vermont Electric Cooperative, Incorporated | 0.41259 | --- | 0.41259 |
| Massachusetts Municipal Wholesale Electric Company | 5.59249 | 6.00091 | 11.59340 |
| Maine Public Service Company | 1.46056 | --- | 1.46056 |
| Bangor Hydro-Electric Company | 0.37249 | 1.80142 | 2.17391 |
| Taunton Municipal Lighting Plant | 0.10034 | 0.33445 | 0.43479 |
| New Hampshire Electric Coop., Inc. | --- | 2.17391 | 2.17391 |
| | 100.00000 | | 100.00000 |

[1] New Bedford was previously approved by NRC for a total ownership interest of 4.37370 percent. This interest included a proposed transfer of 3.02443 percent from Connecticut Light & Power which was cancelled. New Bedford's currently proposed total ownership interest is smaller than the interest for which it was found financially qualified and approved by NRC.

[2] Fitchburg and Montaup include percentage transfers (0.43332 and 1.03542, respectively) from the Connecticut Light & Power Company previously approved by NRC but not yet consummated.

- 3 -

participants as a result of this amendment will be as shown in column II of
Table 1.  For those participants not seeking increases in ownership interests,
the proposed ownership interests under the requested amendment will be equal
to or lower than the previously approved ownership interests.

With respect to the Allottee's technical qualifications, in Amendment 40 to
the License Application dated May 14, 1979, and transmitted by letter of May 16,
1979, Public Service Company of New Hampshire made reference (i) to the Joint
Ownership Agreement which vests total responsibility for construction and
operation in Public Service Company of New Hampshire, and (ii) to the informa-
tion in the Preliminary Safety Analysis Report and in the hearing record (N.B.,
Tr. 4069-4216), all of which information supported the findings of the Atomic
Safety and Licensing Board (see Initial Decision, pp. 21-23, 150-153 and 199)
and none of which is in any way altered by the proposed reallocations.  This
is consistent with the License Application docketed on July 9, 1973, which
states "All participants will execute a Joint Ownership, Construction, and
Operating Agreement which specifically delegates to the Public Service Company
of New Hampshire the sole responsibility for the design and construction of
the Units and for operation and maintenance of the Units."  On March 11, 1980,
the New Hampshire Electric Cooperative, Inc., the only new owner proposed in
Amendment 40 to the Application, by signing an "Appointment of Agent and
Signature of Applicant" appointed Public Service Company of New Hampshire as
its agent for its proposed ownership share of the Seabrook Station.

- 4 -

Supporting information enclosed with the letter of April 24, 1980 includes a statement by the New Hampshire Electric Cooperative, Inc. that the loop is not owned, controlled or dominated by an alien, foreign corporation or foreign government.

In their May 15, 1978 letter, Public Service Company of New Hampshire, who is authorized by "Appointment of Agent and Signature of Applicant" forms to act as agent for each, states that the Transferee-Applicants agree that they will not permit any individual to have access to Restricted Data until the Nuclear Regulatory Commission has determined that such access will not endanger the common defense and security. The New Hampshire Electric Cooperative, Inc. provided this authorization by signing the appropriate form on March 11, 1980.

General Analysis

We have reviewed the application for Amendment No. 3 to Construction Permits Nos. CPPR-135 and CPPR-136 and conclude that since Public Service Company of New Hampshire will retain full responsibility for the design, construction, and operation of Seabrook Station, Units 1 and 2, the proposed transfers of ownership interests would not involve a significant hazards consideration inasmuch as the transfers do not involve an increase in the probability of an accident, an increase in the consequences of an accident, or a decrease in safety margins. We therefore conclude that the activities authorized by these amendments would not constitute an unreasonable risk to the health and safety of the public.

- 5 -

Since the application for amendments states or demonstrates that the new partic-
ipant is not owned, controlled or dominated by an alien, foreign corporation,
or a foreign government, and has agreed in writing to comply with the require-
ments of 10 CFR 50.37 regarding the limiting of access to restricted data, we
conclude from our review that the activities authorized by these amendments
would not be inimical to the common defense and security.

We have evaluated the financial qualifications of the new participant, the
participants with a proposed increased percent ownership and two participants,
Fitchburg Gas and Electric Light Company and Montaup Electric Company, each of
which would experience a net increase if agreements for transfers authorized
by Amendment Nos. 1 to the construction permits are reached, and the transfers
again authorized, while the financial review in this Safety Evaluation
remains applicable.

