FILED

2020 Sep-23  PM 07:15
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| NUCLEAR DEVELOPMENT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:18-CV-01983-LCB |
| | ) | |
| TENNESSEE VALLEY | ) | **ORAL ARGUMENT** |
| AUTHORITY, | ) | **REQUESTED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## <u>DEFENDANT'S BRIEF IN SUPPORT OF</u>
## <u>MOTION FOR SUMMARY JUDGMENT</u>

## **(REDACTED)**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................1

STATEMENT OF UNDISPUTED FACTS ..........................................2

SUMMARY JUDGMENT LEGAL STANDARD ...............................14

ARGUMENT ................................................................................15

I.      TVA did not breach the Agreement because selling the Bellefonte Site to
        ND without NRC approval would have violated the Construction Permits
        and thus would have been unlawful, which means that a closing condition
        in the Agreement was not satisfied...............................................15

        A.      Transfer of the Bellefonte Site to ND without NRC approval would
                have been unlawful............................................................15

        B.      Because the transfer of the Bellefonte Site without NRC approval
                would have been unlawful, a closing condition in the Agreement
                was not satisfied, so TVA did not breach the Agreement by
                refusing to close...............................................................18

        C.      The failure of the breach-of-contract counts as a matter of law also
                compels entry of summary judgment on ND's remaining count
                seeking a preliminary injunction. ........................................20

        D.      ND's invocation of the doctrine of equitable estoppel fails as a
                matter of law....................................................................21

                1.      Equitable estoppel can never be employed to require a
                        party to undertake an illegal act. ..............................22

                2.      ND cannot establish that it should not have known the true
                        facts. ..................................................................23

II.     The Agreement prohibits the parties from recovering incidental damages,
        so summary judgment should be entered in TVA's favor concerning ND's
        request for incidental damages. ...................................................25

III.    ND cannot recover its attorneys' fees, so summary judgment should be
        entered in TVA's favor as to those requested damages. ...............................27

CONCLUSION ........................................................................................................28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American Cap. Corp. v. United States*,
   63 Fed. Cl. 637 (2005)...............................................................................25

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)..................................................................................15

*Baker Botts L.L.P. v. ASARCO LLC*,
   576 U.S. 121 (2015)..................................................................................27

*Belize Telecom, Ltd. v. Gov't of Belize*,
   528 F.3d 1298 (11th Cir. 2008) ..............................................................18

*Brown v. Allied Home Mortg. Cap. Corp.*,
   2011 WL 3351532 (D. Md. Aug. 2, 2011) ..............................................20

*Caroline Hunt Tr. Estate v. United States*,
   65 Fed. Cl. 271 (2005), *aff'd in part, rev'd in part and remanded*,
   470 F.3d 1044 (Fed. Cir. 2006) ..............................................................26

*Cent. Rsrv. Life Ins. Co. v. Fox*,
   869 So. 2d 1124 (Ala. 2003)....................................................................19

*Dawkins v. Fulton Cnty. Gov't*,
   733 F.3d 1084 (11th Cir. 2013) ........................................................22, 23

*Fed. Crop Ins. Corp. v. Merrill*,
   332 U.S. 380 (1947)..................................................................................24

*Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*,
   320 F.3d 1205 (11th Cir. 2003) ..............................................................21

*Gentry v. City of Russellville, Alabama*,
   406 F. Supp. 3d 1231 (N.D. Ala. 2019)..................................................14

*Ex parte Habeb*,
   100 So. 3d 1086 (Ala. Civ. App. 2012)...................................................27

iii

*Korea Development Corp. v. United States*,
    9 Cl. Ct. 167 (1985) .............................................................................19

*Mote v. Moody*,
    No. 3:17-CV-0406-LCB, 2019 WL 968862 (N.D. Ala. Feb. 28,
    2019) ................................................................................................14, 15

*Navelski v. Int'l Paper Co.*,
    244 F. Supp. 3d 1275 (N.D. Fla. 2017) .............................................3

*Office of Pers. Mgmt. v. Richmond*,
    496 U.S. 414 (1990).............................................................................22

*Old Stone Corp. v. United States*,
    63 Fed. Cl. 65 (2004), *aff'd in part, rev'd in part*, 450 F.3d 1360
    (Fed. Cir. 2006).................................................................................26

*Olen Real Estate & Inv. Co. v. L.A. Zieman & Co.*,
    110 So. 2d 890 (Ala. 1959).................................................................20

