**From:** Quirk, Sherry Ann(saquirk@tva.gov)
**To:** Beach, Clifford L Jr; Ayliffe, David Demar; McCall, Jack H. (Nick); Bolton, Kimberly Anita; Chandler, Christopher C; Mansur, Kendra Jane; Mitchem, Jared Edward
**CC:**
**BCC:**
**Subject:** Fwd:
**Sent:** 11/30/2018 04:32:50 PM -0500 (EST)
**Attachments:** 2018_11_30_14_59_13.pdf;

| Redacted |
|---|

Get Outlook for iOS

**From:** Larry D. Blust <lblust@hsplegal.com>
**Sent:** Friday, November 30, 2018 4:02 PM
**To:** Quirk, Sherry Ann
**Subject:**

TVA External Message. Please use caution when opening.

Please see attached.

EXHIBIT
25
Johnson

Confidential

TVABLN00006461



**HUGHES SOCOL PIERS RESNICK DYM, LTD.**  
70 West Madison Street  
Suite 4000  
Chicago, Illinois 60602  
T. 312.580.0100  
F. 312.580.1994  
hsplegal.com

November 30, 2018

Tennessee Valley Authority  
Attn:  Ms. Sherry Quirk  
Office of General Counsel  
400 W. Summit Hill Drive, WT 6A  
Knoxville, TN  37902

Larry D. Blust         **VIA FACSIMILE AND EMAIL**
Direct Line: 312.604.2672  
Direct Fax: 312.604.2673  
Email: lblust@hsplegal.com

Tennessee Valley Authority  
Attn:  Mr. David B. Nix  
Realty Services and GIS  
1101 Market Street  
Chattanooga, TN  37402

**VIA FACSIMILE AND EMAIL**

Dear Ms. Quirk:

    We have received your letter faxed on Thursday afternoon, November 29, 2018 (the "Letter") regarding the Purchase and Sale Agreement dated November 14, 2016 for the Bellefonte Nuclear Plant site (the "Agreement").

    Your letter states that (1) TVA refuses to close the sale of the Bellefonte Site due to failure of the closing condition in Section 6(a)(v) and (2) that the failure of such condition to be met is somehow the fault of the purchaser, Nuclear Development, LLC ("ND"), and constitutes a breach of the Agreement.  Neither of these contentions are correct.

    1.    Section 6(a)(v) of the Agreement provides:

    There shall not be in effect at the Closing any law, statute, rule, regulation, permit, certificate or binding order, decree or decision of any Governmental Authority (as defined in Section 9(a)(ii) below) restraining, enjoining or otherwise prohibiting or making Illegal the consummation of the transactions contemplated by this Agreement; and

    You assert that to close the sale of this Site would be unlawful pursuant to Section 101 of the Atomic Energy Act of 1954 (42 USC 2131) (the "Act") which provides that "It shall be unlawful … for any person … to transfer, acquire, purchase, [or] use … any utilization or production facility except under and in accordance with a license issued by the [NRC] pursuant to section 103 or section 104."

Established in 1985.

Ms. Sherry Quirk
November 30, 2018
Page 2

✦ HSPRD

Sections 11(v) and (cc) of the Act (42 USC 2014) define respectively "production facility" and "utilization facility." Neither applies currently to Bellefonte. A "production facility" is one "capable of the production of special nuclear material" which is not the case with the Bellefonte Site. A "utilization facility" as defined is "(1) any equipment or device, except an atomic-weapon, determined by rule of the Commission to be capable of making use of special nuclear material in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public, or peculiarly adapted for making use of atomic energy in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public; or (2) any important component part especially designed for such equipment or device as determined by the Commission. The Bellefonte Site is years and billions of dollars away from being able to meet this definition.

Moreover, the Bellefonte construction permits are in inactive deferred plant status and cannot be used to bring the site up to the status of a "facility" as required for Section 101 of the Act to be applicable until transfer is approved and the permits are activated.

In addition, even if Bellefonte were a "production" or "utilization facility" as defined by the Act, the Act does not prevent the transfer of the Site. It merely would result in NRC possibly imposing penalties on one or both of the parties in its discretion pursuant to its enforcement policy. ND and its expert, Tim Matthews of Morgan Lewis and Bockius LLP, believes that Section 101 is not applicable here. We supplied you with his outline setting forth his reasoning. I note that you have not supplied us with a copy of your counsel's opinion so we cannot evaluate its validity.

Despite ND's disagreement as to your analysis, ND has, since you first raised this issue 6 days before the original closing date, consistently offered to extend the closing date until NRC approval is received to eliminate this disagreement. This would have been the mature approach to a dispute like this but TVA has refused this simple solution.

2.   The absurdity of your position is illustrated by your attempt to blame ND for this situation and statement that its failure to assure that Section 101 was satisfied by NRC approval of license transfer prior to the closing date is a breach of its obligations under the Agreement. Nowhere in the Agreement is there a provision making ND responsible for this. In fact, the only provision in the Agreement regarding transfer of these permits, Section 1(e), makes TVA responsible for their "transfer." The Buyer is merely required to "purchase and pay for, all of TVA's right, title and interest" in these licenses per the lead in to Section 1(a). When met with your licensing people and long after the Agreement was signed to try to coordinate with them getting this done ND was rebuffed. Mr. Matthews was hired to help put together the material TVA should have provided. He discussed with TVA on July 23 and July 26, 2018. TVA submitting the transfer request and TVA again declined. Again on October 15, 2018, he tendered to TVA a simple letter consenting to the transfer but TVA never signed this letter so ND elected to proceed with the filing of the permit transfers without it.

TVA has been aware of ND's position on the permit transfers most of the pre-closing period and never raised an issue with it until 6 days before the original closing date.

Established in 1985.

Confidential

Ms. Sherry Quirk
November 30, 2018
Page 3

✦ HSPRD

     ND has complied with all of its requirements under the Agreement. It is TVA that has not. In addition to TVA's warranty in Section 7(a) (vii) of the Agreement that no "*consent or approval or other order or action or any filing with any Governmental Authority is required for ...consummation by the TVA of the transactions contemplated thereby*", .Section 6(c) provides that TVA will execute and deliver to ND the essential Transaction Documents. As the November 14th original closing date approached and as today's date approached, I have requested many times that TVA deliver those documents. We have received nothing. Consequently, it is TVA that is in breach here if it does not tender such documents and confirm it will close. ND reserves all its rights with regard to such breach.

Sincerely,

*[signature]*

Larry D. Blust
Attorney for Nuclear Development, L.L.C.

Established in 1985.

Confidential

TVABLN00006464