FILED
 2020 Oct-14 PM 04:30
 U.S. DISTRICT COURT
 N.D. OF ALABAMA

# EXHIBIT 8 (Part 18)

Deposition of Stephen Burns
Dated 8/19/2020
With Deposition Exhibits
202 Con't, 203, 204, 205, 206

Page 150

1 answer.
2   A.  There are some design requirements it
3 currently meets and some it does not.
4 BY MR. O'REAR:
5   Q.  What design requirements are not met
6 that are required to sustain nuclear fission?
7       MR. LEMBKE:  Same objection.  You can
8 answer.
9   A.  Design requirements for cranes.  Cranes
10 within the Aux (phonetic) building and Turbine
11 building.  Design quotes for single failure
12 proof.  They are not single failure proof.
13      COURT REPORTER:  Single what proof?
14      THE WITNESS:  Failure proof.
15 BY MR. O'REAR:
16  Q.  Do the design requirements call for
17 control rod mechanisms?  Control rod drive
18 mechanisms?
19  A.  Yes.
20  Q.  Are those control rod drive mechanisms
21 present in Unit 1 or 2?
22      MR. LEMBKE:  Objection.  Asked and
23 answered.
24  A.  No.
25  Q.  Are control rod drive mechanisms

Page 151

1 required for the units to utilize special nuclear
2 material?
3  A.  Yes.
4  Q.  Are control rod drive mechanisms
5 required for the units to conduct nuclear
6 fission?
7  A.  Yes.
8      MR. O'REAR:  That's all I have.
9      MR. LEMBKE:  I don't have anything
10 further.  Thank you, Mr. Chardos.
11      THE WITNESS:  Thank you.
12      VIDEOGRAPHER:  This concludes the
13 deposition of James Chardos consisting of three
14 video files.  The time is 2:39 p.m. and we're
15 going off the record.
16      (WHEREUPON, THE DEPOSITION CONCLUDED AT
17 2:40 p.m. EST.)
18      (FURTHER DEPONENT SAITH NOT.)
19      (SIGNATURE NOT WAIVED.)
20
21
22
23
24
25

Page 152

1            CERTIFICATE
2 STATE OF TENNESSEE  )
                      )
3 COUNTY OF SHELBY    )
4
    I, Polly W. Wardlaw, LCR #019, Licensed
5 Court Reporter, in and for the State of
  Tennessee, do hereby certify that the above
6 proceeding was reported by me, and the transcript
  is a true and accurate record to the best of my
7 knowledge, skills, and ability.
8     I further certify that I am not related
  to nor an employee of counsel or any of the
9 parties to the action, nor am I in any way
  financially interested in the outcome of this
10 case.
11    I further certify that I am duly licensed
   by the Tennessee Board of Court Reporting as a
12 Licensed Court Reporter as evidenced by the LCR
   number and expiration date following my name
13 below.
14    I further certify that this transcript is
   the work product of this court reporting agency,
15 and any unauthorized reproduction and/or transfer
   of it will be in violation of Tennessee Code
16 Annotated 39-14-104, Theft of Services.
17
18
19           [signature: Polly Wardlaw]
20   Polly W. Wardlaw, LCR #019
     Memphis, Tennessee 38103
21   Expiration Date 6-30-2022
     ALPHA REPORTING CORPORATION
22   236 Adams Avenue
     Memphis, Tennessee 38103
23
24
25

Page 153

1 To: MATTHEW H. LEMBKE, ESQ.
2 Re: Signature of Deponent James Chardos
3 Date Errata due back at our offices: 8/26/2020
4
5 Greetings:
6 This deposition has been requested for read and sign by
  the deponent.  It is the deponent's responsibility to
7 review the transcript, noting any changes or corrections
  on the attached PDF Errata.  The deponent may fill
8 out the Errata electronically or print and fill out
  manually.
9
10 Once the Errata is signed by the deponent and notarized,
   please mail it to the offices of Veritext (below).
11
12 When the signed Errata is returned to us, we will seal
   and forward to the taking attorney to file with the
13 original transcript.  We will also send copies of the
   Errata to all ordering parties.
14
15 If the signed Errata is not returned within the time
   above, the original transcript may be filed with the
16 court without the signature of the deponent.
17
18 Please Email the completed errata/witness cert page
   to readandsign@veritext.com
19 or mail to
20 Veritext Production Facility
21 2031 Shady Crest Drive
22 Hoover, AL 35216
23 205-397-2397
24
25

