FILED
2020 Oct-28 AM 10:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT II

| | |
|---|---|
| **To:** | Larry D. Blust[lblust@HSPLEGAL.COM] |
| **From:** | Quirk, Sherry Ann[saquirk@tva.gov] |
| **Sent:** | Thur 11/29/2018 9:09:43 PM (UTC) |
| **Subject:** | Letter re Bellefonte |

Letter.pdf

Larry,

Please see the attached letter. Let me know if you have questions.

Regards,

Sherry

**Sherry Quirk**
Executive Vice President and General Counsel
Office of General Counsel

Tennessee Valley Authority
400 W. Summit Hill Drive
Knoxville, TN 37902

865-632-4131 (w)
202-494-7576 (m)
saquirk@tva.gov





**NOTICE:** This electronic message transmission contains information that may be TVA SENSITIVE, TVA RESTRICTED, or TVA CONFIDENTIAL. Any misuse or unauthorized disclosure can result in both civil and criminal penalties. If you are not the intended recipient, be aware that any disclosure, copying, distribution, or use of the content of this information is prohibited. If you have received this communication in error, please notify me immediately by email and delete the original message.

EXHIBIT 31

ND_004950



Tennessee Valley Authority, 400 West Summit Hill Drive, Knoxville, Tennessee 37902-1401

Sherry A. Quirk
Executive Vice President and General Counsel

November 29, 2018

Nuclear Development, LLC
3 Bethesda Metro Center, Suite 515
Bethesda, Maryland 20814

Larry D. Blust, Esq.
Hughes Socol Piers Resnick & Dym, Ltd.
70 West Madison Street
Suite 4000
Chicago, Illinois 60602

SENT VIA FACSIMILE TO (202) 479-1106 AND (312) 604-2673, ELECTRONIC MAIL, AND U.S. MAIL

Dear Sirs:

**RE: Purchase and Sales Agreement dated November 14, 2016 (Agreement) for Bellefonte Nuclear Plant Site (TVA Tract No. XBEGP-3) (Site).**

In follow up to our recent discussions, it is clear that, if Nuclear Development, LLC (ND) fails to obtain approval from the Nuclear Regulatory Commission (NRC) for transfer of the Site's construction permits prior to the Agreement's November 30 closing date, Section 101 of the Atomic Energy Act of 1954, 42 USC § 2131 (hereinafter "Section 101" and "AEA"), prohibits ND's acquisition of the Site. Section 101 specifically provides that "it shall be unlawful" to acquire a production facility without approval from the NRC.

This conclusion is confirmed by an opinion from TVA's outside nuclear licensing counsel. That opinion concludes that, should the parties proceed with closing without ND holding the permits, ND's acquisition of the Site would violate Section 101 of the AEA. From our discussions, we understand that ND's regulatory counsel is unwilling to provide a contrary legal opinion that closing would in fact not violate the AEA. TVA takes its legal and regulatory obligations seriously, and as an entity that is seeking to fall under the regulatory regime of the AEA, ND is also bound to those same standards.

But for ND's ability to obtain approval and the consequence of violating Section 101, TVA is prepared to close on November 30.

Nuclear Development, LLC
Larry D. Blust, Esq.
Page 2
November 29, 2018

Turning to the specific terms of the Agreement, the closing condition set forth in Section 6(a)(v) is not fulfilled and therefore closing may not proceed. ND's delay in filing its permit transfer application is the cause of this situation. ND had two years to obtain NRC approval, and yet ND waited until November 13, 2018, to file its permit transfer application with the NRC. TVA allowed two years to close under the Agreement because that was the outside date that ND deemed necessary to obtain permit transfer, with ND anticipating that transfer could be accomplished in half that time.

ND's delay in seeking NRC approval for permit transfer violates Section 9(a)(i) of the Agreement, which obligated ND to exercise "commercially reasonable best efforts to consummate and make effective as soon as is commercially reasonable, the transactions contemplated hereby". Indeed, correspondence in 2016 between the parties prior to signing the Agreement makes clear that ND was to fully accomplish this and other tasks before the closing date, if not sooner. Additionally, the Agreement gave ND the right to direct TVA to terminate the permits, which right if timely exercised, would similarly have allowed the parties to avoid the present situation. ND nonetheless proceeded with signing the Agreement, including acknowledging that it had knowledge and experience in transactions of this type, and then failed either to seek license transfer or termination in a timely manner. ND has now put the parties in a situation where closing would be unlawful.

Additionally, by not securing a transfer of the permits prior to closing, ND will be further unable to meet its obligations under Section 2(b) of the Agreement, which would require ND, as Site owner, to perform and be responsible for "obligations and liabilities relating to the ownership and use of the Purchased Assets from and after closing". Section 101 and the NRC permits for the Site constitute obligations "relating to ownership and use" of the Site and ND, by owning the Site without holding the permits, would be in violation of the AEA and the NRC's permitting requirements.

ND's failure to timely perform these obligations by, and satisfy these conditions on, November 30 will amount to material breach of the Agreement. TVA reserves all rights with regard to such breach.

Sincerely,

Sherry A. Quirk

cc: Aaron B. Nix