FILED
2021 Apr-23  PM 04:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| NUCLEAR DEVELOPMENT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 5:18-CV-01983-LCB |
| | ) | |
| TENNESSEE VALLEY | ) | |
| AUTHORITY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>DEFENDANT'S PRETRIAL BRIEF</u>

Defendant Tennessee Valley Authority ("TVA") respectfully submits this pretrial brief.

## INTRODUCTION

TVA did not breach the Purchase and Sales Agreement ("PSA").  As the Court's legal ruling makes clear, ND did not satisfy the closing condition in Section 6(a)(v) because the NRC did not approve the transfer of the construction permits by the closing date.  So TVA committed no breach by refusing to close.  Nor did TVA fail to exercise commercially reasonable best efforts to complete the transaction with ND.  In fact, TVA had completed all tasks necessary to close on November 30, 2018, and no act or omission of TVA prevented ND from filing sooner its application to the NRC for approval of transfer of the permits.  The failure to obtain the NRC's

approval by the closing date was a problem of ND's making—had ND filed its application sooner, the problem could have been avoided.

TVA highlights below five key points for the Court to consider as it listens to the testimony at the trial.

**1. ND's claim that the PSA required TVA to proceed to closing can be easily resolved.**

Although this Court did not enter summary judgment on ND's claim that TVA breached the PSA by failing to close, that issue can be easily resolved based on the Court's legal ruling and a few simple facts. The Court held that "the transfer of the Bellefonte site without NRC approval would have been unlawful under Section 101 of the Atomic Energy Act" and that, as a result, "the closing condition set forth of Section 6(a)(v) was not satisfied." Doc. 165 at 52. The evidence will be undisputed at trial that (1) the NRC had issued two construction permits for the Bellefonte site that remain in effect; (2) ND and TVA entered into the PSA, which includes Section 6(a)(v); and (3) the NRC had not approved the transfer of the permits to ND prior to the contractual closing date of November 30, 2018. Based on that evidence and the Court's prior ruling, ND cannot prevail on its claim that TVA breached the PSA by failing to close.

**2. TVA satisfied its obligations under Section 9(a), and the alleged breaches caused no harm to ND in any event.**

ND also cannot prevail on its claim that TVA breached the PSA by failing to (a) exercise commercially reasonable best efforts to complete the transaction, or (b) undertake any other actions required by Section 9(a). That claim fails for at least two reasons.

*First*, the evidence will show that TVA engaged in "commercially reasonable best efforts" as required by Section 9(a)(i). "Typically, 'best efforts' require some affirmative action made in good faith." *Northrop Grumman Computing Sys., Inc. v. United States*, 93 Fed. Cl. 144, 151 n.7 (2010). As explained by the Federal Circuit, "[b]est efforts requires that the party put its muscles to work to perform with full energy and fairness the relevant express promises and reasonable implications therefrom." *In re Cambridge Biotech Corp.*, 186 F.3d 1356, 1375 (Fed. Cir. 1999).

TVA certainly took robust affirmative action in good faith to carry out its obligations under the PSA. TVA formed a transition committee to carry out the activities necessary for the transaction to close on schedule, and TVA had done everything it needed to do to be ready to close on November 30, 2018. In fact, TVA went far beyond what could reasonably been expected of it in assisting ND in making plans for future ownership and completion of the plant. While ND focuses on the fact that TVA did not send a letter in November 2018 consenting to the transfer of the permits, ND had made clear to TVA that it did not need such a letter to be

submitted with its application to the NRC or by the closing date.  And, in light of the outstanding issues about the legality of the closing and whether TVA would agree to an extension, TVA acted reasonably in not sending the letter by November 30, 2018.

*Second*, even if TVA had breached any obligation under Section 9(a) (and TVA did not), such a breach did not cause any damages or harm to ND, so ND cannot establish the required causation element of its breach-of-contract claims. "To prove a breach of contract, a plaintiff must establish (1) a valid contract between the parties; (2) an obligation or duty arising from that contract; (3) a breach of that duty; and (4) **damages caused by the breach**." *LaBatte v. United States*, 142 Fed. Cl. 425, 432 (2019) (emphasis added; citation omitted).

The evidence will show that any breach of Section 9(a) by TVA could not have caused any damages or harm to ND.  ND did not file its application for transfer of the construction permits until November 13, 2018.  No act or omission of TVA delayed that filing.  Instead, ND acknowledges that it was information required to be compiled by ND that delayed the submission of the application.  Due to the lateness of the filing just 17 days before the closing, there was no way that the NRC could have completed its review of the application by the closing.  And, on top of all that, the application submitted by ND was insufficient.  The NRC notified ND in

April 2019 that it had to provide additional information in order for the NRC to accept the application for review.

