FILED
2021 May-19 PM 07:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 313

UNITED STATES OF AMERICA
NUCLEAR REGULATORY COMMISSION

COMMISSIONERS:

Kristine L. Svinicki, Chairman
Jeff Baran
Annie Caputo
David A. Wright
Christopher T. Hanson

| | |
|---|---|
| In the Matter of<br><br>NUCLEAR DEVELOPMENT, LLC<br><br>(Bellefonte Nuclear Plant,<br>Units 1 and 2) | Docket Nos. 50-438-LT<br>50-439-LT |

**CLI-20-16**

**MEMORANDUM AND ORDER**

Today we address the petition to intervene and request for a hearing submitted by the Blue Ridge Environmental Defense League and its chapter Bellefonte Efficiency and Sustainability Team (collectively, Petitioners) regarding the license transfer application filed by Nuclear Development, LLC (ND) for the transfer of the construction permits for Bellefonte Nuclear Plant, Units 1 and 2.[1] For the reasons discussed below, we find that Petitioners have not established standing to intervene. We therefore deny the petition and terminate this proceeding.

---

[1] *See* Application for Order Approving Construction Permit Transfers and Conforming Administrative Construction Permit Amendments (Construction Permit Nos. CPPR-122 and CPPR-123) (Application), attached (Attach. 1) to Letter from William R. McCollum, Jr., ND, to NRC Document Control Desk (Nov. 13, 2018) (Cover Letter). The Cover Letter, Application, and associated enclosures can be found at ADAMS accession number ML18318A428.

Nuclear Development LLC v. TVA
5:18-CV-01983-LCB-
Date 4/5/2021
Plaintiff Exhibit Label No. 313

- 2 -

## I. BACKGROUND

The Tennessee Valley Authority (TVA) is the present holder of construction permits authorizing the construction of two nuclear reactors at the Bellefonte site, located on the Tennessee River in northwestern Alabama, approximately seven miles northeast of Scottsboro, Alabama.[2] TVA commenced, but has not completed, construction of the two reactors, with Unit 1 approximately 55% complete and Unit 2 approximately 35% complete.[3] Both reactors are in "deferred plant status" under the Commission Policy Statement on Deferred Plants.[4] In November 2016, TVA entered into an agreement to sell the Bellefonte site, including the two partially-completed reactors, to ND, a special purpose entity owned by Mr. and Mrs. Franklin L. Haney and trusts for members of their family.[5] The purchase and sale agreement initially specified that closing would take place on November 14, 2018, but the parties later amended

---

[2] Application at 1.

[3] *Id.* TVA initiated construction of the reactors in 1975 and ceased construction in 1988. At the time construction ceased, Unit 1 was approximately 90% complete and Unit 2 approximately 60% complete. However, in the ensuing years, TVA removed several installed components for other uses or for salvage. *Id.* In 2011, the NRC extended the deadline for construction of Unit 1 to October 1, 2020; Unit 2 is in timely renewal pursuant to a 2014 request by TVA for extension of that unit's construction completion date. *Id.* at 3. TVA has requested a further extension for Unit 1 through October 1, 2021. Letter from James Barstow, TVA, to NRC Document Control Desk (Aug. 28, 2020) (ML20244A305). Thus, Unit 1 is also in timely renewal.

[4] Application at 3; *see* Commission Policy Statement on Deferred Plants, 52 Fed. Reg. 38,077 (Oct. 14, 1987). The full licensing and construction history of the Bellefonte units is complex and not repeated here. *See, e.g.*, Application at 1, 3; *Tennessee Valley Authority* (Bellefonte Nuclear Plant, Units 1 and 2), CLI-10-6, 71 NRC 113 (2010).

[5] Cover Letter at 1-2; Application at 1.

- 3 -

the closing deadline to November 30, 2018.[6] On November 13, 2018, ND filed the instant license transfer application.[7]

In its application, ND requests that the NRC approve the direct transfer of the two construction permits from TVA to ND, extend the construction completion dates for both units, and make amendments to the construction permits reflecting these changes.[8] Under the proposed license transfer, ND would assume possession of and managerial responsibility for all licensed activities for the Bellefonte units, including maintenance of the reactors in deferred plant status.[9] ND states that its objective is to complete construction and seek operating licenses for both units in order to sell power in the regional wholesale market.[10] ND "plans to close on acquisition of the Bellefonte Units . . . but undertake no licensed construction activities unless and until the NRC grants the authority requested" in its application.[11]

