IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| NUCLEAR DEVELOPMENT, LLC, | § § § | |
| Plaintiff, | § § | CIVIL ACTION CASE NUMBER: |
| vs. | § § | 5:18-CV-01983-LCB |
| TENNESSEE VALLEY AUTHORITY, | § § § | OPPOSED |
| Defendant. | § § | |

**PLAINTIFF'S MOTION TO RECONSIDER AND VACATE
PORTIONS OF SUMMARY JUDGMENT ORDER AND ENTER
JUDGMENT IN PLAINTIFF'S FAVOR ON PARTIAL FINDINGS
PURSUANT TO RULE 52(c)**

Plaintiff Nuclear Development, LLC ("Nuclear Development" or "ND"), pursuant to Rule 52(c) of the *Federal Rules of Civil Procedure*, moves the Court prior to closing arguments and the conclusion of the trial, and before judgment, to reconsider and set aside its summary judgment orders (Docs. 161, 165) and enter judgment in ND's favor on each of ND's claims.

ND notes at the outset that this motion is due to be granted and specific performance should be awarded in ND's favor as requested in its summary judgment motion (Doc. 70) and supporting briefs (Docs. 71, 101). However, if the Court determines to deny this motion, then this motion also preserves, if necessary, for post-judgment and/or appellate review all of ND's arguments, rights, claims and

objections as to those portions of the Court's Orders denying ND's motion for summary judgment (Docs. 161, 165) and the Court's corresponding Order (Doc. 175) precluding ND from offering evidence and argument at trial on the issues addressed in the Court's Order denying ND's summary judgment motion.[1]

ND submits the following in support of this motion:

"If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). Moreover, the Court has the discretion to grant a motion to reconsider for a variety of reasons, including a "need to correct clear error or manifest injustice." *Summit Med. Ctr. of Ala., Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003); *see Chapman v. AI Trans.*, 229 F.3d 1012, 1023–24 (11th Cir. 2000).

Accordingly, ND moves the Court to reconsider the portions of its Orders (Docs. 161, 165) denying summary judgment as to ND based on the erroneous

---

[1] Although the answer is probably "no," it is not entirely clear whether a Rule 52 motion addressing errors in an order denying summary judgment is required to preserve those errors. *See* Joan Steinman, *The Puzzling Appeal of Summary Judgment Denials: When Are Such Denials Reviewable?,* 2014 Mich. St. L. Rev. 895, 912-13 (2014) (discussing the ambiguity related to error preservation in the bench trial context related to Rule 52). Case law suggests that it is not. *See Becker v. Tidewater, Inc.*, 586 F.3d 358, 365, n.4 (5th Cir. 2009). Also, ND files this brief without waiving any arguments as to the merits regarding the cooperation and reasonable best efforts issues presented at trial, and ND is entitled to judgment in its favor on that issue as set forth in its Supplemental Trial Brief.

conclusion that ND was required to obtain Nuclear Regulatory Commission ("NRC") approval prior to closing on the Contract, even though neither the Contract at issue nor Section 101 of the Atomic Energy Act "(AEA"), 42 U.S.C. § 2131, and its implementing regulations required such action.[2] The Court should reconsider the portion of its Orders denying summary judgment to ND because ND has established as a matter of law that (i) Section 6(a)(v) was not a condition precedent for closing, and (ii) NRC approval of transfer of the constructions permits to ND prior to conveyance of the plant was not required by the Contract, the AEA or the NRC regulations. Therefore, the Court should vacate its summary judgment order and enter judgment in ND's favor granting ND's request for specific performance, to which ND is entitled as a matter of law.

