# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| NUCLEAR DEVELOPMENT, LLC, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION CASE NUMBER: |
| vs. § | |
| § | 5:18-CV-01983-LCB |
| § | |
| TENNESSEE VALLEY AUTHORITY, § | OPPOSED |
| § | |
| Defendant. § | |

## PLAINTIFF'S ALTERNATIVE MOTION
## FOR NEW TRIAL AND RELATED RELIEF

In the alternative to its Motion to Alter or Amend the Judgment, Plaintiff Nuclear Development, LLC ("ND") hereby moves the Court (i) to award a new trial on all claims set forth in the Amended Complaint (Doc. 176) pursuant to *Federal Rules of Civil Procedure* Rule 59(a)(1)(B), (ii) to open the Judgment (Doc. 247) to take additional evidence and amend its findings of fact and conclusions of law pursuant to Rule 59(a)(2), (iii) to make amended and/or additional findings accordingly pursuant to Rule 52(b) and (iv) to the extent applicable, to make such findings of fact and conclusions of law under Rule 52(c).[1]

---

[1] ND hereby adopts and renews its previously filed Rule 52(c) motion (Doc. 230).

### A. The Court erred in precluding ND from offering evidence at trial regarding any of the issues addressed in the order denying summary judgment to both parties, thereby entitling ND to a new trial.

College and professional football referees are instructed not to blow the whistle to stop play when a ball carrier may or may not have fumbled and the opposing team attempts to return the ball for a score. A premature whistle can determine the outcome of the game, and the better course is to let the play continue so that a full, deliberate review of the play can occur. Here the Court blew the whistle prematurely when it precluded ND from presenting evidence or making legal arguments at trial relating to the issues and evidence addressed in the Court's opinion denying summary judgment. By doing so, the Court committed clear error, and a new trial should be awarded.

After entering its Amended Order (Doc. 165) denying the parties' cross-motions for summary judgment, the Court entered an Order (Doc. 175) stating in part:

> 1. The parties may not introduce evidence to prove or make further argument on issues already resolved by the Court's summary-judgment order, including evidence or argument to show that:
>
>   a. The Nuclear Regulatory Commission's approval of the Construction Permits' transfer was or was not a condition to closing;
>
>   b. Transfer of the Bellefonte site would or would not have violated the terms of the Construction Permits;

2

      c.      Transfer of the Bellefonte site would or would not have violated Section 101 of the Atomic Energy Act and its implementing regulations; and

      d.      TVA should or should not be equitably estopped from avoiding its contractual obligations.

This Order constitutes error that entitles ND to a new trial under Rule 59(a)(1)(B). Additionally, or alternatively, the Court should open the Judgment (Doc. 247), take additional evidence and amend its findings of fact and conclusions of law or make new ones under Rule 59(a)(2) and Rule 52(b).

ND's Offer of Proof (Docs. 221, 222) constitutes the evidence from witnesses and exhibits that would have been offered at trial had the Court not prematurely and improperly ruled out the evidence before ever hearing it at trial. ND hereby adopts and resubmits its Offer of Proof in support of this motion. The Order (Doc. 175) precluding any reference to or introduction of such admissible evidence before it was ever offered or admitted, and indeed before the trial began, materially prejudiced ND in its trial presentation and, as shown below, directly resulted in the Court's carrying forward to the trial erroneous findings and conclusions from its Amended Order (Doc. 165) denying summary judgment to both parties. Thus, the Court's decision to exclude evidence regarding the PSA caused "substantial prejudice" to ND and accordingly ND is entitled to a new trial. *Peat, Inc. v. Vanguard Research,*

*Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004); *James v. Terex USA, LLC,* 2021 WL 2137599, at *2 (11th Cir. May 26, 2021) (same).

For example, by precluding in advance any evidence at trial regarding whether the "NRC's approval of the Construction Permits was or was not a condition to closing" (Doc. 175), the Court substantially prejudiced ND by refusing to hear the evidence that both parties clearly intended that NRC approval was *not* a condition to closing. The role of the Court in a contract dispute is to ascertain and enforce the parties' intent, and yet the Court prematurely deprived ND of any opportunity to offer evidence or argument relevant to contract construction, contract interpretation or whether the parties' intended for Section 6(a)(v) to have any effect on, much less override, the parties' clear intention otherwise that NRC approval was not required. Similarly, the Court precluded ND in advance from offering any evidence or argument at trial that "TVA should or should not be equitably estopped from avoiding its contractual obligations." (*Id.*) The Court's preclusion of equitable estoppel was based on the Court's prior erroneous conclusion of law that the Atomic Energy Act required NRC approval for the transfer of Bellefonte to occur. The Court then extrapolated that conclusion to its finding that ND was charged with knowledge of this law and, therefore, ND's reliance on TVA's contractual representations and warranties was unreasonable. The Court failed to recognize, however, that if ND was charged with knowledge of this law (erroneous as it may be), then TVA was

4

also charged with the same knowledge. (*See* discussion in Section B.) The compounding of an erroneous conclusion of law to an erroneous finding regarding ND's knowledge and its consequential lack of reasonableness in relying on the contract terms, together with the Court's subsequent order precluding ND from addressing any of these issues at trial, was error resulting in substantial prejudice to ND.