- 5 -

Financial Analysis

Introduction

The Commission's regulations which relate to financial data and information
required to establish financial qualifications for an applicant for a facility
construction permit are Section 50.33(f) of 10 CFR Part 50 and Appendix C to
10 CFR Part 50.  In accordance with these requirements, we evaluate whether
there is reasonable assurance that an applicant can obtain the necessary funds
to cover its portion of the estimated construction and related fuel cycle costs
for the proposed facility.  Herein, we evaluate the financial qualifications
of each of the applicants having increased or new interests in the Seabrook
Station, Units 1 and 2, as a result of the amendments to the construction
permit.  Our evaluation of the financial qualifications of each of these appli-
cants included consideration of the Commission's decision Public Service Company
of New Hampshire, et al., 7 NRC 1, at 18 (1978), (Seabrook Station, Units 1
and 2), which states ". . . the applicant must have a reasonable financing plan
in light of relevant circumstances."

Consistent with the above requirements, we require that investor-owned utility
applicants submit pro-forma statements of sources and uses of funds with under-
lying assumptions and that non-investor-owned utility applicants submit alterna-
tive financial data and information.  In general terms, pro-forma statements
of sources and uses of funds are best described as financial plans.  From the
use of funds viewpoint, a financial plan shows total projected year-to-year
construction fund requirements.  Total construction fund requirements for any

- 7 -

given year represent the sum of all planned construction expenditures, for all facilities under construction during that period, including the subject facility.

At the same time, a financial plan also shows sources of funds or, stated simply, where the required capital is coming from.  Generally, sources of funds for a public utility consist of short-term borrowings, internal cash generation, and proceeds from additional sales of long-term debt, preferred stock, and common equity securities.  From this perspective, and in consideration of important underlying assumptions to the financing plan, we determine the impact of such financing upon significant financial parameters.  In this respect, the reasonableness of an applicant's financial projections is determined.

This reasonable assurance standard, however, must be viewed in light of the extended period of time from the start of construction to commercial operation. Consequently, one must necessarily make certain assumptions regarding future conditions.  Two fundamental assumptions which have been incorporated in the analysis of the applicants' projected financing are that there will be rational regulatory policies in the setting of rates for utility service (for the investor-owned utility applicants) and that viable capital markets will exist.  The former assumption implies that rates will be set to at least cover the cost of service, including the cost of capital; the latter assumption implies that capital will be available at some cost.

- 8 -

Rate of Return on Common Equity

Of all factors considered during the review of an investor-owned utility appli-
cant's financial projections in determination of its financial qualifications,
the assumptions of its projected rates of return on common equity during the
period of construction are most significant. Rate of return on common equity
is best described as earnings stated as a percentage of all the stockholders'
equity accounts, such as capital stock, premiums, and retained earnings in a
corporation. This is derived by first deducting from gross operating revenues
the company's operation and maintenance expenses, depreciation, interest charges,
taxes, and preferred dividends. This computation results in net income available
to the common stockholder, the "bottom line" of a company's operations. Dividing
this by the total of investment dollars provided by the company's common stock-
holders and accumulated retained earnings results in per-unit return on common
equity. Restated on a percentage basis, this translates into the rate of return
on common equity.

Of all investors providing capital (i.e., proceeds of long- and short-term debt,
preferred stock, and common stock) to a company, shareholders of common stock
bear the highest risk. While capital costs attributable to a company by debt
and preferred stock are fixed by contract, and must be paid at the agreed rate,
those dollars earned on common equity represent whatever remains after payment
of all other charges and expenses. By reason of its inherent risk, since holders
of a company's common stock bear the lowest priority of payment to all other
obligations of that company, rate of return on common equity represents the

- 9 -

best indicator of a company's profitability.  Profitability is important in that it affects both interest coverage and the price of a company's securities, which bear upon the company's ability to successfully market its securities and maintain the formation of a reasonable capital structure.