*Orazi v. BAC Home Loans Servicing, LP*,
    2018 WL 4266071 (D. Md. Sep. 6, 2018).......................................20

*Orkin Exterminating Co., Inc. v. F.T.C.*,
    849 F.2d 1354 (11th Cir. 1988) .........................................................18

*Pauma Band of Luiseno Mission Indians of Pauma & Yuima*
    *Reservation v. California*,
    813 F.3d 1155 (9th Cir. 2015) ...........................................................20

*Precision Pine & Timber, Inc. v. United States*,
    63 Fed. Cl. 122 (2004) .......................................................................28

*Quantum Mgmt. Grp., Ltd. v. Univ. of Chicago Hosps.*,
    283 F.3d 901 (7th Cir. 2002) .............................................................19

*Rodulfa v. United States*,
    295 F. Supp. 28 (D.D.C. 1969)..........................................................27

*RSB Ventures, Inc. v. F.D.I.C.*,
    514 Fed. App'x 853 (11th Cir. 2013) .................................................3

*Said v. Nat'l R.R. Passenger Corp.*,
   317 F. Supp. 3d 304 (D.D.C. 2018) .....................................................3

*Satellite Broad. Cable, Inc. v. Telefonica de Espana*,
   786 F. Supp. 1089 (D.P.R. 1992) .......................................................20

*State Highway Dept. v. Headrick Outdoor Advert., Inc.*,
   594 So. 2d 1202 (Ala. 1992) ..............................................................23

*Stovall v. United States*,
   94 Fed. Cl. 336 (2010) .......................................................................25

*Thurber v. W. Conf. of Teamsters Pension Plan*,
   542 F.2d 1106 (9th Cir. 1976) ...........................................................23

*United States v. Certain Parcels of Land*,
   131 F. Supp. 65 (S.D. Cal. 1955) .......................................................23

*United States v. Vonderau*,
   837 F.2d 1540 (11th Cir. 1988) .........................................................24

*Woodward-Parker Corp. v. New Guar. Fed. Sav. & Loan Ass'n*,
   947 F.2d 947, 1991 WL 224082 (6th Cir. 1991) ...............................20

**Statutes**

18 U.S.C. § 831c(h) .................................................................................2

42 U.S.C. § 2133 .....................................................................................3

42 U.S.C. § 2272 ...................................................................................16

42 U.S.C. § 2273 ...................................................................................16

42 U.S.C. § 2282(a) ........................................................................15, 16

42 U.S.C. § 5814(a) .................................................................................3

42 U.S.C. § 5814(b) .................................................................................3

42 U.S.C. § 5814(c) .................................................................................3

42 U.S.C. § 5814(d) .................................................................................3

42 U.S.C. § 5814(e) ................................................................3

42 U.S.C. § 5814(f) ................................................................3

42 U.S.C. § 5841(f) ................................................................3

Atomic Energy Act of 1954 Section 103, 42 U.S.C. § 2133 ..................................15

**Other Authorities**

10 C.F.R. 100.3 ...............................................................5, 17

10 C.F.R. Part 50 ..............................................................3, 15

Black's Law Dictionary (11th ed. 2019) ..................................25

Fed. R. Civ. P. 37(c)(1) .......................................................17

Fed. R. Civ. P. 56 ...............................................................1

Fed. R. Civ. P. 56(a) .........................................................14

Fed. R. Civ. P 56(c) ..........................................................14

Restatement (Second) of Contracts § 225 (1981) ....................19

Restatement (Second) of Contracts § 349 cmt. a....................25

23 *Williston on Contracts* § 63:6 (4th ed.)...........................19

Defendant Tennessee Valley Authority ("TVA") submits this brief in support of its motion for summary judgment against Plaintiff Nuclear Development, LLC ("ND") pursuant to Fed. R. Civ. P. 56.

## INTRODUCTION

TVA could not close on the sale of the Bellefonte Nuclear Plant Site ("Bellefonte Site") to ND because the sale would have caused TVA to be in violation of the construction permits issued to it by the predecessor to the Nuclear Regulatory Commission ("NRC").  Such permit violations are violations of law.  The contract between TVA and ND contained a condition precedent that precluded closing if any law or permit meant that the transfer of the Bellefonte Site to ND would be illegal.  Because that condition precedent had not been satisfied at the time of the closing, TVA did not breach the contract by refusing to close.  Accordingly, summary judgment should be entered in favor of TVA on both of ND's breach-of-contract counts (Counts One and Three).