# DEPOSITION EXHIBIT
# 203

> Code of Federal Regulations
>   Title 10. Energy
>     Chapter I. Nuclear Regulatory Commission (Refs & Annos)
>       Part 50. Domestic Licensing of Production and Utilization Facilities (Refs & Annos)
>         General Provisions

10 C.F.R. § 50.5

§ 50.5 Deliberate misconduct.

Currentness

(a) Any licensee, applicant for a license, employee of a licensee or applicant; or any contractor (including a supplier or consultant), subcontractor, employee of a contractor or subcontractor of any licensee or applicant for a license, who knowingly provides to any licensee, applicant, contractor, or subcontractor, any components, equipment, materials, or other goods or services that relate to a licensee's or applicant's activities in this part, may not:

(1) Engage in deliberate misconduct that causes or would have caused, if not detected, a licensee or applicant to be in violation of any rule, regulation, or order; or any term, condition, or limitation of any license issued by the Commission; or

(2) Deliberately submit to the NRC, a licensee, an applicant, or a licensee's or applicant's contractor or subcontractor, information that the person submitting the information knows to be incomplete or inaccurate in some respect material to the NRC.

(b) A person who violates paragraph (a)(1) or (a)(2) of this section may be subject to enforcement action in accordance with the procedures in 10 CFR part 2, subpart B.

(c) For the purposes of paragraph (a)(1) of this section, deliberate misconduct by a person means an intentional act or omission that the person knows:

(1) Would cause a licensee or applicant to be in violation of any rule, regulation, or order; or any term, condition, or limitation, of any license issued by the Commission; or

(2) Constitutes a violation of a requirement, procedure, instruction, contract, purchase order, or policy of a licensee, applicant, contractor, or subcontractor.

**Credits**
[56 FR 40690, Aug. 15, 1991; 63 FR 1897, Jan. 13, 1998]

SOURCE: 21 FR 355, Jan. 19, 1956; 51 FR 7765, March 6, 1986; 51 FR 27820, Aug. 4, 1986; 52 FR 1292, Jan. 12, 1987; 52 FR 2352, Jan. 21, 1987; 52 FR 28972, Aug. 5, 1987; 52 FR 49371, Dec. 31, 1987; 53 FR 20610, June 6, 1988; 53 FR 23214,

**EXHIBIT**

Exhibit 203

§ 50.5 Deliberate misconduct., 10 C.F.R. § 50.5

June 21, 1988; 53 FR 24049, June 27, 1988; 54 FR 7180, Feb. 17, 1989; 55 FR 10404, March 21, 1990; 55 FR 29194, July 18, 1990; 56 FR 22304, May 15, 1991; 56 FR 31324, July 10, 1991; 56 FR 40689, Aug. 15, 1991; 56 FR 64975, Dec. 13, 1991; 57 FR 41381, Sept. 10, 1992; 57 FR 55075, Nov. 24, 1992; 58 FR 21911, April 26, 1993; 58 FR 52410, Oct. 8, 1993; 60 FR 49495, Sept. 26, 1995; 60 FR 65468, Dec. 19, 1995; 61 FR 232, Jan. 3, 1996; 62 FR 17690, April 11, 1997; 62 FR 59276, Nov. 3, 1997; 66 FR 64738, Dec. 14, 2001; 67 FR 57097, Sept. 6, 2002; 67 FR 67099, Nov. 4, 2002; 67 FR 72091, Dec. 4, 2002; 68 FR 58808, Oct. 10, 2003; 70 FR 61887, Oct. 27, 2005; 72 FR 55932, Oct. 1, 2007; 72 FR 63973, Nov. 14, 2007; 73 FR 42674, July 23, 2008; 73 FR 63571, Oct. 24, 2008; 75 FR 61335, Oct. 5, 2010; 77 FR 39906, July 6, 2012; 79 FR 62334, Oct. 17, 2014; 79 FR 65798, Nov. 5, 2014; 80 FR 54234, Sept. 9, 2015, unless otherwise noted.