Here's the bottom line:  the only way that TVA could have caused damages or harm to ND is if TVA's alleged breaches of Section 9(a) caused the NRC to be unable to approve the application by closing.  In the absence of that approval, ND could not satisfy the closing condition in Section 6(a)(v).  And the evidence will show that ND's last-minute, deficient application was the reason the NRC did not decide on the application by the closing date, not anything that TVA did or did not do.

In a related vein, ND erroneously claims that TVA's actions prevented it from satisfying a condition precedent to closing and that, as a result TVA cannot assert ND's failure to satisfy the condition as a defense.  As an initial matter, ND cites no authority for the proposition that this so-called "prevention doctrine" would permit the Court to order TVA to take an illegal act.  And beyond that, the prevention doctrine only excuses the failure to satisfy a condition precedent when the other party's actions were the "***cause*** of the failure of performance." *Haddon Hous. Assocs., Ltd. P'ship v. United States*, 711 F.3d 1330, 1338 (Fed. Cir. 2013) (citation omitted; emphasis added).  "A party that alleges prevention or hindrance by the other party must prove that the condition on which his rights depended would have occurred or been performed but for the prevention or hindrance." *Tennessee Valley*

5

*Auth. v. United States*, 60 Fed. Cl. 665, 672 (2004) (citation omitted). As explained above, ND cannot establish that any act or omission by TVA caused the NRC to not approve the transfer of the construction permits prior to closing.

### 3. TVA cannot be held liable for breach of contract because ND committed prior material breaches of the PSA.

In addition to the fact that TVA committed no breach of the PSA, TVA also cannot be liable to ND for breach of contract due to two separate and independent prior material breaches by ND.

"Prior material breach is a federal common law defense asserted when a party breaches a contract after another party has already breached the same contract." *Laguna Constr. Co., Inc. v. Carter*, 828 F.3d 1364, 1369 (Fed. Cir. 2016). The doctrine of "prior material breach, is 'based on the principle that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties ... if there has already been an uncured material failure of performance by the other party.'" *Christopher Vill., L.P. v. United States*, 360 F.3d 1319, 1334 (Fed. Cir. 2004) (quoting Restatement (Second) of Contracts § 237b, cmt. b (1981)). "In determining materiality courts often look to whether the breached obligation is an important part of the contract." *Enron Fed. Sols., Inc. v. United States*, 80 Fed. Cl. 382, 397 (2008) (collecting cases).

One of ND's prior material breaches involved its failure to exercise the "commercially reasonable best efforts" required by Section 9(a)(i) to complete the transaction contemplated by the PSA.  This Court has determined that ND should have known the legal requirement under the Atomic Energy Act to obtain NRC approval prior to transfer of ownership of a site subject to NRC construction permits.  Doc. 165 at 53.  Thus, ND should have prepared and submitted its application for approval of the transfer of the Bellefonte permits so that the NRC would have had enough time to review it before the closing date.  But NRC waited until the last minute to submit a deficient application.  That plainly did not amount to ND "put[ting] its muscles to work" to carry out its contractual obligations and thus did not meet the requirement to exercise commercially reasonable best efforts. *Cambridge Biotech*, 186 F.3d at 1375.  ND's breach of that obligation excused any further performance of the PSA by TVA.

In addition, ND also committed a material prior breach of the PSA when it failed to pay $875,000 that it owed to TVA under the terms of Section 12(e).  ND was obligated to make eight quarterly payments to TVA of $875,000, but it only made seven of those payments.  That missed payment was plainly material, and that breach also excused any further contractual performance by TVA.

**4. The Agreement bars ND's claim for incidental reliance damages, and there are other serious flaws in ND's damages claim.**

Although the Court will likely never reach the issue of damages due to ND's failure to establish any breach of the PSA, there are multiple problems with ND's damages claim.