On November 21, 2019, the NRC published in the *Federal Register* a notice of "Consideration of Approval of Transfer of Construction Permits and Conforming Amendment."[12] On December 11, 2019, Petitioners timely filed a petition to intervene and a request for a

---

[6] *See* Application at 2; *id.*, Encl. 1 at 5. The closing did not take place. According to ND, TVA "failed to close on the transaction as required by the Purchase and Sale Agreement" and ND "initiated legal action in the United States District Court for the Northern District of Alabama . . . asserting a claim for breach of contract and requesting the Court to order TVA to close the sales transaction as called for in the Agreement." Letter from William R. McCollum, Jr., ND, to NRC Document Control Desk (Aug. 28, 2019), Encl. at 8 (ML19240A382). This matter is still pending with the District Court.

[7] Cover Letter at 1. ND's application for this license transfer was not joined by TVA.

[8] Application at 1.

[9] *Id.* at 2.

[10] *Id.*

[11] *Id.* at 3.

[12] 84 Fed. Reg. 64,355 (Nov. 21, 2019).

- 4 -

hearing proffering four contentions challenging ND's license transfer application.[13] Because we find that Petitioners have not established standing to intervene in this proceeding, we need not reach the question of whether Petitioners have submitted at least one admissible contention.[14]

## II. DISCUSSION

### A. Legal Standards for Standing

To intervene as of right in any NRC licensing proceeding, a petitioner must demonstrate standing by showing that its interest may be affected by the proceeding.[15] "[W]e have long applied contemporaneous 'judicial concepts of standing'" to assess whether a petitioner has established the requisite interest to intervene.[16] Under this framework, a petitioner must identify an actual or threatened injury that is fairly traceable to the challenged action, is likely to be redressed by a favorable decision, and arguably falls within the "zone of interests" protected by the AEA or other relevant statute.[17] The injury "must be both concrete and particularized, not

---

[13] *Petition for Intervention and Request for Hearing by the Blue Ridge Environmental Defense League and Its Chapter Bellefonte Efficiency and Sustainability Team* (Dec. 11, 2019) (Petition). ND filed an answer opposing the petition. *See Applicant's Answer Opposing Petition to Intervene and Request for Hearing by the Blue Ridge Environmental Defense League and Its Chapter Bellefonte Efficiency and Sustainability Team* (Dec. 24, 2019) (Applicant's Answer). Petitioners did not file a reply. The NRC Staff did not participate as a party.

[14] *See* 10 C.F.R. § 2.309(a) (requiring intervenors to demonstrate standing and submit an admissible contention).

[15] *See* Atomic Energy Act of 1954, as amended (AEA), § 189a., 42 U.S.C. § 2239(a); 10 C.F.R. § 2.309(d)(1); *FirstEnergy Nuclear Operating Co. and FirstEnergy Nuclear Generation, LLC* (Beaver Valley Power Station, Units 1 and 2), CLI-20-5, 91 NRC __, __ (Apr. 23, 2020) (slip op. at 5).

[16] *Calvert Cliffs 3 Nuclear Project, LLC, and UniStar Nuclear Operating Services, LLC* (Calvert Cliffs Nuclear Power Plant, Unit 3), CLI-09-20, 70 NRC 911, 915 (2009); *see also U.S. Department of Energy* (Plutonium Export License), CLI-04-17, 59 NRC 357, 363 (2004); *Cleveland Electric Illuminating Co.* (Perry Nuclear Power Plant, Unit 1), CLI-93-21, 38 NRC 87, 92 (1993).

[17] *Entergy Nuclear Operations, Inc. and Entergy Nuclear Palisades, LLC* (Palisades Nuclear Plant), CLI-08-19, 68 NRC 251, 258 (2008). The petitioner must also "specify the facts pertaining to that interest." *Id.*

- 5 -

'conjectural,' or 'hypothetical.'"[18] While we afford greater latitude to a hearing request submitted by a *pro se* petitioner, it is ultimately the petitioner's burden to provide sufficient facts to establish standing.[19]

An organization seeking to intervene may obtain standing as a representative of one or more of its individual members.[20] To demonstrate representational standing, the organization must show that at least one of its members may be affected by the NRC's approval of a licensing action (for example, by the member's domicile, work, or activities on or near the site) and qualifies for standing in his or her own right.[21] The organization must also identify the member by name and demonstrate that the member has authorized the organization to represent him or her and to request a hearing on his or her behalf.[22] In addition, the organization must show that the interests it seeks to protect are germane to its own purpose.[23]

In certain licensing proceedings, such as construction permit and operating licensing proceedings for power reactors, the NRC "recognize[s] a 'proximity' . . . presumption" under which "we presume that a petitioner has standing to intervene if the petitioner lives within, or

---

[18] *Sequoyah Fuels Corp. and General Atomics* (Gore, Oklahoma Site), CLI-94-12, 40 NRC 64, 72 (1994) (internal citation omitted) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974)).