**A.     The Contract did not require NRC approval prior to closing, and NRC approval was not a condition precedent**.

The unambiguous language of Sections 1(e) and 7(a)(vii) of the Contract establishes that NRC approval was not a condition precedent to the closing, and the Court's finding that NRC approval of transfer of the construction permits ("CPs") was a condition precedent to closing was a clear error of law. The parties did not

---

[2] In support of this motion, ND adopts and re-asserts as if they were fully set forth herewith the arguments made in its Brief in Support of Summary Judgment (Doc. 71), Reply Brief in Support of Summary Judgment (Doc. 101), Opposition to TVA's Motion for Summary Judgment (Doc. 87), oral arguments regarding the Motion for Summary Judgment (Doc. 143), memorandum on the law of the case (Doc. 174), oral arguments regarding the law of the case (Doc. 179), and the evidence submitted in ND's written proffer (Docs. 221, 222).

...
...

intend to make NRC approval a closing condition under Section 6(a)(v)[3] and the provision's boilerplate language does not support the Court's suggestion that TVA's obligation to close was conditioned on NRC approval. *See Apotex Inc. v. Sanofi-Aventis*, Civil No. 08-6394 (AET), 2009 WL 10688058, at *3 (D. N.J. June 30, 2009) (refusing to read into a contract a condition precedent that would require a party to prove a "seemingly-opened ended proposition" regarding legality). Additionally, by reading such a boilerplate provision in that manner, the Court rendered Section 7(a)(vii) and portions of Section 1(e), which specifically negate any condition of NRC prior approval, meaningless. Restatement (Second) of Contracts § 203 (1981)("In the interpretation of a promise or agreement or a term thereof, the following standards of preference are generally applicable: (a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect."); Restatement (Second) of Contracts § 202 (1981)(A meaning consistent with all the circumstances is preferred to a meaning which requires that part of the contract be

---

[3] Instead of looking into the parties' intentions, the Court concluded without evidence that the parties were mistaken in their representations, but neither party pleaded that Section 7(a)(vii) was a mistake. The Court also committed error by ignoring undisputed evidence that the parties did not intend to make NRC approval a condition precedent because they negotiated over this condition, and TVA refused to agree to such a provision. Restatement (Second) of Contracts § 203(d) (1981) (separately negotiated terms are given greater weight than standardized terms).

disregarded);[4] *see also Guar. Fin. Servs., Inc. v. Ryan*, 928 F.2d 994, 999–1000 (11th Cir. 1991). Section 6(a)(v) does not even reference the CPs, let alone expressly state that approval of the transfer of the CPs was a closing condition. The Court recognized this fact (Doc. 161 at 26), but then gave more weight to the generic legality provision in contravention of federal common law. Restatement (Second) of Contracts §203(c) (1981) (specific terms are given greater weight than general language).

Moreover, the Contract is presumed to be legal as a matter of contract law, and it was incumbent upon TVA to challenge its illegality under *Federal Rule of Civil Procedure* 8(c)(1). *See* Fed. R. Civ. P. 8(c) (illegality is an affirmative defense); *see also Steele v. Drummond*, 275 U.S. 199, 205 (1927); *Apotex Inc.,* 2009 WL 10688058, at *3 (illegality provision is an affirmative defense not a condition precedent). Therefore, the burden was not on ND to prove that the Contract was legal, and the Court committed clear error by shifting the burden to ND. Additionally, the Court committed clear error because it should have reconciled or resolved any conflicting or ambiguous provisions in accordance with the presumption of legality. Restatement (Second) of Contracts § 203 (a) (1981); *see e.g., Goodwin v. Trust Co. of Columbus*, 242 S.E.2d 302, 305 (Ga. App. 1978); 5

---

[4] Federal law, and thus, the Restatement of Contracts governs the Contract. *See* Section 31; *Long Island Sav. Bank, FSB v. United States*, 503 F.3d 1234, 1245 (Fed. Cir. 2007) (Restatement of Contracts reflects the contract principles of federal common law).

*Williston on Contracts* § 12:4 (4th ed.) ("unless no other conclusion is possible from the words of a statute, it should not be held to make agreements contravening it totally void").