This Court has previously recognized that the law of the case doctrine is "manifestly inapplicable" to interlocutory, non-final orders such as denials of summary judgment. *Hall v. Thomas,* 735 F. Supp. 2d 1113, 1143-44 (N.D. Ala. 2010).[2] Similarly, *Moore's Federal Practice* clearly and explicitly instructs:

> [a] denial of a motion for summary judgment cannot determine the law of a case because it is an interlocutory order subject to reconsideration at any time before final judgment in the case. It does not conclusively resolve any legal issue or finding of fact … and *has no claim- or issue-preclusive effect*. Therefore, the law of the case doctrine does not apply to a denial of a summary judgment motion.

---

[2] Citing, among other cases, *Andujar v. Rodriguez,* 486 F.3d 1199, 1202 (11th Cir. 2007) (denial of summary judgment is an interlocutory, not final, order); *Gregg v. U.S. Indus. Inc.,* 715 F.2d 1522, 1528 (11th Cir. 1983) ("Ordinarily law of the case applies only where there has been a final judgment and not to interlocutory rulings.") *Curran v. Kwon*, 153 F.3d 481, 486-88 & n.11 (7th Cir. 1998) ("[T]he denial of summary judgment … was not the law of the case and did not bind the court.").

James Wm. Moore, 11 *Moore's Fed. Prac.* 3d § 56.12[1][c] (Lexis 2021) (emphasis added).

The Court's denial of the parties' cross-motions for summary judgment is not a final judgment, and any findings of fact or conclusions of law in the Court's non-final Order are not the law of the case. Moreover, even if anything in the Court's non-final Order could be considered to be the law of the case (which it is not), the law of the case doctrine would not restrict ND's ability to present evidence on its pending claims at trial. *See Trustees of Ind. Univ. v. Aetna Ca. & Sur. Co.,* 920 F.2d 429, 436 (7th Cir. 1990) (finding that the law of the case doctrine did not bind the court to a statement made by it in the course of denying summary judgment when the subsequent proceedings brought the statement into doubt, noting that "so long as the factual issue has not been brought to judgment, the parties should be free in the courts of the same proceeding to offer evidence on the issue."), *abrogated on other grounds by Watson v. Amedco Steel, Inc.*, 29 F.3d 274, 278 (7th Cir. 1994)); *Northeastern Pa. Freethought Soc'y v. County of Lackwanna Transit Sys. (COLTS),* 2017 WL 4319512, *1 (M.D. Pa. July 6, 2017) (in the context of a defendant's motion *in limine* to preclude revisiting at trial an issue addressed in the district court's order denying the parties' cross-motions for summary judgment, "the court finds that the law of the case doctrine *does not preclude the plaintiff from developing a full factual record at trial* related to the … issue and the defendant's motion in

limine seeking to prevent the plaintiff from doing such will be denied.") (emphasis added).

This conclusion is further buttressed by the fact that any statements made by the Court in its non-final Order were made in the context of a summary judgment motion, where it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts about the facts in favor of the nonmovant." *Twomey v. Waid*, 2021 WL 1208882, *1 (N.D. Ala. March 31, 2021). Accordingly, any statements made by the Court in its non-final Order should be interpreted only in light of the limited purpose for which it was made, *i.e.*, to determine whether summary judgment was appropriate, not for the purpose of finding facts or making legal conclusion on a full trial record disposing of the case on the merits. *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 769 F. Supp. 599, 614 (D. Del. 1991) (finding that a judge's rulings or opinions made in the course of denying motions for summary judgment were not binding as the law of the case), *aff'd in part and rev'd in part on other grounds,* 988 F.2d 386 (3d Cir.), *cert. denied,* 510 U.S. 908 (1993); *see also Kutner Buick, Inc. v. American Motors Corp.*, 868 F.2d 614, 619 (3d Cir. 1989) (refusing to bind the parties to findings of fact made by the trial court in denying a motion for summary judgment, noting also that "[s]ince the record at a trial may be

different [than the summary judgment record], such a preliminary ruling does not determine what issues should be submitted to the jury.").