Since the investor-owned applicants are public utilities afforded monopoly status in their respective areas of service, they are subject to regulation. Accordingly, their rates of return are set by the regulatory agencies having jurisdiction over them through the rates they charge.  However, unlike utility base rates, which are fixed, the rate of return on common equity is only allowed to be earned and is not guaranteed.  While the concept of a fair rate of return on property used and useful in public utility service is deeply ingrained in public utility regulatory law and economics, there still exists no absolute certainty as to a utility's future earnings.  Resultantly, one is required to consider its current level of profitability and other relevant circumstances in assessing the reasonableness of a projected return on common equity.

We have reviewed the respective rates of return on common equity for each of the investor-owned applicants having increased joint-ownership interests in the Seabrook Station, Units 1 and 2.  An individual summary financial analysis is provided within for each of these applicants which addresses the applicant's respective rates of return on common equity in combination with other facets of its finances.

- 10 -

Internal Cash Generation

In the meeting of an applicant's year-by-year construction expenditures, the
first item considered is the level of internal cash generation.  This is because
internal cash generation reduces the level of external financing required.  By
reason of certain non-cash expenses (primarily depreciation and deferred income
taxes) and the portion of retained earnings not attributable to allowance for
funds used during construction, a company may generate funds internally.  To
show an example in a simplified fashion, a company is allowed depreciation of
its assets.  These amounts are reflected on the company's income statement as
an expense.  However, since these funds are not disbursed, the company may use
them for its own needs.  These dollars represent funds which the company can
apply to its capital requirements, thereby reducing its need for externally
obtained funds.  Another example is when a company earns a profit, it shares
that profit with its stockholders in two ways.  First, it takes some of its
net income and distributes that portion to its shareholders in the form of
dividends.  After its dividends have been disbursed, the company keeps the
balance of its net income and adds this amount to its retained earnings account.
Again, this represents additional funds available to a company for its capital
needs.

As an incidental point, although the allowance for funds used during construc-
tion portion of earnings is not an immediate source of cash to a company,
investors do recognize it as a future source of cash, since when it is ulti-
mately placed into rate base (property used and useful in public utility
service), it generates funds through both earnings and depreciation.

- 11 -

At the same time, retained earnings also benefit the shareholders in that these amounts increase the worth of their investment and further enable the company to grow.  The overall level of a company's internal cash generation is likewise of significance to shareholders in that it provides cash coverage to dividends. This is especially important to investors of public utilities common stocks, who generally own such securities because of their income characteristics.  By a utility continuing to generate a sufficient amount of cash flow, its share-holders of common stock have a higher confidence in the payment of future dividends.  This is beneficial to the company as, in part, it continues to maintain the attractiveness of its equity securities.

In each of the individual summary financial analyses of the applicants having increased or new joint-ownership interests in the Seabrook Station, Units 1 and 2, internal cash generation is reviewed both on a current and projected basis.

Interest Coverage

In order to meet their capital requirements during the construction of the Seabrook Station, Units 1 and 2, the investor-owned applicants will, from time to time, enter the market for the sale of long-term debt securities.  These securities are mortgage bonds which are secured with a lien on the assets of the issuer.  In order to protect the assets mortgaged under a company's debt, a trust indenture agreement is made between the company and the bondholders. Indentures of such mortgage bonds contain provisions which, in addition to protecting the assets mortgaged, also cover the interest due to the bondholders.

- 12 -

At the same time, to provide an adequate level of earnings cushion over and above the company's interest requirements, there generally exists in such mortgage and trust deed indentures an interest coverage test. Inextricably related to earnings and interest charges, this provision precludes the company from issuing additional debt should there not be satisfactory earnings coverage over its interest obligations. Because of its significance, the interest coverage ratio is a major criterion used by the financial community in making credit decisions with respect to a company's debt.

In each of the individual summary financial analyses of the applicants having increased or new joint-ownership interests in the Seabrook Station, Units 1 and 2, interest coverage is further reviewed on both historical and projected bases.

## Capital Structure

In order for a company to conduct a viable financing plan and preserve the attractiveness of its securities, it must maintain a reasonably balanced capital structure. The term capital structure refers to the composition of a company's capitalization, that is, the proportion of debt, equity, and preferred stock which constitute capitalization. Capital structure is an important consideration in corporate financial analysis in that it shows how much equity capital is available to protect the senior obligations, or in other words, how much the owners are using their own capital or relying on creditors' money.

- 13 -

By maintaining a reasonable and well-balanced capital structure, latitude will exist in a company's options of financing.  This will help achieve borrowing reserve, allowing flexibility both in the timing and selection of securities to be issued to meet capital requirements.  Most important, under these circumstances, its securities will maintain their attractiveness to investors by virtue of their lower risk, since capital structure affects interest coverage.