Summary judgment should also be entered in TVA's favor on ND's remaining count seeking a preliminary injunction (Count Two).  The entry of summary judgment on the substantive breach-of-contract counts will render moot the request for a preliminary injunction.  In addition, because the breach-of-contract counts fail as a matter of law, ND cannot establish a likelihood of success on the merits, so any request for preliminary-injunction fails as a matter of law.

1

Although the Court need not reach the issue of damages if it enters summary judgment on ND's claims, summary judgment is also due to be entered in TVA's favor disallowing the incidental damages sought by ND.  TVA and ND agreed in the applicable contract that no party can recover incidental damages, yet ND wants to disregard that provision.

Summary judgment should also be entered on ND's claim for attorneys' fees. Under the American Rule, parties typically bear their own attorneys' fees, and ND has identified no statutory or contract provision that overrides that rule.

## STATEMENT OF UNDISPUTED FACTS

**Background Facts**

1.      The Bellefonte Site in Jackson County, Alabama, which contains two partially finished nuclear reactors, is owned by the United States and is in the custody of TVA.  Ex. 1 (Declaration of C. Chandler) at ¶ 2; *see also* 18 U.S.C. § 831c(h) (All real property (e.g., power plant sites) acquired by TVA to accomplish the purposes of the TVA Act is acquired and held in the name of the United States and is "entrusted to [TVA] as the agent of the United States.").

2.     The Atomic Energy Commission ("AEC"), the predecessor to the NRC,[1] issued to TVA two construction permits to construct the nuclear reactors (the "Construction Permits") at the Bellefonte Site.  Ex. 1 at ¶ 3 & App. 1.[2]

3.     The Construction Permits were issued pursuant to Section 103 of the Atomic Energy Act of 1954, 42 U.S.C. § 2133, and 10 CFR Part 50.  Ex. 1 at App. 1, § 2.

4.     ND and TVA entered into the Bellefonte Nuclear Plant Site Purchase and Sales Agreement on November 14, 2016 ("Agreement"), whereby ND would purchase the Bellefonte Site.  Doc. 1-1 (attached hereto as Exhibit 2).

5.     ND and TVA amended the Agreement so that the closing was to occur on November 30, 2018.  Doc. 1-4 (attached hereto as Exhibit 3).

6.     TVA and ND agreed in the Agreement that "federal law shall at all times govern the validity, interpretation, and enforceability of th[e Agreement],"

---

[1]  Pursuant to the Energy Reorganization Act of 1974, Congress abolished the Atomic Energy Commission and transferred its licensing and regulatory functions to the NRC.  42 U.S.C. §§ 5814(a)-(f), 5841(f).

[2]  The Construction Permits are available on the NRC's website. *See* https://adamswebsearch2.nrc.gov/webSearch2/main.jsp?AccessionNumber=ML11 1110111.  The Court may take judicial notice of federal agency records available on government websites. *See, e.g., RSB Ventures, Inc. v. F.D.I.C.*, 514 Fed. App'x 853, 856 n.2 (11th Cir. 2013) (taking judicial notice of information found on FDIC website); *Said v. Nat'l R.R. Passenger Corp.*, 317 F. Supp. 3d 304, 335 n.20 (D.D.C. 2018) (taking judicial notice of information from "official public websites" at summary judgment stage); *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1300 n.25 (N.D. Fla. 2017) (taking judicial notice of records on government website at summary judgment stage).

with Alabama law providing a backup in the event that there is no applicable body of federal law on a particular legal or procedural point.  Ex. 2 at § 31.

7.    The Agreement contains the following condition in Section 6(a)(v) that was subject to fulfillment at or before the closing:

> **There shall not be in effect at the Closing any law, statute, rule, regulation, permit**, certificate or binding order, decree or decision of any Governmental Authority (as defined in <u>Section 9(a)(ii)</u> below) restraining, enjoining, or otherwise prohibiting or **making illegal the consummation of the transactions contemplated by this Agreement**.

Ex. 2 at § 6(a)(v) (emphasis added).

**The Construction Permits**

8.    The Construction Permits each state in Section 2 that "[t]he facility . . . will be located on the applicant's site in Jackson County, Alabama," and "applicant" is defined to be TVA.  Ex. 1 at App. 1, § 2.

9.    The Construction Permits each state in Section 3(B) that "[t]he facility shall be constructed and located at the site as described in the application, in Jackson County, Alabama."  Ex. 1 at App. 1, § 3(B).