AUTHORITY: Atomic Energy Act of 1954, secs. 11, 101, 102, 103, 104, 105, 108, 122, 147, 149, 161, 181, 182, 183, 184, 185, 186, 187, 189, 223, 234 (42 U.S.C. 2014, 2131, 2132, 2133, 2134, 2135, 2138, 2152, 2167, 2169, 2201, 2231, 2232, 2233, 2234, 2235, 2236, 2237, 2239, 2273, 2282); Energy Reorganization Act of 1974, secs. 201, 202, 206, 211 (42 U.S.C. 5841, 5842, 5846, 5851); Nuclear Waste Policy Act of 1982, sec. 306 (42 U.S.C. 10226); National Environmental Policy Act of 1969 (42 U.S.C. 4332); 44 U.S.C. 3504 note; Sec. 109, Pub.L. 96–295, 94 Stat. 783.

Notes of Decisions (6)

Current through Aug. 13, 2020; 85 FR 49582.

End of Document

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

# DEPOSITION EXHIBIT
# 204


KeyCite Yellow Flag - Negative Treatment
Proposed Legislation

> United States Code Annotated
>   Title 42. The Public Health and Welfare
>     Chapter 23. Development and Control of Atomic Energy (Refs & Annos)
>       Division a. Atomic Energy
>         Subchapter I. General Provisions

42 U.S.C.A. § 2014

§ 2014. Definitions

Effective: August 8, 2005
Currentness

The intent of Congress in the definitions as given in this section should be construed from the words or phrases used in the definitions. As used in this chapter:

(a) The term "agency of the United States" means the executive branch of the United States, or any Government agency, or the legislative branch of the United States, or any agency, committee, commission, office, or other establishment in the legislative branch, or the judicial branch of the United States, or any office, agency, committee, commission, or other establishment in the judicial branch.

(b) The term "agreement for cooperation" means any agreement with another nation or regional defense organization authorized or permitted by sections 2074, 2077, 2094, 2112, 2121(c), 2133, 2134, or 2164 of this title, and made pursuant to section 2153 of this title.

(c) The term "atomic energy" means all forms of energy released in the course of nuclear fission or nuclear transformation.

(d) The term "atomic weapon" means any device utilizing atomic energy, exclusive of the means for transporting or propelling the device (where such means is a separable and divisible part of the device), the principal purpose of which is for use as, or for development of, a weapon, a weapon prototype, or a weapon test device.

(e) The term "byproduct material" means--

  (1) any radioactive material (except special nuclear material) yielded in or made radioactive by exposure to the radiation incident to the process of producing or utilizing special nuclear material;

  (2) the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content;

Exhibit 204

EXHIBIT

(3)(A) any discrete source of radium-226 that is produced, extracted, or converted after extraction, before, on, or after August 8, 2005, for use for a commercial, medical, or research activity; or

(B) any material that--

(i) has been made radioactive by use of a particle accelerator; and

(ii) is produced, extracted, or converted after extraction, before, on, or after August 8, 2005, for use for a commercial, medical, or research activity; and

(4) any discrete source of naturally occurring radioactive material, other than source material, that--

(A) the Commission, in consultation with the Administrator of the Environmental Protection Agency, the Secretary of Energy, the Secretary of Homeland Security, and the head of any other appropriate Federal agency, determines would pose a threat similar to the threat posed by a discrete source of radium-226 to the public health and safety or the common defense and security; and

(B) before, on, or after August 8, 2005, is extracted or converted after extraction for use in a commercial, medical, or research activity.

(f) The term "Commission" means the Atomic Energy Commission.