As the Court is already well aware, Section 35 of the PSA prohibits the parties from recovering "incidental" damages for "breach of any covenant" in the PSA. A "breach of covenant" is "[t]he violation of an express or implied promise, usu[ally] in a contract, either to do or not to do an act." Black's Law Dictionary (11th ed. 2019). Under federal common law, "incidental reliance damages" compensate the plaintiff for expenses incurred in "'preparation for collateral transactions that a party plans to carry out when the contract … is performed.'" *American Cap. Corp. v. United States,* 63 Fed. Cl. 637, 653 (2005) (quoting Restatement (Second) of Contracts § 349 cmt. a); *accord Stovall v. United States*, 94 Fed. Cl. 336, 353 (2010); *Old Stone Corp. v. United States*, 63 Fed. Cl. 65, 79 (2004), *aff'd in part, rev'd in part*, 450 F.3d 1360 (Fed. Cir. 2006); *Caroline Hunt Tr. Estate v. United States*, 65 Fed. Cl. 271, 299 (2005), *aff'd in part, rev'd in part and remanded*, 470 F.3d 1044 (Fed. Cir. 2006).

ND improperly seeks millions of dollars for incidental reliance damages—charges ND incurred to prepare to move forward with the Bellefonte project after closing. These charges include services related to (a) ND's DOE loan guarantee

application for funds to complete the project; (b) lobbying Congress to fund the DOE loan program and maintain a production tax credits program; (c) seeking financial incentives to complete the project; (d) planning for completion of the plant and selecting vendors to work on the project; (e) seeking customers for electricity that ND planned to produce at the plant; and (f) determining how the electricity generated at the plant would be transmitted to customers.  Simply put, the parties' agreement to exclude incidental damages precludes ND from recovering any and all of these categories of damages.

In addition to the improper effort to recover incidental damages, there are at least two other problems with ND's damages claim.  *First*, ND failed to mitigate its damages by continuing to incur expenses after TVA refused to complete the closing on November 30, 2018.  *Second*, for a number of the expenses that ND seeks as damages, it cannot identify the purpose of the expense, or it cannot allocate the expenses between direct and incidental damages.  Because ND bears the burden of proof on damages, these failures of proof mean those amounts cannot be recovered by ND.

**5. Many of the topics for which ND intends to present evidence are not relevant.**

The Court should also anticipate a number of objections to the relevance of evidence that ND plans to offer.  Just to give two examples, based on a review of

ND's exhibit list and deposition designations, it appears that ND intends to offer evidence on the following irrelevant categories of evidence:

- Evidence about TVA's alleged concern about losing Memphis as a customer is not relevant.  The issue in the case is whether TVA breached the PSA, and no evidence about Memphis has any bearing on that.  Instead, ND apparently intends to offer the evidence to spin a fanciful tale about TVA's motive or intent in the fall of 2018.  But the Court asked ND at the summary judgment hearing whether motive and intent are elements of ND's contract claims, and ND conceded that they are not.  Doc. 143 at 19:18-23.  Thus, those issues are not relevant, so no evidence concerning them is relevant.

- ND also apparently intends to offer testimony about (a) the circumstances leading up to TVA's decision to conduct an auction of the Bellefonte site, (b) the pre-auction appraised value of the site, and (c) the contract negotiations between ND and TVA.  But the contract is what it is, and the terms are unambiguous.  As a result, these categories of evidence have no relevance to the issues for trial.

As much as ND wants to tell a colorful story at trial, it needs to stick to relevant evidence.

Respectfully submitted this 23rd day of April, 2021.

*s/ Matthew H. Lembke*
Attorney for Defendant

<u>OF COUNSEL</u>:

Matthew H. Lembke
Riley McDaniel
BRADLEY ARANT BOULT CUMMINGS LLP
1819 Fifth Avenue North
Birmingham, Alabama 35203-2119
Telephone: (205) 521-8000
Facsimile: (205) 521-8800
mlembke@bradley.com
rmcdaniel@bradley.com

David D. Ayliffe
Ibrahim M. Berro
Jill McCook
Office of the General Counsel
TENNESSEE VALLEY AUTHORITY
400 West Summit Hill Drive, WT6
Knoxville, Tennessee 37902
Telephone: (865) 632-3052
ddayliffe@tva.gov
jemccook@tva.gov
imberro@tva.gov

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2021, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send electronic notification of such filing to all counsel of record:

> Caine O'Rear, III
> HAND ARENDALL HARRISON SALE, LLC
> Post Office Box 123
> Mobile, Alabama  36601
> corear@handarendall.com
>
> Edward Shane Black
> HAND ARENDALL LLC
> 102 South Jefferson Street
> Athens, Alabama  35611
> sblack@handarendall.com
>
> Larry David Blust
> HUGHES SOCOL PIERS RESNICK DYM, LTD.
> 70 West Madison Street, Suite 4000
> Chicago, Illinois  60602
> lblust@hsplegal.com

> _s/ Matthew H. Lembke_
> OF COUNSEL