[19] *See Southern Nuclear Operating Co.* (Vogtle Electric Generating Plant, Unit 3), CLI-20-6, 91 NRC __, __ (June 15, 2020) (slip op. at 17 (unnumbered)); *U.S. Army Installation Command* (Schofield Barracks, Oahu, Hawaii, and Pohakuloa Training Area, Island of Hawaii, Hawaii), CLI-10-20, 72 NRC 185, 189 (2010).

[20] *Beaver Valley*, CLI-20-5, 91 NRC at __ (slip op. at 6).

[21] *Id.*; *Palisades*, CLI-08-19, 68 NRC at 258-59; *Consumers Energy Co.* (Palisades Nuclear Power Plant), CLI-07-18, 65 NRC 399, 409 (2007).

[22] *Palisades*, CLI-08-19, 68 NRC at 258-59; *Palisades*, CLI-07-18, 65 NRC at 409.

[23] *Palisades*, CLI-08-19, 68 NRC at 259; *Palisades*, CLI-07-18, 65 NRC at 409; *Private Fuel Storage, L.L.C.* (Independent Spent Fuel Storage Installation), CLI-99-10, 49 NRC 318, 323 (1999).

- 6 -

otherwise has frequent contacts with, the zone of possible harm from the nuclear reactor."[24] In these cases, we have found standing based solely on proximity when a petitioner lives within approximately fifty miles of the facility in question.[25] But in other cases, such as those involving license transfers or non-power reactors, "[w]e determine on a case-by-case basis whether the proximity presumption should apply, considering the 'obvious potential for offsite [radiological] consequences,' or lack thereof, from the application at issue."[26] If a petitioner cannot show an obvious potential for harm from a proposed activity, the inquiry reverts to a traditional standing analysis of injury, traceability, and redressability.[27]

## B. Ruling on Standing

Petitioners assert representational standing on behalf of two members, Mr. Garry Morgan and Ms. Sandra Kurtz. Mr. Morgan and Ms. Kurtz live approximately 4.5 and forty-three miles from the Bellefonte site, respectively.[28] Citing an Atomic Safety and Licensing Board decision, Petitioners assert that because Mr. Morgan and Ms. Kurtz reside within fifty miles of the Bellefonte site, they are entitled to presumptive proximity standing.[29]

---

[24] *Calvert Cliffs*, CLI-09-20, 70 NRC at 915.

[25] *Id.* at 915-16 (citing *Consumers Energy Co.* (Big Rock Point Independent Spent Fuel Storage Installation), CLI-07-19, 65 NRC 423, 426 (2007)).

[26] *Big Rock Point*, CLI-07-19, 65 NRC at 426 (quoting *Exelon Generation Co., LLC and PSEG Nuclear, LLC* (Peach Bottom Atomic Power Station, Units 2 and 3), CLI-05-26, 62 NRC 577, 580 (2005)); *see Holtec International* (HI-STORE Consolidated Interim Storage Facility), CLI-20-4, 91 NRC __, __ (Apr. 23, 2020) (slip op. at 8).

[27] *Palisades*, CLI-08-19, 68 NRC at 268-69; *Peach Bottom*, CLI-05-26, 62 NRC at 581.

[28] Petition at 4-5. Mr. Morgan and Ms. Kurtz have authorized the Petitioners to represent them in this matter. *See* Declaration of Standing for Garry L. Morgan (Dec. 11, 2019), at 2 (Morgan Declaration); Declaration of Standing for Sandra L. Kurtz (Dec. 10, 2019), at 2 (Kurtz Declaration).

[29] Petition at 4-5 (citing *Pacific Gas and Electric Co.* (Diablo Canyon Power Plant Independent Spent Fuel Storage Installation), LBP-02-23, 56 NRC 413, 426-27 (2002)).