The Court also erred by ignoring United States Supreme Court precedent which requires TVA to demonstrate illegality with clarity and certainty. *See Steele*, 275 U.S. at 205. Given that the Court has described this as a case of "first impression" and that the parties warranted that no NRC approval was needed in the Contract, the Court committed clear error by not requiring TVA to prove with clarity and certainty that closing the sale would be illegal. Moreover, an alleged violation of the AEA does not *ipso facto* void the Contract. *See Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 357–58 (1931); *Seh Ahn Lee v. United States*, 895 F.3d 1363, 1372 (Fed. Cir. 2018). Therefore, for all the aforementioned reasons, the Court should reconsider its denial of ND's motion for summary judgment and enter an order of specific performance requiring TVA to convey Bellefonte to ND.

**B.     Transferring Bellefonte to ND without prior NRC approval does not violate the AEA or the NRC regulations.**

The undisputed facts establish that Bellefonte is not a "utilization facility" within the meaning of the AEA and the NRC regulations, and therefore NRC approval was not needed prior to transfer. Therefore, the Court committed clear error when it concluded that NRC approval of the CP transfer application was required prior to the conveyance of the site for the transfer to be legal. ND submits that the

Court's initial instinct – to proceed under the plain language of the AEA and its implementing regulations – was proper as a matter of administrative law. *See, e.g., Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019) (noting that a court must first exhaust all tools of statutory construction before determining what (if any) deference may be warranted); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140 (1944) (looking to administrative agency guidance only in the case of statutory ambiguity and assigning weight based upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade."); *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984) (noting that the first question is always "whether Congress has directly spoken to the precise question at issue.")

As the Court's initial analysis indicates, Bellefonte is not a "utilization facility" within the meaning of the AEA and the NRC regulations because it is without dispute not an operating reactor, not capable of using special nuclear material and not capable of sustaining nuclear fission in a self-supporting chain reaction. *See* 42 U.S.C. §§ 2014(aa) and (cc), 2131, 2133; 10 C.F.R. § 50.2; *see also Cincinnati Gas & Elec. Co.* (*Wm. H. Zimmer Nuclear Power Station, Unit 1*), LBP-84-33, 20 NRC 765 (1984) (facility was no longer a utilization facility when modifications to nuclear steam supply system occurred – including removal of fuel from the site, severing and welding caps on main feedwater lines and main steam

lines, and removal of the control rod drive mechanisms). These were the key factors in the NRC's 2006 determination that Bellefonte was not a "utilization facility" because "the current condition of the plants does not allow operation." (Docs. 72-7, 222-122 (Ex. 208 ND's Proffer)).

However, the Court then erroneously concludes that it "must accede" to (a) the NRC's interpretation of its own regulations (no matter what that interpretation is), and (b) perceived NRC policy and practice based on policy statements, distinguishable NRC rulings, and an unreviewed enforcement letter, thereby treating them as legally binding precedents but at the same time recognizing that the NRC regulations "nowhere expressly restrict the licensee from transferring the property." (Doc. 165 at 44.) These conclusions were clear error because they failed to follow "established law on interpreting agency regulations." *See Pacific Gas & Elec. Co. v. FPC*, 506 F.2d 33, 38 (D.C. Cir. 1974) ("A general statement of policy is the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications."); *Perez v. Mortgage Bankers Assn.*, 135 S. Ct. 1199, 1204 (2015) (interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process."); *United States v. Mead Corp.,* 533 U.S. 218, 232 (2001) (Congress did not intend to authorize agencies to promulgate legislative "rules carrying the force

of law," binding on all regulated parties, through informal guidance documents or adjudicatory rulings that do not bind more than the parties to the ruling.); *Exelon Generation Co. v. Local 15, Int'l Bhd. of Elec. Workers, AFL–CIO*, 676 F.3d 566, 576–578 (7th Cir. 2012) (declining to provide deference to certain NRC regulatory guidance that the NRC, by regulation and its own policy statements, had indicated were non-binding).