A court commits a reversible error and "abuses its discretion when it 'applies an incorrect legal standard, applies the law in an unreasonable or incorrect manner, follows improper procedures in making a determination, or makes findings of fact that are clearly erroneous." *James*, 2021 WL 2137599, at *2 (quoting *Aycock v. R.J. Reynolds Tobacco Co.*, 769 F.3d 1063, 1068 (11th Cir. 2014)). For example, in *Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337 (11th Cir. 2007), the Eleventh Circuit concluded that a district court's decision to exclude evidence of the defendant's borrowed servant defense at trial based on an erroneous interlocutory decision warranted a new trial. *Id.* at 1352-1355. The Eleventh Circuit noted that the exclusion was prejudicial because there was sufficient evidence to create a question of fact on the issue and the defense would have been a complete defense to liability. *Id.* at 1354. Similarly, in *Fidelity & Deposit Company of Maryland v. Tom Murphy Construction Co.*, 674 F.2d 880 (11th Cir. 1982), the Eleventh Circuit reversed a district court's denial of a party's motion for a new trial based on the court's improper exclusion of evidence for trial. *Id.* at 882-88. The Court reasoned that the district court's grant of the "motion in limine effectively precluded the resolution of factual matters dispositive of the outcome of this litigation" and therefore constituted a reversable error. *Id.* at 886.

Here, ND is entitled to a new trial based on the Court's improper exclusion of evidence, which caused substantial prejudice to ND, much like the parties in *Proctor* and *Fidelity & Deposit Company of Maryland.* As with those parties, ND was prevented by the Court's Order (Doc. 175) from presenting evidence regarding "factual matters dispositive of the outcome" of the litigation based on an erroneous interlocutory decision. ND was substantially prejudiced by this decision because the Court's Findings of Fact and Conclusion of Law (Doc. 246) subsequently made several factual findings and conclusions of law based not on the evidence at trial, but on presumptions supported by the Court's interlocutory Order denying the motions for summary judgment. Accordingly, if ND's Motion to Alter or Amend the Judgment is not granted, the Court should grant ND's motion for a new trial and allow it to present evidence regarding all "factual matters dispositive of the outcome."

> **B. The Court's adherence to erroneous conclusions of law or mixed findings of law and fact from its Order denying summary judgment resulted in clear error in its findings of fact at trial.**

The Court erroneously concluded as a matter of law in its Order that under Section 101 of the AEA, TVA could not lawfully transfer Bellefonte to ND before the NRC had approved the transfer of the Construction Permits (Doc. 165.) Likewise, as discussed above, the Court used this same premise to rule out of the trial in advance any evidence or argument at trial regarding equitable estoppel. (*Id.*

at 53.)  Without hearing any evidence or argument on this issue at trial, the Court repeated this conclusion in its Findings of Fact & Conclusion of Law.  (Doc. 246 at 24.)  The Court then found that "Nuclear Development was charged with knowledge of the law" and that "Nuclear Development should have known – and was charged with knowing – that Section 101 could present a barrier to closing."  (*Id.*)[3]  This conclusion was the cornerstone of the Court's conclusion that TVA did not breach Section 9(a) of the PSA.

If the Court's conclusion regarding the meaning and effect of Section 101 of the AEA as it applied to the facts of this case is correct (which ND submits that it is not), then TVA is "charged with knowledge of the law" equally and to the same degree as ND.  Yet the Court does not mention TVA's legally presumed knowledge of the law at all. TVA represented and warranted to ND in Section 7(a) of the PSA that "no authorization, consent or approval or other order or action of or filing with any Governmental Authority is required for the execution and delivery by the TVA of this Agreement or the consummation by the TVA of the transaction contemplated hereby."  If TVA is charged with full knowledge of the law, then under the Court's rationale TVA's representation and warranty was false, and was known by TVA to be false the day it was made.

---

[3] The Court's erroneous conclusions of law are discussed in Plaintiff's Motion to Alter or Amend the Judgment.

10

If the Court had recognized that TVA was charged with knowledge of the law, then its rationale for finding that TVA did not breach the cooperation and best efforts clauses under Section 9(a) makes little or no sense. Under that rationale, the Court concluded that TVA's "generalized concern" as early as June of 2018 that TVA could not sell Bellefonte without the NRC's approval did not obligate TVA to communicate that concern to ND until it became a "particularized concern" much later, when it was too late to rectify without an extension of the closing date. But if the Court had held TVA to the same "knowledge of the law" standard, then TVA knew in June of 2018, if not in November of 2016 when the PSA was made, that it could not or would not close the sale in November of 2018 due to illegality, and it thus breached Section 9(a) by failing to notify ND of that position. Whether TVA's concerns where "generalized" or "particularized" or "abstract" or "concrete", as described by the Court, makes no difference because TVA is charged with "concrete" knowledge of the law at all pertinent times (assuming the law is what the Court said it is).