Generally speaking, investor-owned electric utilities have historically had capital structures composed of between 50 to 60 percent long-term debt, 10 to 15 percent preferred stock, and 30 to 40 percent common equity.  These ranges of capital structure are considered reasonable by the financial community in that they maintain a sufficient amount of equity capital protection to the senior security holders and, from this viewpoint, help protect the attractiveness of the securities.

In each of the individual summary financial analyses of the applicants having increased or new joint-ownership interests in the Seabrook Station, Units 1 and 2, capital structure is further reviewed on both historical and projected bases.

- 14 -

INDIVIDUAL SUMMARY FINANCIAL ANALYSES

Central Maine Power Company

Central Maine Power Company provides electric service to 375,000 customers in Southern and Central Maine.  Its operating revenues increased from $208.2 million in 1978 to $271.8 million in 1979, while net income was $29.6 million in both years.  At December 31, 1979, its invested capital amounted to $538.0 million and consisted of 47.3 percent long-term debt, 12.9 percent preferred stock, and 39.8 percent common equity.  This capital structure compares favorably with the previously stated historical range of the electric utility industry.  Concurrently, it provides a substantial amount of equity capital protection to the holders of the Company's senior obligations, thereby contributing to its financial integrity.

During 1979, this applicant earned a 12.0 percent rate of return on average common equity, compared with 13.4 percent realized in 1978.  Its long-term and total interest charges in 1979 were covered by pretax earnings 3.3 and 2.6 times, respectively, versus coverages of 3.2 and 2.9 realized in 1978.  This compares favorably with the Company's trust indenture requirement that its earnings be at least twice its interest charges, including annual interest charges associated with a new debt offering, before it may issue additional debt.  Central Maine Power Company's outstanding bonds are rated "A" by Moody's and "BBB plus" by Standard and Poor's.

- 15 -

Central Maine Power Company plans to finance its 6.04178 percent joint-ownership interest in the Seabrook Station, Units 1 and 2, through the use of internally generated cash and short-term borrowings which will be subsequently refinanced with proceeds received from issuances of additional first mortgage bonds, preferred stock, and common stock.  In 1979 it financed $59.3 million which was derived from $17.4 million of internally generated cash and $41.9 million from external sources.  Internally generated funds financed 29.3 percent of its total construction expenditures for 1979.

At our request, Central Maine Power Company supplied a projected sources of funds statement for the construction period of the Seabrook Station, Units 1 and 2, with underlying assumptions, demonstrating how it might raise the requisite funds to construct the facility.  Internally generated cash over this period is projected to be 43.9 percent of total construction expenditures and will cover 160 percent of its expected outlays for the Seabrook Station, Units 1 and 2.  This projected level of internal cash generation is not unreasonable in light of its historical experience.  Moreover, this projected financing will result in a capital structure within the historical range of the electric utility industry while maintaining a level of interest coverage on a year-by-year basis during the period of the facility's construction in excess of its trust indenture requirements.

In light of the above, our review of the financial projections of Central Maine Power Company leads us to conclude that they are within the zone of reasonableness and that they constitute a reasonable financing plan.  Accordingly, we

- 16 -

conclude that the Central Maine Power Company is financially qualified to design and construct the facility to the extent of its joint-ownership interest.  This conclusion is predicated upon our determination that there is reasonable assurance that it can raise the funds necessary to cover its 6.04178 percent share of the estimated costs to design and construct the Seabrook Station, Units 1 and 2, including related fuel cycle costs.

- 17 -

Fitchburg Gas and Electric Light Company

Fitchburg Gas and Electric Light Company provides electric and gas service to
several communities in North Central Massachusetts.  Its operating revenues
increased from $29.1 million in 1978 to $34.3 million in 1979, while for the
same years net income increased from $1.9 million to $2.3 million.  Invested
capital at December 31, 1979, amounted to $33.4 million and consisted of 50.2
percent long-term debt, 12.2 percent preferred stock, and 37.6 percent common
equity.  This capital structure compares favorably with the previously stated
historical range of the electric utility industry.  Concurrently, it provides
a sufficient amount of equity capital protection to the holders of the Company's
senior obligations, thereby contributing to its financial integrity.