10.    As part of the application for the Bellefonte construction permits, TVA included a Preliminary Safety Analysis Report ("PSAR"), and Section 2.1.2 of the PSAR, which is entitled "Site Description," includes this description of the site: "The

4

exclusion area will be owned by the United States and in the custody of TVA." Ex. 1 at ¶ 4 & App. 2; Ex. 4 (T. Mathews Depo.) at 220:2-5.

11.     The exclusion area at a nuclear plant is "[t]he area surrounding the reactor, in which the reactor licensee has the authority to determine all activities, including exclusion or removal of personnel and property."  10 CFR 100.3.

12.     ND delayed until November 13, 2018, to apply to the NRC for approval of transfer of the Construction Permits from TVA to ND; however, the NRC did not approve the transfer on or before November 30, 2018.  Doc. 1 at ¶ 14; Ex. 1 at ¶ 7.

13.     As part of ND's application to the NRC for approval of transfer of the Construction Permits from TVA to ND, ND requested that the Construction Permits be amended so that the term "Applicant" would refer to ND, not TVA, ███████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████

14.     If TVA had transferred ownership of the Bellefonte Site to ND, TVA would have had the legal obligation as the permittee to satisfy all terms of the Construction Permits until those permits were transferred to ND or the NRC took some action to release TVA from the permits.  Ex. 1 at ¶ 8; ███████████

███████████

**Incidental damages sought by ND**

15.  The Agreement contains the following provision in Section 35:

> **IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY** INDIRECT, **INCIDENTAL**, CONSEQUENTIAL, SPECIAL, PUNITIVE, OR EXEMPLARY **DAMAGES** AS A RESULT OF DEFAULT, VIOLATION OR BREACH OF ANY COVENANT, REPRESENTATION OR WARRANTY CONTAINED IN THIS AGREEMENT.

Ex. 2 at § 35 (emphasis added; capitalization in original).

16.  ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████████.

17.  ██████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████████

████████████████████████

18.  ██████████████████████████████████

██████████████████████████████████████

19. ████████████████████████████████

20. ████████████████████████████████

21. ████████████████████████████████

22. ████████████████████████████████

23. ████████████████████████████████

██████████████████████████████████████████████████████████

███

24.    ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████

25.    ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

26.    ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████

27.    ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████

28.    ███████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████

████

29.    █████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████

30.    █████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████

31.    █████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████

32.    █████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

33.    █████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████

34.    █████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

35. ████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████

36. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

37. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████

38. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

39. █████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

40. █████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████

41. █████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████

42. █████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████

43. ███████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

44. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

45. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

46. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

47. ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████

48. ██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

49. ██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████

50. ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████

51. ██████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████

52. ██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

53. ██████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

54.     ND seeks to recover damages in the amount of $18,130 for charges by Bruce Turner for work related to efforts to get Memphis to purchase power generated at Bellefonte (including research on political donations).   Ex. 8 at 176:3-180:6 & Depo. Ex. 168.

## SUMMARY JUDGMENT LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite 'to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials.'" *Gentry v. City of Russellville, Alabama*, 406 F. Supp. 3d 1231, 1236 (N.D. Ala. 2019) (quoting Fed. R. Civ. P 56(c)).  A genuine dispute of material fact exists only when "the evidence is such that a reasonable jury could return a verdict for the non-movant." *Mote v. Moody*, No. 3:17-CV-0406-LCB, 2019 WL 968862, at *1 (N.D. Ala. Feb. 28, 2019) (citation omitted).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party . . . . If the evidence is merely colorable, or is not significantly probative, summary judgment

14

may be granted." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

## ARGUMENT

I. **TVA did not breach the Agreement because selling the Bellefonte Site to ND without NRC approval would have violated the Construction Permits and thus would have been unlawful, which means that a closing condition in the Agreement was not satisfied.**

TVA did not breach the Agreement because selling the Bellefonte Site to ND without NRC approval would have been unlawful, which meant that a contractually-required closing condition could not be satisfied.  As a result, ND's breach-of-contract claims fail as a matter of law.

### A.   Transfer of the Bellefonte Site to ND without NRC approval would have been unlawful.

TVA would have violated the Construction Permits—and thereby committed an unlawful act—by proceeding with the closing under the Agreement.