(g) The term "common defense and security" means the common defense and security of the United States.

(h) The term "defense information" means any information in any category determined by any Government agency authorized to classify information, as being information respecting, relating to, or affecting the national defense.

(i) The term "design" means (1) specifications, plans, drawings, blueprints, and other items of like nature; (2) the information contained therein; or (3) the research and development data pertinent to the information contained therein.

(j) The term "extraordinary nuclear occurrence" means any event causing a discharge or dispersal of source, special nuclear, or byproduct material from its intended place of confinement in amounts offsite, or causing radiation levels offsite, which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines to be substantial, and which the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, determines has resulted or will probably result in substantial damages to persons offsite or property offsite. Any determination by the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, that such an event has, or has not, occurred shall be final and conclusive, and no other official or any court shall have power or jurisdiction to review any such determination. The Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, shall establish criteria in writing setting forth the basis upon which such determination shall be made. As used in this subsection, "offsite" means away from "the location" or "the contract location" as defined in the applicable Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, indemnity agreement, entered into pursuant to section 2210 of this title.

(k) The term "financial protection" means the ability to respond in damages for public liability and to meet the costs of investigating and defending claims and settling suits for such damages.

(l) The term "Government agency" means any executive department, commission, independent establishment, corporation, wholly or partly owned by the United States of America which is an instrumentality of the United States, or any board, bureau, division, service, office, officer, authority, administration, or other establishment in the executive branch of the Government.

(m) The term "indemnitor" means (1) any insurer with respect to his obligations under a policy of insurance furnished as proof of financial protection; (2) any licensee, contractor or other person who is obligated under any other form of financial protection, with respect to such obligations; and (3) the Nuclear Regulatory Commission or the Secretary of Energy, as appropriate, with respect to any obligation undertaken by it in an indemnity agreement entered into pursuant to section 2210 of this title.

(n) The term "international arrangement" means any international agreement hereafter approved by the Congress or any treaty during the time such agreement or treaty is in full force and effect, but does not include any agreement for cooperation.

(o) The term "Energy Committees" means the Committee on Energy and Natural Resources of the Senate and the Committee on Energy and Commerce of the House of Representatives.

(p) The term "licensed activity" means an activity licensed pursuant to this chapter and covered by the provisions of section 2210(a) of this title.

(q) The term "nuclear incident" means any occurrence, including an extraordinary nuclear occurrence, within the United States causing, within or outside the United States, bodily injury, sickness, disease, or death, or loss of or damage to property, or loss of use of property, arising out of or resulting from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material: *Provided, however,* That as the term is used in section 2210(l) of this title, it shall include any such occurrence outside the United States: *And provided further,* That as the term is used in section 2210(d) of this title, it shall include any such occurrence outside the United States if such occurrence involves source, special nuclear, or byproduct material owned by, and used by or under contract with, the United States: *And provided further,* That as the term is used in section 2210(c) of this title, it shall include any such occurrence outside both the United States and any other nation if such occurrence arises out of or results from the radioactive, toxic, explosive, or other hazardous properties of source, special nuclear, or byproduct material licensed pursuant to subchapters V, VI, VII, and IX of this division, which is used in connection with the operation of a licensed stationary production or utilization facility or which moves outside the territorial limits of the United States in transit from one person licensed by the Nuclear Regulatory Commission to another person licensed by the Nuclear Regulatory Commission.

(r) The term "operator" means any individual who manipulates the controls of a utilization or production facility.

(s) The term "person" means (1) any individual, corporation, partnership, firm, association, trust, estate, public or private institution, group, Government agency other than the Commission, any State or any political subdivision of, or any political entity within a State, any foreign government or nation or any political subdivision of any such government or nation, or other entity; and (2) any legal successor, representative, agent, or agency of the foregoing.