- 7 -

The fifty-mile proximity presumption for construction permit and operating license proceedings "rests on our finding, in [such] cases, that persons living within the roughly [fifty]-mile radius of the facility 'face a realistic threat of harm' if a release from the facility of radioactive material were to occur."[30] These licensing actions, as well as significant reactor license amendment actions, involve the "construction or operation of the reactor itself, with clear implications for the offsite environment, or major alterations to the facility with a clear potential for offsite consequences."[31] Outside of these circumstances, we determine on a case-by-case basis whether "the proposed action involves a significant source of radioactivity producing an obvious potential for offsite consequences," and our determination of the geographical extent appropriate for a presumption of standing "depends on the danger posed by the source at issue."[32]

Mr. Morgan's and Ms. Kurtz's residing within fifty miles of the Bellefonte site would typically entitle Petitioners to presumptive standing if this were a proceeding for the issuance of a construction permit. Rather, the licensing action under consideration is whether to grant ND's request to transfer the existing construction permits for the Bellefonte units. Therefore, to obtain presumptive standing based on proximity, Petitioners must show that the instant license transfer proceeding presents an "obvious potential for offsite [radiological] consequences" to Mr. Morgan

---

[30] *Calvert Cliffs*, CLI-09-20, 70 NRC at 917 (quoting *Calvert Cliffs 3 Nuclear Project, LLC, and UniStar Nuclear Operating Services, LLC* (Calvert Cliffs Nuclear Power Plant, Unit 3), LBP-09-4, 69 NRC 170, 183 (2009)).

[31] *Florida Power & Light Co.* (St. Lucie Nuclear Power Plant, Units 1 and 2), CLI-89-21, 30 NRC 325, 329 (1989) (providing expansion of a spent fuel pool as an example of a significant license amendment).

[32] *Sequoyah Fuels Corp.*, CLI-94-12, 40 NRC at 75 n.22; *see also Georgia Institute of Technology* (Georgia Tech Research Reactor), CLI-95-12, 42 NRC 111, 116-17 (1995).

- 8 -

and Ms. Kurtz, "taking into account the nature of the proposed action and the significance of the radioactive source."[33]

In general, we have found that license transfers present a low potential for offsite radiological consequences.[34] As we observed in *Big Rock Point*, "[l]icense transfers even for *operating* nuclear power plants typically involve little if any radiological risk, as there are generally no changes to the physical plant, its operating procedures, or its design basis accident analysis."[35] Thus, we have found proximity-based standing unavailable where the proposed action did not involve changes to the operation, personnel, or financing of the facility.[36] We have likewise not applied proximity-based standing where the radiological source presented a low potential for radiological consequences or where the facility in question was "essentially a passive structure rather than an operating facility."[37]

---

[33] *Big Rock Point*, CLI-07-19, 65 NRC at 426 (quoting *Peach Bottom*, CLI-05-26, 62 NRC at 580-81).

[34] *See id.*; *cf. Entergy Nuclear Operations, Inc.* (Pilgrim Nuclear Power Station), CLI-19-11, 90 NRC 258, 263 & n.14 (2019) (noting that NRC regulations and historical experience support the presumption that license transfers in general do not result in a significant impact on public health, safety, or the environment).

[35] *Big Rock Point*, CLI-07-19, 65 NRC at 426.

[36] *See, e.g., Northeast Nuclear Energy Co. and Consolidated Edison Co. of New York, Inc.* (Millstone Nuclear Power Station, Units 1, 2, and 3), CLI-00-18, 52 NRC 129, 132-33 (2000); *see also Palisades*, CLI-08-19, 68 NRC at 269 (noting that the Commission has "never granted proximity-based standing to a petitioner in an indirect license transfer adjudication").

[37] *Big Rock Point*, CLI-07-19, 65 NRC at 426; *see EnergySolutions, LLC* (Radioactive Waste Import/Export Licenses), CLI-11-3, 73 NRC 613, 622 & n.46 (2011); *see also Consumers Energy Co.* (Big Rock Point Independent Spent Fuel Storage Installation), CLI-07-21, 65 NRC 519, 523 (2007) (finding that the "difference in potential risk between a reactor and an [independent spent fuel storage installation (ISFSI)]" justified a determination that proximity-based standing was not available in ISFSI direct license transfer proceeding). *But cf. Holtec International*, CLI-20-4, 91 NRC __ (slip op. at 8-10) (upholding grant of standing based on petitioner's member's residence within ten miles and significant activities within approximately three miles of proposed large consolidated ISFSI).