The Court is not free to ignore the limits placed on an agency's authority by Congress. *See Power Reactor Dev. Co. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO*, 367 U.S. 396, 397-416 (1961) (deferring to the NRC's interpretation of its own regulation related to provisional licensing based on the language of the statute and regulation at issue); *Arlington v. FCC*, 569 U.S. 290, 296 (2013) (an agency's interpretation must be "within the bounds of reasonable interpretation"); *Chevron*, 467 U.S. at 843-44 (The question is whether the "agency's answer is based on a permissible [and reasonable] construction of the statute."). Therefore, the Court's decision to abandon the language of the regulation and the AEA based on the conclusion that a "utilization facility" is whatever the "NRC says it is" is a clear error of law.

Moreover, the Supreme Court has cautioned that deference to an agency's interpretation of its own regulation may not be appropriate when the interpretation does not touch on or rely on an agency's specialized or technical expertise. *See e.g.,*

*Kisor*, 139 S. Ct. at 2417-18 (noting that Courts should consider whether an agency's statement "implicates its substantive expertise" and whether it represents that agency's considered judgment before granting any deference to an agency's interpretation of its own regulation).

Here, the Court does not rely on or provide deference to sources that actually implicate the application of the NRC's substantive or technical expertise (*i.e.*, guidance or policies discussing when a brick technically becomes "an apparatus designed… to sustain nuclear fission in a self-supporting chain reaction") in determining whether Bellefonte was a "utilization facility." In fact, the Court explains away and ignores examples of the NRC's application of its substantive expertise in *Zimmer* regarding what made the site a "utilization facility," as well as the NRC's determination that Bellefonte was not a "utilization facility" in 2006. (*See* Doc. 165 at 42-43, 51).

Instead, the Court relies on various sources of perceived NRC policy and practice relating to NRC jurisdiction, including *In the Matter of Pub. Serv. Co. of New Hampshire, et al.* (*Seabrook Station, Units 1 & 2*), 7 N.R.C. 1, 22 (Jan. 6, 1978),[5] *In the Matter of Pub. Serv. Co. of Ind.* (*Marble Hill Nuclear Generating*

---

[5] The phrase "utilization facility" does not appear at all in *Seabrook,* and there is no dispute that Bellefonte is not a "utilization facility."

*System, Units 1 and 2*), 7 N.R.C. 179 (Feb. 16, 1978),[6] and the *Fermi* letter[7] to erroneously conclude "that a plant that might not otherwise be considered a utilization facility will nevertheless be treated as one by the NRC as long as it is subject to a valid Section 103-issued license. And thus is the ownership of a plant site tethered to the NRC's permitting authority; where there is a valid NRC-issued license, transfer of ownership requires NRC approval" even though the NRC regulations do not "expressly restrict the licensee from transferring the property." (Doc. 165 at 44, 46). However, the sources of perceived NRC policy and practice relied upon by the Court do not answer the question of whether Bellefonte is a "utilization facility" as contemplated by the AEA and NRC regulations, and therefore do not address whether NRC approval was needed prior to transfer.

Moreover, the Court's interpretation of NRC policy and practice based on these sources erroneously makes the question of whether there is a "utilization facility" irrelevant to the NRC so long as there is a permit or license involved. (*See* Doc. 165 at 46). This stretches the definition of a "utilization facility" beyond the NRC's regulatory definition of a "utilization facility" and the AEA's statutory limits.

---

[6] The *Marble Hill* case provides a distinct factual scenario because it is undisputed that ND was an applicant, subject to NRC jurisdiction at the time of closing. Accordingly, the Court's reliance on *Marble Hill* and concerns regarding NRC access to the site are in error. *See e.g.,* 10 C.F.R. § 50.5.

[7] The Court appears to elevate a footnote in the *Fermi* letter, which is an unreviewed administrative enforcement letter, to a statement of binding precedent of general applicability. The Court's decision to elevate this letter does not comport with administrative law principles. *See e.g., Reid v. Johnson & Johnson*, 780 F. 3d 952, 964-65 (9th Cir. 2015).