Therefore, if ND's Motion to Alter or Amend the Judgment is not granted, ND is entitled to a new trial on the issue of whether TVA breached Section 9(a).

### C. The Court should reopen the record to admit TVA's September 10, 2021 letter to the NRC, which evidences that TVA held onto the Construction Permits solely for the purpose of defeating the sale of Bellefonte.

On September 10, 2021, TVA submitted a letter to the NRC (Doc. 258-1) notifying the NRC that TVA withdraws its request to extend the completion dates of the Construction Permits, thereby allowing the permits to expire on October 1, 2021 (one week away). A copy of that letter is attached to this motion as Exhibit A. Of course, if there are no Construction Permits, then there is no NRC jurisdiction over Bellefonte. If there is no NRC jurisdiction over Bellefonte, then there is no legal impediment to transferring Bellefonte to ND even under the Court's prior rationale. Though time has moved forward, the plant presumably remains the same as it was on the closing date of November 30, 2018. TVA held onto the Construction Permits only long enough to assert a basis to defeat ND's claim; it promptly abandoned that façade as soon as the Court's judgment was entered.

The Court found in its opinion there was a "ring of truth" to ND's position, and the evidence supporting it, that TVA CEO Bill Johnson and TVA's legal department "conspired to find a legal pretext for unwinding the deal." (Doc. 246 at 33.) But the Court went on to say that TVA's "motive does not matter in a breach-of-contract action" and is "legally irrelevant." ND did not concede that statement, as explained below. That finding was error, therefore, because TVA's bad faith is indeed an admissible and relevant factor in determining whether TVA breached its

12

obligations of cooperation and best efforts under Section 9(a). Just because motive is not an enumerated element of breach of contract, which ND did concede, does not mean that evidence of bad faith is legally irrelevant to the question of whether TVA cooperated with ND and used its best efforts to consummate the transaction as required by the PSA.[4]

In its presentations to the Court, TVA repeatedly stated that a basis for not conveying Bellefonte to ND without NRC approval was that it "would undermine the safety concerns that underlie the NRC regulatory scheme." (Doc. 31 at 19.) In describing the *Marble Hill* case that TVA, and ultimately the Court, relied on, TVA emphasized that the Atomic Safety and Licensing Appeal Board "based its decision on the safety concerns underlying the Act … underscoring the need for the licensing

---

[4] "The Federal Circuit has defined the [best efforts] standard as requiring 'that the party put its muscles to work to perform with full energy and fairness the relevant express promises and reasonable implications therefrom.' Other courts have similarly defined best efforts to require diligence or a high level of good faith." *Marquardt Co. v. U.S.*, 101 Fed. Cl. 265, 273 (2011) (internal citation omitted); *Crum & Crum Enters., Inc. v. NDC of Cal., LP*, 2010 WL 4668456, at *4 (D. Del. Nov. 3, 2010); *Gilson v. Rainin Instrument, LLC*, 2005 WL 1899471, at *5 (W.D. Wis. Aug. 9, 2005) ("'best efforts' standard requires good faith plus diligence.") *See e.g.*, *Barbara v. MarineMax, Inc.*, 2013 WL 1952308, at *3 (E.D.N.Y. May 10, 2013); *Baron Fin. Corp. v. Natanzon*, 509 F. Supp. 2d 501, 514 (D. Md. 2007) (good faith is a factor in determining whether a party has complied with its "best efforts" obligations.); *Wal-Mart Real Est. Bus. Tr. v. Eastwood, LLC*, 2015 WL 12910670, at *6 (W.D. Mich. July 27, 2015); 17B C.J.S. *Contracts* § 764 ("Good faith is also a factor in the determination as to whether a party has fulfilled its obligations under a best-efforts clause."); *Restatement (Second) of Contracts* § 205 cmt. d (1981) ("Subterfuges and evasions violate the obligation of good faith").

of any owner." (Doc. 86 at 20.) (In contrast, TVA now seeks to be an unlicensed owner of Bellefonte.) TVA also advanced the primary argument of its expert "that it harms the public for the authority of the NRC to be undermined." (Doc. 98 at 6.) Even the Court was heavily influenced by this purported concern when it stated, "To allow a licensee to transfer the property without the NRC's approval would cripple its regulatory authority and derogate from its stated policy." (Doc. 165 at 45-46.)