During 1979, this applicant earned a 16.5 percent rate of return on average
common equity, compared with 15.3 percent realized in 1978.  Its long-term
interest and total interest charges in 1979 were covered by pretax earnings
3.6 times and 3.0 times, respectively, versus coverages of 3.4 times and 2.9
times realized in 1978.  These levels of long-term interest coverage compare
favorably with the Company's indenture requirement that its earnings be at
least twice its interest charges, including interest associated with a new
debt offering before it may issue additional debt.  The Fitchburg Gas and
Electric Light Company's long-term bonds are rated "Baa" by Moody's and "BBB"
by Standard and Poor's.

- 18 -

The Fitchburg Gas and Electric Light Company plans to finance its 0.86519 per-
cent joint-ownership interest in Seabrook Station, Units 1 and 2, through the
use of internally generated cash and short-term borrowings which will subse-
quently be refinanced with proceeds from issuances of new equity or debt
securities.  In this respect, its sources of funds in 1979 totaled $8.6 million
and were derived from $4.0 million of internally generated cash and $4.6 million
from external sources.  Internally generated cash financed 46.5 percent of its
total construction expenditures for 1979.

At our request, Fitchburg Gas and Electric Light Company supplied a projected
sources of funds statement for the Seabrook construction period, with under-
lying assumptions, demonstrating how it might raise the requisite funds to
construct the facility.  Internally generated cash over this period is pro-
jected to be 47.3 percent of total construction expenditures and will cover
100 percent of its expected outlays for Seabrook Station, Units 1 and 2.  This
projected level of internal cash generation is reasonable in light of its
historical experience.  Moreover, this projected financing will result in a
capital structure within the historical range of the electric utility industry
while maintaining a level of interest coverage on a year-by-year basis during
the period of the facility's construction equal to or above its indenture
requirements.

In light of the above, our review of the financial projections of the Fitchburg
Gas and Electric Light Company leads us to conclude that they are within the
zone of reasonableness and that they constitute a reasonable financing plan.

- 19 -

Accordingly, we conclude that the Fitchburg Gas and Electric Light Company is financially qualified to design and construct the facility to the extent of its ownership share.  This conclusion is predicated upon our determination that there is reasonable assurance that it can raise the funds necessary to cover its 0.86519 percent share of the estimated costs to design and construct the Seabrook Station, Units 1 and 2, including related fuel cycle costs.

- 20 -

Montaup Electric Company

All debt and equity securities of the Montaup Electric Company are owned by
Blackstone Valley Electric Company and Eastern Edison Company which in turn
are wholly owned subsidiaries of Eastern Utilities Associates.  The Montaup
Electric Company is the principal wholesale source of supply of electricity to
the two Eastern Utilities Associates subsidiaries, which jointly service several
towns and rural areas of Rhode Island and Massachusetts.  Its operating revenues
rose from $110.3 million in 1978 to $138.2 million in 1979, while its net income
rose from $7.1 million to $8.6 million.  Invested capital at December 31, 1979,
amounted to $148.9 million and consisted of 50.3 percent long-term debt, 1.0
percent preferred stock, and 48.7 percent common equity.  This capital structure
compares favorably with the previously stated historical range of the electric
utility industry.  Concurrently, it provides a substantial amount of equity
capital protection to the holders of the Company's senior obligations, thereby
contributing to its financial integrity.

During 1979, this applicant earned a 12.7 percent rate of return on average
common equity, compared with 11.3 percent realized in 1978.  Under the provi-
sions of the Montaup Debenture Bonds, there are no restrictions of issue related
either to interest coverages or bondable property additions.  As noted above,
the outstanding securities of Montaup Electric Company are privately held by
its parent companies and, therefore, are not rated.  This relationship allows
this applicant substantial flexibility in its financing by not having such
restrictions upon the issuance of its debt and by having a ready buyer awaiting
the purchase of its securities.

- 21 -

The Montaup Electric Company plans to finance its 5.0 percent joint-ownership interest in the Seabrook Station, Units 1 and 2, primarily by short-term bank borrowings which will be subsequently refinanced with proceeds received from the sale of its bonds and common stock.  In this respect, this applicant's sources of funds in 1979 totaled $30.7 million and were derived from $9.9 million of internally generated cash, a $13.6 million increase in notes payable, and a $7.2 million increase in common stock.  Internally generated cash in 1979 financed 32.2 percent of total construction expenditures.