The NRC issued the Construction Permits pursuant to Section 103 of the AEA, 42 U.S.C. § 2133, and 10 CFR Part 50.  *See supra at* ¶ 3.  A failure by TVA to abide by the terms of the Construction Permits would be illegal.  Indeed, the AEA provides that "[a]ny person who . . .violates . . . **any term, condition, or limitation of any license** . . . issued [under Section 103 of the AEA] . . . shall be subject to a civil penalty, to be imposed by the [NRC], of not to exceed $100,000 for each such violation." 42 U.S.C. § 2282(a) (emphasis added).  The AEA also provides that each

15

day of a continuing violation "shall constitute a separate violation for the purpose of computing the applicable civil penalty." *Id.*[3]  Consistent with the statutory provision that any violation of any term of a license (*i.e.*, permit) exposes the violator to civil penalties, the NRC's Enforcement Policy states that "**[a]ll violations** are subject to consideration for civil enforcement action." NRC Enforcement Policy at § 2.1, https://www.nrc.gov/docs/ML1935/ML19352E921.pdf (last accessed Sept. 22, 2020) (emphasis added).

The Construction Permits each contain two terms that TVA would have violated if it had sold the Bellefonte Site to ND without NRC approval. *First*, Section 2 of each permit states, "The facility . . . will be located on the applicant's site in Jackson County, Alabama." *See supra* at ¶ 8.  "Applicant" is defined in each permit to be TVA. *Id.*[4]  Thus, if TVA had sold the Bellefonte Site to ND before the NRC approved transfer of the Construction Permits to ND, the facility would have been located on ND's site, not TVA's site, in Jackson County, Alabama.  In that circumstance, TVA would have been in violation of that term of the permits.

---

[3]   In addition, the AEA authorizes criminal prosecution for violations of a permit. *See* 42 U.S.C. §§ 2272, 2273.

[4]   As part of ND's application for NRC approval of the transfer of the Construction Permits from TVA to ND, ND requested that NRC amend the permits so that the term "Applicant" would refer to ND, not TVA.  ND requested these changes because ND thought it was necessary to do so.  *See supra* at ¶ 13.

*Second*, Section 3(B) of each permit states, "[t]he facility shall be constructed and located at the site as described in the application, in Jackson County, Alabama." *See supra* at ¶ 9.  As part of the application for the Bellefonte construction permits, TVA included a Preliminary Safety Analysis Report, and Section 2.1.2 of the PSAR, which is entitled "Site Description," states, "The exclusion area will be owned by the United States and in the custody of TVA." *See supra* at ¶ 10.  The exclusion area at a nuclear plant is "[t]he area surrounding the reactor, in which the reactor licensee has the authority to determine all activities, including exclusion or removal of personnel and property." 10 C.F.R. 100.3.  Because the application described the site as one containing an exclusion area owned by the United States and in the custody of TVA, TVA would have been in violation of Section 3 of the permits if it had transferred ownership of the property to ND on the closing date.[5]  In other words,



if the closing had occurred, ND would have owned the exclusion area—a violation of the permits and, thus, a violation of law.

> **B.      Because the transfer of the Bellefonte Site without NRC approval would have been unlawful, a closing condition in the Agreement was not satisfied, so TVA did not breach the Agreement by refusing to close.**

Because TVA's transfer of the Bellefonte Site without NRC approval would have been unlawful, a closing condition in the Agreement was not satisfied, so TVA did not breach the Agreement by refusing to close.

"Under federal law, the plain meaning of a contract's language governs its interpretation." *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1307 (11th Cir. 2008).  Furthermore, "where the language of the contract is unambiguous, the legal effect of that language is a question of law" that "may be resolved summarily." *Orkin Exterminating Co., Inc. v. F.T.C.*, 849 F.2d 1354, 1360 (11th Cir. 1988).

The Agreement contained this unambiguous condition precedent to performance of the closing under the Agreement:

> **There shall not be in effect at the Closing any law, statute, rule, regulation, permit**, certificate or binding order, decree or decision of any Governmental Authority (as defined in <u>Section 9(a)(ii)</u> below) restraining, enjoining, or otherwise **prohibiting or making illegal the consummation of the transactions contemplated by this Agreement**.

Ex. 2 at § 6(a)(v) (emphasis added).