**(t)** The term "person indemnified" means (1) with respect to a nuclear incident occurring within the United States or outside the United States as the term is used in section 2210(c) of this title, and with respect to any nuclear incident in connection with the design, development, construction, operation, repair, maintenance, or use of the nuclear ship Savannah, the person with whom an indemnity agreement is executed or who is required to maintain financial protection, and any other person who may be liable for public liability or (2) with respect to any other nuclear incident occurring outside the United States, the person with whom an indemnity agreement is executed and any other person who may be liable for public liability by reason of his activities under any contract with the Secretary of Energy or any project to which indemnification under the provisions of section 2210(d) of this title has been extended or under any subcontract, purchase order, or other agreement, of any tier, under any such contract or project.

**(u)** The term "produce", when used in relation to special nuclear material, means (1) to manufacture, make, produce, or refine special nuclear material; (2) to separate special nuclear material from other substances in which such material may be contained; or (3) to make or to produce new special nuclear material.

**(v)** The term "production facility" means (1) any equipment or device determined by rule of the Commission to be capable of the production of special nuclear material in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public; or (2) any important component part especially designed for such equipment or device as determined by the Commission. Except with respect to the export of a uranium enrichment production facility, such term as used in subchapters IX and XV shall not include any equipment or device (or important component part especially designed for such equipment or device) capable of separating the isotopes of uranium or enriching uranium in the isotope 235.

**(w)** The term "public liability" means any legal liability arising out of or resulting from a nuclear incident or precautionary evacuation (including all reasonable additional costs incurred by a State, or a political subdivision of a State, in the course of responding to a nuclear incident or a precautionary evacuation), except: (i) claims under State or Federal workmen's compensation acts of employees of persons indemnified who are employed at the site of and in connection with the activity where the nuclear incident occurs; (ii) claims arising out of an act of war; and (iii) whenever used in subsections (a), (c), and (k) of section 2210 of this title, claims for loss of, or damage to, or loss of use of property which is located at the site of and used in connection with the licensed activity where the nuclear incident occurs. "Public liability" also includes damage to property of persons indemnified: *Provided,* That such property is covered under the terms of the financial protection required, except property which is located at the site of and used in connection with the activity where the nuclear incident occurs.

**(x)** The term "research and development" means (1) theoretical analysis, exploration, or experimentation; or (2) the extension of investigative findings and theories of a scientific or technical nature into practical application for experimental and demonstration purposes, including the experimental production and testing of models, devices, equipment, materials, and processes.

**(y)** The term "Restricted Data" means all data concerning (1) design, manufacture, or utilization of atomic weapons; (2) the production of special nuclear material; or (3) the use of special nuclear material in the production of energy, but shall not include data declassified or removed from the Restricted Data category pursuant to section 2162 of this title.

**(z)** The term "source material" means (1) uranium, thorium, or any other material which is determined by the Commission pursuant to the provisions of section 2091 of this title to be source material; or (2) ores containing one or more of the foregoing materials, in such concentration as the Commission may by regulation determine from time to time.

**(aa)** The term "special nuclear material" means (1) plutonium, uranium enriched in the isotope 233 or in the isotope 235, and any other material which the Commission, pursuant to the provisions of section 2071 of this title, determines to be special nuclear material, but does not include source material; or (2) any material artificially enriched by any of the foregoing, but does not include source material.

**(bb)** The term "United States" when used in a geographical sense includes all territories and possessions of the United States, the Canal Zone and Puerto Rico.

**(cc)** The term "utilization facility" means (1) any equipment or device, except an atomic weapon, determined by rule of the Commission to be capable of making use of special nuclear material in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public, or peculiarly adapted for making use of atomic energy in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public; or (2) any important component part especially designed for such equipment or device as determined by the Commission.

**(dd)** The terms "high-level radioactive waste" and "spent nuclear fuel" have the meanings given such terms in section 10101 of this title.

**(ee)** The term "transuranic waste" means material contaminated with elements that have an atomic number greater than 92, including neptunium, plutonium, americium, and curium, and that are in concentrations greater than 10 nanocuries per gram, or in such other concentrations as the Nuclear Regulatory Commission may prescribe to protect the public health and safety.