- 9 -

In their petition and accompanying declarations, Petitioners do not point to any credible scenario in which the transfer of the Bellefonte construction permits to ND would result in obvious offsite radiological consequences to their members. Instead, Petitioners express general concerns that the transfer of the permits would allow ND to proceed with construction of the reactors and that their construction and operation would "present a tangible and particular harm to the health and well-being" of its members residing near the Bellefonte site.[38] For their part, Mr. Morgan and Ms. Kurtz assert that the reactors "pose a grave risk to [their] health and safety" and that they fear serious illness or death "if an accident involving atmospheric release of radiological material were to occur."[39] But these concerns present an undefined potential for radiological harm from the ultimate construction and operation of the reactors.[40]

ND seeks the transfer of construction permits for two partially constructed reactors, with no radiological source present at the site.[41] Authorization to transfer the Bellefonte construction permits, should it be granted, does not constitute authorization to operate the Bellefonte reactors. Operation of the reactors would require a separate operating license application and review by the NRC, which would also give rise to a hearing opportunity.[42] Given that the current proceeding is limited to a license transfer and involves non-operating reactors lacking any source of radioactivity, we find Petitioners' general concerns about the risks of radiological harm from the ultimate construction and operation of the reactors insufficient to demonstrate that ND's

---

[38] Petition at 5.

[39] Kurtz Declaration ¶ 5; Morgan Declaration ¶ 5. Ms. Kurtz also expresses her concern that the Bellefonte reactors are "inherently dangerous." Kurtz Declaration ¶ 5.

[40] See EnergySolutions, CLI-11-3, 73 NRC at 622.

[41] See Applicant's Answer at 18.

[42] 10 C.F.R. § 50.57; see AEA, § 189a., 42 U.S.C. § 2239(a).

- 10 -

license transfer request presents an obvious potential for offsite radiological consequences.[43] Accordingly, we find that Petitioners have not established standing under a proximity presumption.

We also find that Petitioners have not satisfied the requirements for traditional standing. Specifically, Petitioners have not shown that their members will suffer any concrete and particularized injury attributable to this license transfer proceeding. In their petition, Petitioners assert that their members would suffer a "tangible and particular harm" from construction and operation of the reactors.[44] Petitioners' member, Ms. Kurtz, points to the "long delay and neglected state of these nuclear reactors" and expresses concerns about the inherent danger and lack of experience concerning the reactors.[45] Ms. Kurtz and Mr. Morgan also assert that in the forty-five years since the construction permits for the reactors were first issued, many conditions have changed, including the environment, land use, and population.[46] However, Petitioners do not draw a connection between these concerns and the license transfer application at issue in this proceeding. Mr. Morgan and Ms. Kurtz state that they fear severe consequences to their health and safety from the accidental atmospheric release of radiological material at the Bellefonte site, but the Petitioners offer no explanation as to how such a radiological accident might be expected to result from the transfer of the Bellefonte construction permits from TVA to ND.[47] To demonstrate an injury in fact, Petitioners must show that they "will in fact be perceptibly harmed by the challenged agency action, not that [they] can imagine

---

[43] See Big Rock Point, CLI-07-19, 65 NRC at 426.

[44] Petition at 5.

[45] See Kurtz Declaration ¶ 5.

[46] See id. ¶ 4; Morgan Declaration ¶ 4.

[47] See Kurtz Declaration ¶ 5; Morgan Declaration ¶ 5.

- 11 -

circumstances in which [they] could be affected by the agency's action."[48] Petitioners have not made that showing here.

Moreover, Petitioners' argument that transfer of the permits "would allow [ND] to proceed with its stated purpose" of constructing the reactors is also insufficient to establish standing.[49] Under traditional standing jurisprudence, petitioners must show that the alleged harm is fairly traceable to the challenged action and that the asserted injury could be redressed by this proceeding.[50] Petitioners do not point to any specific aspect of ND's application that, if denied, would redress Petitioners' injuries. Here, the construction permits already authorize TVA, the current permit holder, to conduct the activity that Petitioners assert would cause them injury, namely, to construct the Bellefonte units. Petitioners have not explained how the transfer of this same authority to ND would cause a particularized injury to Petitioners' members that is distinct from what the present circumstances allow. Further, because TVA would retain the authority to construct the Bellefonte units even if the transfer is denied, Petitioners have not demonstrated that their asserted injury would be redressed by denial of the license transfer application.