*See Arlington*, 569 U.S. at 296; *Christensen v. Harris Cty.*, 529 U.S. 576, 588 (2000) (an agency is not permitted, "under the guise of interpreting a regulation, to create de facto a new regulation"). Therefore, the Court committed a clear error of established law on interpreting agency regulations when it concluded that, even though NRC "regulations may nowhere expressly restrict the licensee from transferring the property," ND was still required to obtain prior NRC approval based on perceived NRC policy and practice. (Doc. 165 at 44). *See Christensen,* 529 U.S. at 588.

Lastly, if "[a] utilization facility. . . is what the NRC says it is," then the Court ignored the fact that the NRC has already applied its technical expertise and determined that Bellefonte is not a "utilization facility."[8]  Therefore, the Court committed clear error when it determined that "TVA could not have lawfully transferred the Bellefonte site to [ND] without the approval of the NRC." (Doc. 165 at 52). Accordingly, the Court should reconsider its Orders (Docs. 161, 165) denying ND's motion for summary judgment and enter judgment in ND's favor by ordering TVA to convey Bellefonte to ND in specific performance of the Contract.

---

[8] There is no indication anywhere in the record that when TVA resubmitted itself to the NRC's jurisdiction and once again became a permittee, the definition for what constitutes a "utilization facility" changed. Nothing about TVA's actions changed the fact that the site was still not a "utilization facility."

## C.      TVA is equitably estopped from avoiding its contractual obligations.

The Court should reconsider its order rejecting ND's estoppel claim and recognize that equitable estoppel does apply under these circumstances. Moreover, the Court's conclusion that there were no factual misrepresentations by TVA and that ND did not rely on TVA's representations in Section 7 of the Contract was also a clear error. The evidence at trial, which was also before the Court on summary judgment, clearly shows that TVA deliberately concealed for months to ND's detriment TVA's position that closing the sale would be illegal.  By the time TVA disclosed any issue with the closing, ND had already paid TVA under the Contract $22,950,000 up front and over $6 million for maintenance and security costs for two years. Moreover, ND had incurred millions in other fees in reliance on TVA's representation that NRC approval was not a condition precedent to closing. Accordingly, it is clear that ND relied to its material detriment on TVA's concealment, representations, warranties and agreements in expending these sums and expecting to close the transaction as agreed. Therefore, TVA should be equitably estopped from renouncing its own agreement to ensure itself a windfall. *See Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.,* 467 U.S. 51, 62, 62 n.14 (citing *Moser v. United States,* 341 U.S. 41, 46 (1951) and stating that the government may be

estopped when it misrepresents the law and a private party is deprived of something to which it was entitled of right).

## CONCLUSION

Pursuant to Rule 52(c), the Court should reconsider and vacate its summary judgment decision and enter judgment in favor of ND for specific performance, ordering TVA to close and convey Bellefonte to ND as the Contract required, together with interest as requested in ND's summary judgment filing.

Respectfully submitted on this 9th day of June, 2021.

/s/ Caine O'Rear III
CAINE O'REAR III     (OREAC6985)
J. CRAIG CAMPBELL   (CAMPJ7981)
HAND ARENDALL HARRISON SALE LLC
P. O. Box 123
Mobile, AL  36601
(251) 432-5511
Fax: (251) 694-6375
corear@handfirm.com
ccampbell@handfirm.com

E. SHANE BLACK (BLACE7644)
HAND ARENDALL HARRISON SALE LLC
102 S. Jefferson Street
Athens, AL  35611
(256) 232-0202
sblack@handfirm.com

**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

I do hereby certify that, on June 9, 2021, I filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew H. Lembke, Esq.
mlembke@bradley.com

David D. Ayliffe, Esq.
ddayliffe@tva.gov

/s/ Caine O'Rear III