Of course, all of this was a pretense by TVA. By now seeking immediately after the judgment to eliminate NRC jurisdiction, TVA implicitly concedes that the public safety concern "requiring" NRC regulation of Bellefonte – the core reason it argued that NRC approval was necessary – was never really a concern at all. Now that it is quite clear that NRC jurisdiction is not an issue for TVA, the Court should order a new trial under Rule 59(a)(1)(B), or at minimum open the judgment under Rule 59(a)(2) to take additional evidence (including the September 10, 2021 letter from TVA to the NRC), to consider whether, in light of the foregoing, TVA breached its obligations under Section 9(a) and whether specific performance or damages should be awarded. ND has previously outlined for the Court the opportunity, under its broad equitable discretion, to award specific performance by two different means without the necessity of undoing the Court's summary judgment opinion. (*See* Doc. 227 at 23-25, 30.) The Court has not previously addressed those options except to dismiss them without comment. TVA's letter to the NRC acknowledging expiration

14

of the Construction Permits and the potentially imminent absence of NRC jurisdiction makes the remedy of specific performance – to achieve a fair and just result under the Court's equitable powers – an even more compelling result. Equity is "[j]ustice administered according to fairness as contrasted with the strictly formulated rules of common law." *Johnson v. Univ. Health Servs., Inc.*, 161 F.3d 1334, 1340 (11th Cir. 1998) (quoting *Black's Law Dictionary* 540 (6th ed. 1990)).

### D. The Court's failure to award ND specific performance or damages for TVA's breach entitles ND to a new trial.

A new trial is warranted "where the error has caused substantial prejudice to the affected party (or, stated somewhat differently, affected the party's 'substantial rights' or resulted in 'substantial injustice')." *Peat*, 378 F.3d at 1162. By virtue of the Court's errors discussed above, ND is entitled to a new trial because the Court failed to find TVA was in breach of the PSA such that the Court would be required to award ND either specific performance or, alternatively, damages as a remedy for TVA's breach. By depriving ND of a remedy for TVA's breach, the Court's judgment constituted substantial injustice.

### Conclusion

ND is entitled to a new trial as the Court's Judgment resulted from errors that excluded admissible evidence and otherwise infected the Court's ultimate findings of fact and conclusions of law, leading the Court to make manifest errors of law and fact contrary to the great weight of the evidence. *See Jenkins v. Anton*, 922 F.3d

15

1257, 1264, 1264 n.7 (11th Cir. 2019) (stating that a new trial is warranted if the result will be a "miscarriage of justice" or if the "verdict is against the clear weight of the evidence"); *Tampa Port Auth. v. M/V Duchess*, 65 F. Supp. 2d 1303, 1305 (M.D. Fla. 1998) (new trial should be granted if there is a manifest error of law or fact). Therefore, if ND's Motion to Alter or Amend the Judgment is not granted, the Court should order a new trial to allow ND to fully present its case on the merits, or alternatively it should reopen the record to take additional evidence and amend its findings of fact and conclusions of law, to ultimately enter judgment using the Court's equitable powers to award ND specific performance which "effectuate[s] the purposes for which the contract was made and on such terms as justice requires." *Lary v. U.S. Postal Service*, 472 F.3d 1363 (Fed. Cir. 2006) (quoting *Restatement (Second) of Contracts* §358(1)); *Willard v. Tayloe*, 75 U.S. 557, 567–68 (1869)("In general it may be said that the specific relief will be granted when it is apparent, from a view of all the circumstances of the particular case, that it will subserve the ends of justice.").

Alternatively, after hearing all the evidence, the Court should enter judgment awarding ND the full amount of damages proven at trial.

Respectfully submitted on this 23ᵈ day of September, 2021.

/s/ Caine O'Rear III
CAINE O'REAR III       (OREAC6985)
J. CRAIG CAMPBELL   (CAMPJ7981)
HAND ARENDALL HARRISON SALE LLC
P. O. Box 123
Mobile, AL  36601
(251) 432-5511
Fax: (251) 694-6375
corear@handfirm.com
ccampbell@handfirm.com

E. SHANE BLACK (BLACE7644)
HAND ARENDALL HARRISON SALE LLC
102 S. Jefferson Street
Athens, AL  35611
(256) 232-0202
sblack@handfirm.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I do hereby certify that, on September 23, 2021, I filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew H. Lembke, Esq.
mlembke@bradley.com

David D. Ayliffe, Esq.
ddayliffe@tva.gov

/s/ Caine O'Rear III