At our request, the Montaup Electric Company supplied a projected sources of funds statement for the Seabrook construction period, with underlying assumptions, demonstrating how it might raise the requisite funds to design and construct the Seabrook Station, Units 1 and 2, to the extent of its joint-ownership share.  Montaup Electric Company's internally generated cash over this period is projected to be 14.1 percent of the total construction expenditures and 23.9 percent of its expected outlays for the Seabrook Station, Units 1 and 2.  This applicant's projected level of internal cash generation is reduced as a result of its high dividend payout to the parent.  However, during the course of its financing of the Seabrook plant, its capital structure will remain stable to provide good equity protection.

In light of the above, our review of the financial projections of the Montaup Electric Company leads us to conclude that they are within the zone of reasonableness and that they constitute a reasonable financing plan.  Accordingly, we conclude that the Montaup Electric Company is financially qualified to

- 22 -

design and construct the facility to the extent of its respective joint-ownership
interest.  This conclusion is predicated upon our determination that there is
a reasonable assurance that it can raise the funds necessary to cover its 5.0
percent share of the estimated costs to design and construct the Seabrook Station,
Units 1 and 2, including related fuel cycle costs.

- 23 -

Town of Hudson, Massachusetts, Light and Power Department

The Town of Hudson, Massachusetts, Light and Power Department is a municipally owned electric system supplying electricity to the Town of Hudson, Massachusetts. Its operating revenues for the fiscal year ending December 31, 1979, were $5.6 million and its net utility plant was $4.9 million.

The Town of Hudson, Massachusetts, Light and Power Department plans to finance its 0.07737 percent joint-ownership interest in the Seabrook Station, Units 1 and 2, primarily through utilization of internally generated funds.  Presently, it anticipates that no bond financing will be necessary to meet its share of the expenditures required to construct the facility.  Review of its historical internal cash generation indicates that this applicant's projected levels of internal cash generation are reasonable.  However, if borrowing is required, principal and interest due from such obligations would be funded from current operating funds derived from the sale of energy.  As all of its previous long-term debt has been redeemed, it has none outstanding at present.  This con-stitutes 100 percent equity protection to its assets and allows for borrowing reserve.

The Town of Hudson, Massachusetts, Light and Power Department's rates are established and changed under Massachusetts laws and require the municipality to charge rates that are not less than the cost of operations.  Since its rates are not subject to the approval of any regulatory authority, it has unilateral authority to set reasonable rates.  The foregoing acts as a mechanism for the

- 24 -

applicant to be able to maintain its financial integrity, internally generate sufficient funds, and attract capital, when necessary, to cover its estimated construction expenditures during the facility's construction.

Based on the above information, we conclude that there is a reasonable assurance that the Town of Hudson, Massachusetts, Light and Power Department can raise the funds necessary to cover its 0.07737 percent share of the costs to design and construct the Seabrook Station, Units 1 and 2, including related fuel cycle costs.  Accordingly, we have determined that the Town of Hudson, Massachusetts, Light and Power Department is financially qualified to design and construct the Seabrook Station, Units 1 and 2, to the extent of its joint-ownership interest.

- 25 -

## Massachusetts Municipal Wholesale Electric Company

The Massachusetts Municipal Wholesale Electric Company is a public corporation and political subdivision of the Commonwealth of Massachusetts and was established as a coordinating and planning agency for the development of its municipal members' bulk power supply contracts. Thirty-one Massachusetts municipalities have the approval of their respective local political subdivisions authorizing membership in the Massachusetts Municipal Wholesale Electric Company.

To finance its 11.59340 percent joint-ownership interest in the Seabrook Station, Units 1 and 2, the Massachusetts Municipal Wholesale Electric Company will issue long-term debt in the form of revenue bonds. As of December 1979, this applicant had successfully issued $560.87 million of such bonds. The ratings of its bonds are listed by Moody's as "A" and by Standard and Poor's as "A+." These bonds are 100 percent secured with "take or pay" life of unit Power Sales Agreements with its member-municipal electric systems. Since there is no agency exercising regulatory powers over it for power delivered, under the terms of the Power Sales Agreements, the Massachusetts Municipal Wholesale Electric Company has unilateral authority to charge rates necessary to cover all of its costs, including interest charges and debt repayment. This acts as a mechanism for this applicant to maintain its financial integrity and attract the capital required to cover its estimated construction expenditures during the facility's construction.