18

It is settled law that a party cannot succeed on a breach-of-contract claim if an explicit condition precedent in the contract has not been satisfied. *Korea Development Corp. v. United States*, 9 Cl. Ct. 167, 174–76 (1985); *accord, e.g.*, *Cent. Rsrv. Life Ins. Co. v. Fox*, 869 So. 2d 1124, 1127-28 (Ala. 2003) ("Ordinarily, failure to comply with conditions precedent . . . prevents an action by the defaulting party to enforce the contract."); *Quantum Mgmt. Grp., Ltd. v. Univ. of Chicago Hosps.*, 283 F.3d 901, 906 (7th Cir. 2002) ("Where a condition precedent is not satisfied, no breach of contract occurs for failure to perform."); *Restatement (Second) of Contracts* § 225 (1981) ("Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused."); 23 *Williston on Contracts* § 63:6 (4th ed.) ("Generally there can be no breach of a promise until all the conditions qualifying it have happened or been performed.").

Because TVA would have been violating the Construction Permits and thus committing an illegal act if it had transferred ownership of the Bellefonte Site to ND, the contractual condition precedent in Section 6(a)(v) was not satisfied by the time of closing, so TVA committed no breach of the Agreement by refusing to close.

ND's Complaint contains two counts seeking different forms of relief for the same alleged breach of contract (*i.e.*, TVA's failure to close the sale of the Bellefonte Site). ND requests specific performance in Count One and damages as an alternative

19

in Count Three.[6]  Because the failure to satisfy the closing condition means that TVA did not breach the contract, summary judgment should be entered in TVA's favor on Counts One and Three.

### C. The failure of the breach-of-contract counts as a matter of law also compels entry of summary judgment on ND's remaining count seeking a preliminary injunction.

Summary judgment should also be entered in TVA's favor on Count Two, which seeks entry of a preliminary injunction, due to the failure of the breach-of-contract counts.

---

[6]  "Specific performance is a remedy associated with breach of contract." *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. California*, 813 F.3d 1155, 1167 (9th Cir. 2015) (applying federal law).  It is a settled law that a court cannot order specific performance when a condition precedent to performance has not been satisfied.  *See, e.g., Orazi v. BAC Home Loans Servicing, LP*, 2018 WL 4266071, at *5 (D. Md. Sep. 6, 2018) ("[C]onditions precedent must be fulfilled before specific performance can be granted."); *Brown v. Allied Home Mortg. Cap. Corp.*, 2011 WL 3351532, at *3 (D. Md. Aug. 2, 2011) ("Indeed, '[t]he performance of all conditions precedent is generally required before specific performance will be granted.'"); *Satellite Broad. Cable, Inc. v. Telefonica de Espana*, 786 F. Supp. 1089, 1104 (D.P.R. 1992) (noting that it is "well settled law" that "[i]n the case of a contract subject to a condition precedent, an order for specific performance does not proceed until such time as the condition is fulfilled."); *Woodward-Parker Corp. v. New Guar. Fed. Sav. & Loan Ass'n*, 947 F.2d 947 (Table), 1991 WL 224082, at *2 (6th Cir. 1991) ("A plaintiff in a breach of contract action is only entitled to specific performance, as a matter of law, where he shows: (1) he performed all conditions precedent to the requested performance[.]"); *Olen Real Estate & Inv. Co. v. L.A. Zieman & Co.*, 110 So. 2d 890, 892 (Ala. 1959) ("[S]pecific performance of a contract may be had in equity even though the contract contains a condition precedent, *provided such condition precedent has been fulfilled.*") (emphasis added).

*First*, the request for a preliminary injunction will be moot if this Court enters summary judgment on the claims for breach of contract.  ND sought the preliminary injunction "to maintain the status quo prior to final judgment."  Doc. 1 at ¶ 29.  A resolution of the merits of the breach-of-contract claims on summary judgment will obviate any further need for the injunction.

*Second*, even if the request were not moot, ND as a matter of law cannot establish that it has a substantial likelihood of success on the merits, which is one of the prerequisites to entry of any preliminary injunction.  *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir. 2003).  For the reasons explained above, ND cannot succeed on the merits of its breach-of-contract claims.

### D.   ND's invocation of the doctrine of equitable estoppel fails as a matter of law.

ND's invocation of the doctrine of equitable estoppel (Doc. 1, ¶ 22) cannot rescue it from entry of summary judgment against it because the doctrine does not apply here as a matter of law for two separate and independent reasons.

The elements of equitable estoppel are clear in the Eleventh Circuit:

> the elements of federal common law equitable estoppel in this circuit are: (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party

> asserting the estoppel did not know, nor should it have
> known, the true facts; and (5) the party asserting the
> estoppel reasonably and detrimentally relied on the
> misrepresentation.

*Dawkins v. Fulton Cnty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013).