**(ff)** The term "nuclear waste activities", as used in section 2210 of this title, means activities subject to an agreement of indemnification under subsection (d) of such section, that the Secretary of Energy is authorized to undertake, under this chapter or any other law, involving the storage, handling, transportation, treatment, or disposal of, or research and development on, spent nuclear fuel, high-level radioactive waste, or transuranic waste, including (but not limited to) activities authorized to be carried out under the Waste Isolation Pilot Project under section 213 of Public Law 96-164 (93 Stat. 1265).

**(gg)** The term "precautionary evacuation" means an evacuation of the public within a specified area near a nuclear facility, or the transportation route in the case of an accident involving transportation of source material, special nuclear material, byproduct material, high-level radioactive waste, spent nuclear fuel, or transuranic waste to or from a production or utilization facility, if the evacuation is--

(1) the result of any event that is not classified as a nuclear incident but that poses imminent danger of bodily injury or property damage from the radiological properties of source material, special nuclear material, byproduct material, high-level radioactive waste, spent nuclear fuel, or transuranic waste, and causes an evacuation; and

(2) initiated by an official of a State or a political subdivision of a State, who is authorized by State law to initiate such an evacuation and who reasonably determined that such an evacuation was necessary to protect the public health and safety.

(hh) The term "public liability action", as used in section 2210 of this title, means any suit asserting public liability. A public liability action shall be deemed to be an action arising under section 2210 of this title, and the substantive rules for decision in such action shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the provisions of such section.

(jj)[1] Legal Costs

As used in section 2210 of this title, the term "legal costs" means the costs incurred by a plaintiff or a defendant in initiating, prosecuting, investigating, settling, or defending claims or suits for damage arising under such section.

## CREDIT(S)

(Aug. 1, 1946, c. 724, Title I, § 11, as added Aug. 30, 1954, c. 1073, § 1, 68 Stat. 922; amended Aug. 6, 1956, c. 1015, § 1, 70 Stat. 1069; Pub.L. 85-256, § 3, Sept. 2, 1957, 71 Stat. 576; Pub.L. 85-602, § 1, Aug. 8, 1958, 72 Stat. 525; Pub.L. 87-206, §§ 2, 3, Sept. 6, 1961, 75 Stat. 476; Pub.L. 87-615, §§ 4, 5, Aug. 29, 1962, 76 Stat. 410; Pub.L. 89-645, § 1(a), Oct. 13, 1966, 80 Stat. 891; Pub.L. 94-197, § 1, Dec. 31, 1975, 89 Stat. 1111; Pub.L. 95-604, Title II, § 201, Nov. 8, 1978, 92 Stat. 3033; Pub.L. 100-408, §§ 4(b) to 5(b), 11(b), (d)(2), 16(a)(1), (b)(1), (2), (d)(1)-(3), Aug. 20, 1988, 102 Stat. 1069, 1070, 1076, 1078-1080; Pub.L. 101-575, § 5(a), Nov. 15, 1990, 104 Stat. 2835; renumbered Title I and amended Pub.L. 102-486, Title IX, § 902(a)(8), Title XI, § 1102, Oct. 24, 1992, 106 Stat. 2944, 2955; Pub.L. 103-437, § 15(f)(1), Nov. 2, 1994, 108 Stat. 4592; Pub.L. 104-134, Title III, § 3116(b)(1), Apr. 26, 1996, 110 Stat. 1321-349; Pub.L. 109-58, Title VI, § 651(e)(1), Aug. 8, 2005, 119 Stat. 806.)

Notes of Decisions (78)

Footnotes

1      So in original. No subsec. (ii) has been enacted.

42 U.S.C.A. § 2014, 42 USCA § 2014
Current through P.L. 116-153. Some statute sections may be more current, see credits for details.

End of Document     © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# DEPOSITION EXHIBIT
# 205

§ 50.5 Deliberate misconduct., 10 C.F.R. § 50.5

> Code of Federal Regulations
>   Title 10. Energy
>     Chapter I. Nuclear Regulatory Commission (Refs & Annos)
>       Part 50. Domestic Licensing of Production and Utilization Facilities (Refs & Annos)
>         General Provisions

10 C.F.R. § 50.5

§ 50.5 Deliberate misconduct.