In summary, we find that Petitioners have not established that one or more of their members qualifies for either proximity-based or traditional standing. Therefore, we decline to grant Petitioners representational standing to participate in this proceeding.[51]

---

[48] *Nuclear Fuel Services, Inc.* (Erwin, Tennessee), CLI-04-13, 59 NRC 244, 248 (2004) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 688-89 (1973)).

[49] *See* Petition at 5.

[50] *E.g., Palisades*, CLI-08-19, 68 NRC at 258.

[51] Further, as ND observes, "nowhere in the Petition or two standing declarations do Petitioners describe the organizational purposes of BREDL or BEST . . . ." Applicant's Answer at 14. While we hold *pro se* petitioners to less rigid pleading standards, it remains the petitioner's burden to demonstrate that it meets all the substantive requirements for standing. *See Vogtle*, CLI-20-6, 91 NRC at __ (slip op. at 6 (unnumbered)). However, because we find that Petitioners have not established that any of their members is entitled to standing in his or her own right, we need not reach the question of whether Petitioners have demonstrated for the purposes of establishing

- 12 -

## III.  CONCLUSION

For these reasons, we *deny* Petitioners' request for a hearing and petition to intervene and *terminate* this proceeding.

IT IS SO ORDERED.



For the Commission

Annette L. Vietti-Cook
Digitally signed by Annette L. Vietti-Cook
Date: 2020.12.17 15:38:25 -05'00'

Annette L. Vietti-Cook
Secretary of the Commission

Dated at Rockville, Maryland,
this 17th day of December 2020.

---

representational standing that the interests they seek to protect are germane to their organizational purpose.

UNITED STATES OF AMERICA
NUCLEAR REGULATORY COMMISSION

In the Matter of )
)
NUCLEAR DEVELOPMENT, LLC ) Docket Nos. 50-438-LT
) and 50-439 LT
)
(Bellefonte Nuclear Plant, )
Units 1 and 2) )
)

CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing **Commission Memorandum and Order (CLI-20-16)** have been served upon the following persons by Electronic Information Exchange.

U.S. Nuclear Regulatory Commission
Office of Commission Appellate Adjudication
Mail Stop: O-16B33
Washington, DC 20555-0001
E-mail: ocaamail.resource@nrc.gov

U.S. Nuclear Regulatory Commission
Office of the Secretary of the Commission
Mail Stop: O-16B33
Washington, DC 20555-0001
E-mail: hearingdocket@nrc.gov

U.S. Nuclear Regulatory Commission
Atomic Safety and Licensing Board Panel
Mail Stop: T-3F23
Washington, DC 20555-0001
E. Roy Hawkens, Chairman
E-mail: roy.hawkens@nrc.gov

U.S. Nuclear Regulatory Commission
Office of the General Counsel
Mail Stop - O-14A44
Washington, DC 20555-0001
Tison A. Campbell, Esq.
Kayla J. Gamin, Esq.
Anita G. Naber, Esq.
David E. Roth, Esq.
Jeremy L. Wachutka, Esq.
Brian Newell, Senior Paralegal
Stacy Schumann, Paralegal
E-mail: tison.campbell@nrc.gov
kayla.gamin@nrc.gov
anita.ghoshnaber@nrc.gov
david.roth@nrc.gov
jeremy.wachutka@nrc.gov
brian.newell@nrc.gov
stacy.schumann@nrc.gov

Morgan, Lewis & Bockius, LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Grant W. Eskelsen, Esq.
Ryan K. Lighty, Esq.
Timothy P. Matthews, Esq.
E-mail: grant.eskelsen@morganlewis.com
ryan.lighty@morganlewis.com
timothy.matthews@morganlewis.com

Bellefonte Nuclear Power Plant, Docket No. 50-438 and 50-439 LT
**Commission Memorandum and Order (CLI-20-16)**

Blue Ridge Environmental Defense League
P.O. Box 88
Glendale Springs, NC 28629
Louis A. Zeller
E-mail: bredl@skybest.com

Krupskaya T. Castellon
Digitally signed by Krupskaya T. Castellon
Date: 2020.12.17 15:41:43 -05'00'

Office of the Secretary of the Commission

Dated at Rockville, Maryland,
this 17th day of December 2020.

2