- 26 -

Based upon the preceding information, we conclude that the Massachusetts Municipal Wholesale Electric Company is financially qualified to design and construct the Seabrook Station, Units 1 and 2, to the extent of its 11.59340 percent joint-ownership interest.  This conclusion is predicated upon our determination that the Massachusetts Municipal Wholesale Electric Company has demonstrated a reasonable assurance that it can obtain the necessary funds to cover its share of the estimated costs to design and construct the facility, including related fuel cycle costs.

- 27 -

Bangor Hydro-Electric Company

The Bangor Hydro-Electric Company provides electric service to several counties
in Eastern Maine.  Its operating revenues increased from $42.6 million in 1978
to $51.7 million in 1979, while for the same years net income increased from
$3.4 million to $3.5 million.  Invested capital at December 31, 1979, amounted
to $67.8 million and consisted of 47.7 percent long-term debt, 14.4 percent
preferred stock, and 37.9 percent common equity.  This capital structure com-
pares favorably with the previously stated historical range of the electrical
utility industry.  Concurrently, it provides a sufficient amount of equity
capital protection to the holders of the Company's senior obligations, thereby
contributing to its financial integrity.

During 1979, this applicant earned a 11.6 percent rate of return on average
common equity, compared with 12.9 percent realized in 1978.  Its long-term and
total interest charges in 1979 were covered by pre-tax earnings 2.7 times and
1.7 times, respectively, versus coverages of 3.2 times and 2.8 times in 1978.
This applicant's recent long-term interest coverage compares favorably with
its trust indenture requirement that its earnings be at least twice its
interest charges, including annual interest charges associated with a new debt
offering, before it may issue additional debt.

The Bangor Hydro-Electric Company plans to finance its 2.17391 percent joint-
ownership interest in the Seabrook Station, Units 1 and 2, through the use of
internally generated cash and short-term borrowings which will subsequently be

- 28 -

refinanced with proceeds from issuances of new equity or debt securities.   In
this respect, its sources of funds in 1979 totaled $8.6 million and were derived
from internally generated cash and from issuances of notes payable to banks,
issuances of bonds, issuances of common and preferred stock, and other sources.

At our request, the Bangor Hydro-Electric Company supplied a projected sources
of funds statement for the Seabrook construction period, with underlying assump-
tions, demonstrating how it might raise the requisite funds to construct the
Seabrook Station, Units 1 and 2.   Internally generated cash over this period
is projected to be 20.6 percent of total construction expenditures and will
cover 220.8 percent of its expected outlays for the Seabrook Station, Units 1
and 2.   This projected level of internal cash generation is not unreasonable
in light of its historical experience.   Moreover, its projected financing will
result in a capital structure within the historical range of the electric
utility industry while maintaining a level of interest coverage on a year-by-
year basis during the period of the facility's construction in excess of
indenture requirements.

In light of the above, our review of the financial projections of the Bangor
Hydro-Electric Company leads us to conclude that they are within the zone of
reasonableness and that they constitute a reasonable financing plan.   Accord-
ingly, we conclude that the Bangor Hydro-Electric Company is financially
qualified to design and construct the facility to the extent of its joint
ownership interest.   This conclusion is predicated upon our determination that
there is reasonable assurance that it can raise the funds necessary to cover

- 29 -

its 2.17391 percent share of the estimated costs to design and construct the Seabrook Station, Units 1 and 2, including related fuel cycle costs.

- 30 -

<u>Taunton Municipal Lighting Plant Commission</u>

The Taunton Municipal Lighting Plant is a municipally owned electric system supplying electricity to the Town of Taunton, Massachusetts.  Its operating revenues for the fiscal year ending December 31, 1979, were $29.7 million and its net utility plant was $30.7 million.

The Taunton Municipal Lighting Plant Commission plans to finance its 0.43479 percent joint-ownership interest in the Seabrook Station, Units 1 and 2, solely through utilization of internally generated funds.  In this respect, our review of its projected levels of internal cash generation to finance its construction expenditures during this facility's construction indicate that they are not unreasonable in light of its recent experience.