### 1.   Equitable estoppel can never be employed to require a party to undertake an illegal act.

ND's equitable estoppel argument fails as a matter of law because the doctrine can never be employed to require a party to undertake an illegal act, but that is exactly what ND is trying to do in this case.

ND bases its equitable-estoppel argument on its allegation that TVA falsely represented in the Agreement that no approval of any governmental authority would be needed to consummate the transactions contemplated by the Agreement.  (Doc. 1 at ¶ 22 (citing Ex. 2 at ¶ 7(a)(vii)).  ND thus contends that TVA should be precluded from now taking the position that it would be illegal to consummate the sale of the Bellefonte Site under the Agreement without NRC approval.  (Doc. 1 at ¶ 22).  In other words, ND is arguing that Congress's decision to make unlawful the violation of terms of an NRC construction permit can be disregarded based on TVA's representation in the Agreement.

It is settled law, however, that equitable estoppel cannot be invoked to override an applicable law.  *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 426 (1990) ("[J]udicial use of the equitable doctrine of estoppel cannot grant

respondent a money remedy that Congress has not authorized."); *Thurber v. W. Conf. of Teamsters Pension Plan*, 542 F.2d 1106, 1109 (9th Cir. 1976) ("We agree with the district court that the doctrine of estoppel may not be invoked to compel an illegal act."); *United States v. Certain Parcels of Land*, 131 F. Supp. 65, 73 (S.D. Cal. 1955) ("Public policy demands that the mandate of the law should override any doctrine of estoppel; so no amount of misrepresentation can prevent a party, whether citizen or Government, from asserting as illegal that which the law declares to be such."); *see also State Highway Dept. v. Headrick Outdoor Advert., Inc.*, 594 So. 2d 1202, 1205 (Ala. 1992) ("[T]he doctrine of estoppel may not authorize a city do to that which the city had no authority to do[.]").

In light of these authorities, ND's equitable estoppel argument fails as a matter of law. It would have violated the Construction Permits, and thus been unlawful, for TVA to proceed with the closing under the Agreement. The doctrine of equitable estoppel cannot override applicable law.

## 2. ND cannot establish that it should not have known the true facts.

ND's attempt to invoke equitable estoppel also fails as a matter of law for a separate and independent reason—ND cannot establish the fourth *Dawkins* element for the doctrine, namely that ND should not have known the true facts about the applicable law. The Supreme Court held more than 70 years ago that a party cannot rely on the representations of a government agent when those representations are

inconsistent with applicable laws and regulations. *See Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). The Supreme Court based its conclusion on the fundamental premise that "everyone is charged with knowledge of the United States Statutes at Large" and with knowledge of the "rules and regulations in the Federal Register." *Id.* at 384-85. According to the Supreme Court, "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." *Id.* at 384; *see also United States v. Vonderau*, 837 F.2d 1540, 1541 (11th Cir. 1988) ("The government cannot be estopped by the action of its agent when that agent acts without authority or contrary to law.").

In light of this settled precedent, ND as a matter of law cannot establish that it should not have known the true facts that TVA would have been violating the Construction Permits if the NRC did not approve the transfer of the Construction Permits before closing. As a result, ND cannot invoke the doctrine of equitable estoppel for this additional reason.

* * *

In sum, summary judgment should be entered in TVA's favor on all three counts of ND's Complaint. Because the condition precedent in the Agreement was not satisfied due to the violation of the Construction Permits that would have occurred if TVA had transferred the Bellefonte Site to ND without NRC approval,

24

TVA did not commit a breach of contract.  Without a breach of contract by TVA, all counts in ND's Complaint fail as a matter of law.

**II.    The Agreement prohibits the parties from recovering incidental damages, so summary judgment should be entered in TVA's favor concerning ND's request for incidental damages.**

If the Court enters summary judgment in TVA's favor on the merits, this Court need not address the remaining damages-related aspects of this summary judgment motion.

The Agreement prohibits the parties from recovering incidental damages for "breach of any covenant" in the Agreement.  *See supra* at ¶ 15.  A "breach of covenant" is "[t]he violation of an express or implied promise, usu[ally] in a contract, either to do or not to do an act."  Black's Law Dictionary (11th ed. 2019).

Because ND is seeking incidental reliance damages for TVA's allege breach of its express promise in the Agreement to consummate the sale of the Bellefonte Site (Doc. 1 at ¶ 33), summary judgment should be entered in TVA's favor concerning ND's request for millions in incidental damages.