Currentness

(a) Any licensee, applicant for a license, employee of a licensee or applicant; or any contractor (including a supplier or consultant), subcontractor, employee of a contractor or subcontractor of any licensee or applicant for a license, who knowingly provides to any licensee, applicant, contractor, or subcontractor, any components, equipment, materials, or other goods or services that relate to a licensee's or applicant's activities in this part, may not:

(1) Engage in deliberate misconduct that causes or would have caused, if not detected, a licensee or applicant to be in violation of any rule, regulation, or order; or any term, condition, or limitation of any license issued by the Commission; or

(2) Deliberately submit to the NRC, a licensee, an applicant, or a licensee's or applicant's contractor or subcontractor, information that the person submitting the information knows to be incomplete or inaccurate in some respect material to the NRC.

(b) A person who violates paragraph (a)(1) or (a)(2) of this section may be subject to enforcement action in accordance with the procedures in 10 CFR part 2, subpart B.

(c) For the purposes of paragraph (a)(1) of this section, deliberate misconduct by a person means an intentional act or omission that the person knows:

(1) Would cause a licensee or applicant to be in violation of any rule, regulation, or order; or any term, condition, or limitation, of any license issued by the Commission; or

(2) Constitutes a violation of a requirement, procedure, instruction, contract, purchase order, or policy of a licensee, applicant, contractor, or subcontractor.

**Credits**

[56 FR 40690, Aug. 15, 1991; 63 FR 1897, Jan. 13, 1998]

SOURCE: 21 FR 355, Jan. 19, 1956; 51 FR 7765, March 6, 1986; 51 FR 27820, Aug. 4, 1986; 52 FR 1292, Jan. 12, 1987; 52 FR 2352, Jan. 21, 1987; 52 FR 28972, Aug. 5, 1987; 52 FR 49371, Dec. ___, 1988; 53 FR 23214,

WESTLAW  © 2020 Thomson Reuters. No claim to original U.S.

Exhibit 205

EXHIBIT

§ 50.5 Deliberate misconduct., 10 C.F.R. § 50.5

June 21, 1988; 53 FR 24049, June 27, 1988; 54 FR 7180, Feb. 17, 1989; 55 FR 10404, March 21, 1990; 55 FR 29194, July 18, 1990; 56 FR 22304, May 15, 1991; 56 FR 31324, July 10, 1991; 56 FR 40689, Aug. 15, 1991; 56 FR 64975, Dec. 13, 1991; 57 FR 41381, Sept. 10, 1992; 57 FR 55075, Nov. 24, 1992; 58 FR 21911, April 26, 1993; 58 FR 52410, Oct. 8, 1993; 60 FR 49495, Sept. 26, 1995; 60 FR 65468, Dec. 19, 1995; 61 FR 232, Jan. 3, 1996; 62 FR 17690, April 11, 1997; 62 FR 59276, Nov. 3, 1997; 66 FR 64738, Dec. 14, 2001; 67 FR 57097, Sept. 6, 2002; 67 FR 67099, Nov. 4, 2002; 67 FR 72091, Dec. 4, 2002; 68 FR 58808, Oct. 10, 2003; 70 FR 61887, Oct. 27, 2005; 72 FR 55932, Oct. 1, 2007; 72 FR 63973, Nov. 14, 2007; 73 FR 42674, July 23, 2008; 73 FR 63571, Oct. 24, 2008; 75 FR 61335, Oct. 5, 2010; 77 FR 39906, July 6, 2012; 79 FR 62334, Oct. 17, 2014; 79 FR 65798, Nov. 5, 2014; 80 FR 54234, Sept. 9, 2015, unless otherwise noted.