The Taunton Municipal Lighting Plant Commission's rates are established and changed under Massachusetts laws and require the municipality to charge rates that are not less than the cost of operations.  Since its rates are not subject to the approval of any regulatory agency, it has unilateral authority to set reasonable rates.  This acts as a mechanism for this applicant to maintain its financial integrity, thereby allowing it to internally generate sufficient funds to cover its projected construction expenditures during the construction of Seabrook.

Based on the above information, we conclude that there is a reasonable assurance that the Taunton Municipal Lighting Plant Commission can raise the funds

- 31 -

necessary to cover its 0.43479 percent share of the costs to design and construct the Seabrook Station, Units 1 and 2, including related fuel cycle costs. Accordingly, we have determined that the Taunton Municipal Lighting Plant Commission is financially qualified to design and construct the Seabrook Station, Units 1 and 2, to the extent of its joint-ownership interest.

- 32 -

New Hampshire Electric Cooperative, Inc.

New Hampshire Electric Cooperative, Inc. is a rural electric distribution
cooperative operating as a New Hampshire corporation.  Its member-customers
are principally in New Hampshire with a smaller number in Vermont.  Its
operating revenues for 1979 were $19.1 million and its utility plant was $44.6
million.

New Hampshire Electric Cooperative, Inc. plans to finance its 2.17391 owner-
ship share in the Seabrook Station, Units 1 and 2, from the proceeds of a loan
guaranteed by the Rural Electrification Administration.  The Cooperative has
been an active, successful borrower from REA for 40 years.  It had $36.3 million
of REA long-term debt outstanding at December 31, 1979.  Subsequent to the
issuance of this amendment, we require New Hampshire Electric Cooperative, Inc.
to inform the NRC staff of any action by the REA on its pending loan request
including, but not limited to, submittal of copies of the executed REA loan
commitment notice.

Based upon the preceding information, we conclude that New Hampshire Electric
Cooperative, Inc. is financially qualified to design and construct the Seabrook
Station, Units 1 and 2, to the extent of its joint-ownership interest.  This
conclusion is based on our determination that the New Hampshire Electric
Cooperative, Inc. has demonstrated a reasonable assurance that it can raise
the necessary funds to cover its 2.17391 percent share of the estimated costs
to design and construct the Seabrook Station, Units 1 and 2, including related
fuel cycle costs.

- 33 -

Conclusion

Based upon the preceding analyses, we conclude that Central Maine Power Company, Fitchburg Gas and Electric Light Company, Montaup Electric Company, Town of Hudson Light and Power Department, Massachusetts Municipal Wholesale Electric Company, Bangor Hydro-Electric Company, and Taunton Municipal Lighting Plant Commission are financially qualified to increase their respective joint-ownership interests in the Seabrook Station, Units 1 and 2, as requested. Likewise, we conclude that New Hampshire Electric Cooperative, Inc. is financially qualified to assume its respective ownership interest in the Seabrook Station, Units 1 and 2, as proposed in the requested amendment to the construction permits.  This conclusion is predicated upon our determination that each of these applicants has demonstrated a reasonable assurance of obtaining the funds necessary to support its respective share of the costs necessary in the design and construction of the Seabrook Station, Units 1 and 2, including nuclear fuel inventory for the first core.

Our conclusion that the above applicants are financially qualified to design and construct the Seabrook Station, Units 1 and 2, to the extent of their respective ownership interests is based upon an assessment that their financing projections constitute reasonable financing plans.  We do not consider these projections to be a forecast of what will necessarily occur.  They need only demonstrate one possible way by which the planned construction expenditures, including those resulting from construction of the subject facility, might reasonably be financed.  We realistically expect that the financing plans will

- 34 -

change over time to accommodate changing financial and economic conditions. The proposed financing is in accord with general industry practices and the assumptions being used, although not susceptible to precise measurement against absolute criteria, are in line with what one might expect under the postulated conditions. Since the financing projections can be characterized as reasonable, we conclude that the reasonable assurance standard has been satisfied.

Subsequent to issuance of the amendment we require:  Submittal to the NRC staff of (1) information on any action by the Rural Electrification Administration on the New Hampshire Electric Cooperative, Inc. pending loan request, including, but not limited to, copies of the executed Rural Electrification Administration loan commitment notice; (2) copies of the executed joint-ownership agreement among the participants; and (3) copies of the orders approving these transfers of ownership issued by State regulatory agencies.