Under federal common law, "incidental reliance damages" compensate the plaintiff for expenses incurred in "'preparation for collateral transactions that a party plans to carry out when the contract … is performed.'" *American Cap. Corp. v. United States,* 63 Fed. Cl. 637, 653 (2005) (quoting Restatement (Second) of Contracts § 349 cmt. a); *accord Stovall v. United States*, 94 Fed. Cl. 336, 353 (2010);

*Old Stone Corp. v. United States*, 63 Fed. Cl. 65, 79 (2004), *aff'd in part, rev'd in part*, 450 F.3d 1360 (Fed. Cir. 2006); *Caroline Hunt Tr. Estate v. United States*, 65 Fed. Cl. 271, 299 (2005), *aff'd in part, rev'd in part and remanded*, 470 F.3d 1044 (Fed. Cir. 2006).

ND seeks "recovery against TVA for **all** damages arising out of TVA's breach [of the Agreement]," including "reimbursement of millions dollars in engineering, consulting, and regulatory costs paid by [ND] in reliance on closing the transaction." Doc. 1 at p. 12 (emphasis added).  But ND is not entitled to all damages.  In the Agreement, ND agreed that it could not recover indirect, incidental, consequential, special, punitive, or exemplary damages.  *See supra* at ¶ 15.

ND nonetheless improperly seeks millions of dollars for incidental reliance damages—charges ND incurred to prepare to move forward with the Bellefonte project after closing. ██████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████ Under the controlling

federal common law, all of these amounts are incidental reliance damages.  Because

the parties agreed in the Agreement that incidental damages cannot be recovered,

this Court should enter summary judgment indicating that ND cannot recover them.

### III.   ND cannot recover its attorneys' fees, so summary judgment should be entered in TVA's favor as to those requested damages.

ND cannot recover its attorneys' fees, so summary judgment should be

entered in TVA's favor as to those requested damages.  As the United States

Supreme Court has explained, "[o]ur basic point of reference when considering the

award of attorney's fees is the bedrock principle known as the American Rule: Each

litigant pays his own attorney's fees, win or lose, unless a statute or contract provides

otherwise." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015).

In this case, ND has asserted no statutory entitlement to attorneys' fees, nor

does the Agreement contain a fee-shifting provision.  While the Agreement allows

the prevailing party in a court proceeding between ND and TVA to recover "court

costs," Ex. 2 at § 33(i), court costs do not include attorneys' fees under applicable

law.  "[U]nder our system of law, unlike the English system, taxable costs do not

include attorney's fees or counsel fees." *Rodulfa v. United States*, 295 F. Supp. 28,

29 (D.D.C. 1969); *see also Ex parte Habeb*, 100 So. 3d 1086, 1089 (Ala. Civ. App.

2012) ("Under Alabama law, costs do not include attorney fees.").  Simply put,

"[t]he absence of any mention of attorneys' fees" in the Agreement is "fatal to [ND's] claim for attorneys' fees." *Precision Pine & Timber, Inc. v. United States*, 63 Fed. Cl. 122, 141 (2004).

This Court should enter summary judgment in TVA's favor concerning ND's request for attorneys' fees.

## CONCLUSION

Based on the foregoing, this Court should enter summary judgment in TVA's favor as to all claims asserted by ND.  In the alternative, this Court should enter summary judgment in TVA's favor as to ND's request to recover incidental damages and attorney's fees.

Respectfully submitted,

*s/ Matthew H. Lembke*
Attorney for Defendant

OF COUNSEL:

Matthew H. Lembke
Riley McDaniel
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
mlembke@bradley.com
rmcdaniel@bradley.com

David D. Ayliffe
Jill McCook
Office of the General Counsel
TENNESSEE VALLEY AUTHORITY
400 West Summit Hill Drive, WT6
Knoxville, Tennessee 37902
Telephone: (865) 632-3052
ddayliffe@tva.gov
jemccook@tva.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 23, 2020, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record:

Caine O'Rear, III
HAND ARENDALL HARRISON SALE, LLC
Post Office Box 123
Mobile, Alabama  36601
corear@handarendall.com

Edward Shane Black
HAND ARENDALL LLC
102 South Jefferson Street
Athens, Alabama  35611
sblack@handarendall.com

Larry David Blust
HUGHES SOCOL PIERS RESNICK DYM, LTD.
70 West Madison Street, Suite 4000
Chicago, Illinois  60602
lblust@hsplegal.com

*s/ Matthew H. Lembke*
OF COUNSEL