AUTHORITY: Atomic Energy Act of 1954, secs. 11, 101, 102, 103, 104, 105, 108, 122, 147, 149, 161, 181, 182, 183, 184, 185, 186, 187, 189, 223, 234 (42 U.S.C. 2014, 2131, 2132, 2133, 2134, 2135, 2138, 2152, 2167, 2169, 2201, 2231, 2232, 2233, 2234, 2235, 2236, 2237, 2239, 2273, 2282); Energy Reorganization Act of 1974, secs. 201, 202, 206, 211 (42 U.S.C. 5841, 5842, 5846, 5851); Nuclear Waste Policy Act of 1982, sec. 306 (42 U.S.C. 10226); National Environmental Policy Act of 1969 (42 U.S.C. 4332); 44 U.S.C. 3504 note; Sec. 109, Pub.L. 96–295, 94 Stat. 783.

Notes of Decisions (6)

Current through Aug. 13, 2020; 85 FR 49582.

End of Document    © 2020 Thomson Reuters. No claim to original U.S. Government Works.

# DEPOSITION EXHIBIT
# 206



Tennessee Valley Authority, 1101 Market Street, Chattanooga, Tennessee 37402-2801

April 6, 2006

10 CFR 51.41
10 CFR 50.55

U.S. Nuclear Regulatory Commission
Attn: Document Control Desk
Washington, D.C.  20555-0001

Gentlemen:

In the Matter of                           )          Docket Nos.   50-438
Tennessee Valley Authority          )                                  50-439

BELLEFONTE NUCLEAR PLANT (BLN) UNITS 1 AND 2 - WITHDRAWAL OF CONSTRUCTION PERMITS CPPR-122 (UNIT 1) AND CPPR-123 (UNIT 2) - REQUEST FOR APPROVAL

This letter requests NRC approval to withdraw BLN construction permits in accordance with Generic Letter 87-15, "Policy Statement on Deferred Plants."  On December 12, 2005, TVA notified NRC by letter that Bellefonte Units 1 and 2 were in terminated status.  In addition, TVA committed to provide the subject letter requesting approval to withdraw Construction Permits CPPR-122 and CPPR-123 for BLN Units 1 and 2, respectively, and provide a site redress plan.

TVA's Board of Directors has approved the cancellation of construction of the deferred Bellefonte units.  There is no nuclear fuel located at the site and TVA has removed safeguards information.

Representatives of TVA Nuclear and NRC have recently discussed and agreed that project completion activities, including lay-up, ceased after October 1, 2005, and no quality-related activities are on-going at the site.  In addition, TVA and NRC have acknowledged that certain approvals; primarily the redress plan pursuant to 10 CFR 51.41, are necessary to allow termination of the subject construction permits.

TVA completed a Final Environmental Assessment (EA) and Finding of No Significant Impacts (FONSI) on January 31, 2006.



Exhibit 206

Printed on recycled paper

U.S. Nuclear Regulatory Commission
Page 2
April 6, 2006

TVA determined that canceling construction of the existing BLN units, withdrawing the construction permits, and redressing the site was not a major federal action significantly affecting the quality of the environment. Accordingly, an environmental impact statement was not required.

The enclosure provides TVA's plans for redress and additional information on other site activities. TVA requests no specific approval date; however, prompt approval will allow for redress activities to commence supporting optimal use of the site.

If you have any questions, please call Rob Brown at (423) 751-7228.

Sincerely,

*Glenn W. Morris*

Glenn W. Morris
Manager, Corporate Nuclear Licensing
and Industry Affairs

Enclosure
cc (Enclosure):
    U.S. Nuclear Regulatory Commission
    Region II
    Sam Nunn Atlanta Federal Center
    61 Forsyth St., SW, Suite 23T85
    Atlanta, Georgia 30303-8931

    Douglas V. Pickett, Sr. Project Manager
    U.S. Nuclear Regulatory Commission
    MS 08G9A
    One White Flint, North
    11555 Rockville Pike
    Rockville, Maryland 20852-2738

    James E. Dyer, Director
    U.S. Nuclear Regulatory Commission
    MS 08G9A
    One White Flint, North
    11555 Rockville Pike
    Rockville, Maryland 20852-2738