FILED
2021 Oct-27 PM 06:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| NUCLEAR DEVELOPMENT, LLC, § | |
| § | |
| Plaintiff, § | |
| § | CIVIL ACTION CASE NUMBER: |
| vs. § | |
| § | 5:18-cv-01983-LCB |
| TENNESSEE VALLEY AUTHORITY, § | |
| § | |
| Defendant. § | |

### REPLY IN SUPPORT OF PLAINTIFF'S ALTERNATIVE MOTION FOR NEW TRIAL AND RELATED RELIEF

CAINE O'REAR III (OREAC6985)
J. CRAIG CAMPBELL (CAMPJ7981)
HAND ARENDALL HARRISON SALE LLC
P. O. Box 123
Mobile, AL  36601
(251) 432-5511
corear@handfirm.com
ccampbell@handfirm.com

E. SHANE BLACK (BLACE7644)
HAND ARENDALL HARRISON SALE LLC
102 S. Jefferson Street
Athens, AL  35611
(256) 232-0202
sblack@handfirm.com

**ATTORNEYS FOR PLAINTIFF**

Plaintiff Nuclear Development, LLC ("ND") submits this reply brief in support of its Alternative Motion for New Trial and Related Relief (Doc. 260).

### A. The Court erred in precluding ND from offering evidence at trial regarding any of the issues addressed in the order denying summary judgment.

TVA has a fundamental misunderstanding of when the law of the case doctrine applies. As an initial matter, TVA mischaracterizes the basis for the Court's denial of summary judgment by calling the Court's findings purely legal conclusions, when they actually involved both misapplications of law to the facts and factual findings predicated on legal errors. For example, the Court's findings regarding whether the Bellefonte site met the definition of a "utilization facility" (a critical dispositive issue) involved extensive evidence and fact-finding. The Court's findings regarding the conditions of closing the transaction and the interplay of the terms and conditions of the Agreement involved fact-finding, not purely legal conclusions. Likewise, the issue of equitable estoppel fundamentally involves factual evidence regarding TVA's representations and warranties, ND's reliance thereon, and TVA's conduct in violation of such representations. All of this evidence was prematurely barred from trial by the Court. (Doc. 175.)[1] Highlighting

---

[1] Accordingly, TVA's attempt to distinguish cases cited by ND because they involved prior factual determinations made by a trial court is unavailing. *See Renteria-Marin v. Ag-Mart Produce, Inc.*, 537 F.3d 1321, 1324 (11th Cir. 2008) (appellate courts reviewing a bench trial judgment can correct errors of law,

1

the error, the Court denied summary judgment as to all counts because it determined "there remain genuine disputes of material fact." (Doc. 165 at p. 55.)

Nevertheless, TVA argues that the Court's order denying summary judgment was the law of the case and prohibited ND from introducing evidence or argument on these and other issues at trial. The cases cited by TVA, however, do not support TVA's position; none of the cases involved a denial of a motion for summary judgment as occurred here, which is a material distinction.

In *United States v. Escobar*, 110 F.3d 1556 (11th Cir. 1997), the district court made a determination of the amount of usable cocaine the defendant had imported and sentenced him based on then-governing case law, and the defendant did not challenge that determination on appeal. Later, the Sentencing Guidelines were amended to tie sentencing to the amount of cocaine imported that could be used, and the defendant moved to have his sentence recalculated based on the amended guidelines. The Eleventh Circuit found that the original sentencing hearing decision was the law of the case. That situation is nothing like the present case, in which the Court barred evidence at trial based on non-final findings contained within an order denying summary judgment, as to which there is ample authority that such findings are not the law of the case.

---

including misapplications of law to fact and factual findings predicated on legal errors).

2

In *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988), the defendant appealed to the Federal Circuit an order granting summary judgment, which found no jurisdiction over the case and transferred it to the Seventh Circuit, which then re-transferred the case back to the Federal Circuit. The law of the case issue related to appellate jurisdiction, not the district court's summary judgment order. The Supreme Court held that the Federal Circuit's original finding of no jurisdiction, not the Seventh Circuit's later finding to the contrary, was the law of the case. The Supreme Court also noted that "the policies supporting the doctrine [of the law of the case] apply with even greater force to transfer decisions than to decisions of substantive law; transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." *Id.* at 816. Further, the Supreme Court also acknowledged the court's ability to revisit a jurisdictional question if the court's decision was "clearly wrong." *Id.* at 817. *Christianson* is not relevant to the instant case.

TVA also cites *Gjellum v. City of Birmingham, Ala.*, 829 F.2d 1056 (11th Cir. 1987), for the unremarkable proposition that rulings made by a court during litigation have no preclusive effect on other cases because they are not a final judgment. That is a correct statement of law, but it relates to claim preclusion,[2] and

---

[2] In *Gjellum*, the plaintiff appealed an employment suspension to the Jefferson County Personnel Board, lost, and then appealed to the Circuit Court of Jefferson County, which affirmed the decision of the Board. The plaintiff then filed a Section

has nothing to do with law of the case. *Gjellum* does not even mention the law of the case doctrine. However, TVA nevertheless argued immediately after the citation to *Gjellum* that "those rulings are still the law of the case in the case in which the rulings were made," a statement that is not supported by *Gjellum* at all.

Contrary to TVA's argument, the Court's error is not cured by ND's filing an offer of proof. Rather, the offer of proof process should not have had to occur in the first place because the evidence should not have been excluded from the trial. The Court's premature decision prejudiced ND not only because it allowed the Court to proceed with its erroneous interpretation of the substantive law, but also because it prevented ND from presenting factual evidence and legal arguments dispositive of the outcome of the case. In *Proctor v. Fluor Enterprises, Inc.*, 494 F.3d 1337, 1352-55 (11th Cir. 2007), the Eleventh Circuit ordered a new trial after the district court erroneously precluded evidence relating to the borrowed servant defense, reasoning that the erroneous exclusion of the defense prevented the consideration of dispositive matters that substantially prejudiced the defendant. The *Proctor* court found prejudice notwithstanding the defendant's filing of an offer of proof because the interlocutory order barring the evidence was error. Those same circumstances exist in the instant case. ND was prejudiced because the Court not only excluded relevant

---

1983 action in federal court, and the Eleventh Circuit affirmed dismissal of the claim, finding that it was barred by claim preclusion.

4

and dispositive evidence, but also made adverse credibility findings and determinations based on its prior erroneous conclusions, which were incorporated into the Court's final judgment.

This error further prejudiced ND because it prevented ND from presenting evidence at trial that would have given the Court a basis to change its prior erroneous summary judgment findings and conclusions. Instead, the Court made findings of facts and conclusions of law regarding these issues not based on the evidence before it at trial, but rather on the evidence presented at summary judgment. This prejudice is magnified by the difference in the standard of review at the summary judgment stage (viewing the evidence in the light most favorable to the non-movant) compared to the standard of review at trial. In *Fidelity & Deposit Co. of Maryland v. Tom Murphy Construction. Co.*, 674 F.2d 880 (11th Cir. 1982), the Eleventh Circuit found that a new trial was warranted, despite the occurrence of a proffer, not only because the Court missed the law, but also because the evidence presented at trial was insufficient to allow for the resolution of factual matters that would have influenced the resolution of the case. *Id.* at 882-88.

The Court erred similarly here. The offer of proof process did not cure the error or the prejudice, as TVA suggests. *See Proctor*, 494 F.3d at 1352-55; *see also Allen v. Montgomery Cty., Ala.*, 788 F.2d 1485, 1487-90 (11th Cir. 1986).

Accordingly, the Court should grant ND's motion for a new trial to allow for the admission of all relevant and dispositive evidence.

### B. The Court erred in its application of the maxim that parties are charged with knowledge of the law.

TVA's argument that if ND's position that TVA is also charged with knowledge of the law is accepted, it would mean that ND also breached the best-efforts clause, is meritless. First, ND's position has consistently been that the Court was in error regarding its application of the "knowledge of the law" finding, both with respect to the substance of the Court's conclusion regarding what the law is and the timing of the parties' awareness (actual or constructive) of that conclusion. The Court itself described the question as a "matter of first impression" – *i.e.*, "Could TVA lawfully convey ownership of the Bellefonte property to Nuclear Development before the Nuclear Regulatory Commission (NRC) approved the transfer of the Construction Permits from TVA to Nuclear Development?" (Doc. 165 at p. 1-2) When the Court found in its interlocutory, non-final summary judgment denial order that TVA could not lawfully convey Bellefonte under such circumstances, it was, by the Court's own admission, the first time any such "law" existed. Even if the Court's legal conclusion was correct, which ND disputes, the parties could not have knowledge of it before it existed.

But regardless of whether a party can be charged with knowledge of a "law" that never before existed, ND submits that its warranty and representation that NRC

6

approval was not required was true, which was certainly consistent with ND's knowledge of the law existing at the time and shared by TVA's identical warranty and representation. Therefore, ND did not breach the best-efforts clause by not alerting TVA that a warranty it believed to be true was false. In contrast, TVA did breach the best-efforts clause by not alerting ND that it believed its warranty to be false. Further, given that TVA is trying to negate and avoid its obligations under the Agreement, TVA suffered no prejudice by ND's alleged failure to notify TVA that its warranty was false. Rather, ND exerted its best efforts to enforce the Agreement and perform the intentions of the parties, and ND was materially prejudiced by TVA's failure to notify ND that TVA believed the warranty was false. TVA did not suffer any damage or prejudice because it accomplished its goal of eviscerating the Agreement through its concealment of a false warranty and representation.

TVA also asserts that ND's argument fails because ND "overlooks the difference between an abstract knowledge of the law and a concrete concern that the closing could not occur." However, neither the Court nor TVA have cited any authority to support the existence or applicability of this purported distinction. By expressly warranting and representing in Section 7(a)(vii) of the Agreement that NRC approval was not required to close in order to induce ND to enter the Agreement, TVA had already spoken and was under a duty to speak again once it became concerned that the warranty may be false. After all, at stake was *the most*

7

*critical* obligation of TVA under the Agreement – *i.e.,* whether TVA was going to close the transaction as it was obligated to do under the Agreement terms as written. TVA's Chris Chandler testified that in the summer of 2018 his specific concern was, "*I don't think we can sell it. I don't think we can proceed to closing if the NRC has not approved the license transfer.*" (Tr. 827.) How can that be any more concrete? How can that be any more particularized? ND's reliance on TVA's obligation to convey the plant at the contractually scheduled closing in November 2018 could not have been any more particularized, and based on Chandler's testimony, TVA's realization that it would not or may not happen was certainly not an abstract proposition. It was as real as the tens of millions of dollars already spent by ND to procure the Bellefonte site.

Further, this generalized/particularized theory makes even less sense when viewed in the context of the Court's finding that the parties were charged with knowledge of the law. Whether TVA's concern was "generalized" or "particularized" should make no difference regarding TVA's obligations under the best-efforts and cooperation clauses to share this critical concern with ND. TVA sat on the concern for months, attempting to excuse that delay because TVA eventually relayed the concern once it supposedly became "particularized." However, that does not explain why TVA chose not to research its alleged concern between June 2018 and November 2018, and it completely ignores the evidence that in October 2018 –

just prior to the supposed maturation of TVA's "particularized" concern – ND made its presentation to TVA's biggest customer, Memphis, which enraged TVA's CEO Bill Johnson.

The Court's use of the generalized/particularized dichotomy has no basis at law, and it is particularly inapplicable under the facts of this case given Chandler's admission of a very particularized, concrete concern that the closing could not occur, especially where the obligation to close was *the* most important obligation of TVA under the Agreement. For TVA not to share this concern with ND until it was too late to rectify it prior to closing was clear evidence of TVA's breach of its best-efforts and cooperation obligations, and ND is entitled to a new trial on these issues.

      **C.**    **TVA's September 10, 2021 letter to the NRC is relevant to TVA's bad faith and lack of best efforts, and the Court should reopen the record to admit it.**

The Court should reopen the record to admit TVA's September 10, 2021 letter. The letter is relevant to TVA's lack of good faith and "whether TVA satisfied its obligation to exercise best efforts in the lead up to the closing date," an issue that TVA itself describes as "key" (Doc. 265, p. 10). Contrary to TVA's assertion otherwise, ND's point is that TVA's effort to terminate the permits immediately after judgment is further evidence of the pretextual nature of TVA's arguments about the need for NRC regulation of Bellefonte in order to protect the public, and that TVA thereby breached its obligations of cooperation and best efforts.

The cases cited by TVA to argue that neither Rule 52(c) nor Rule 59 can be used to admit evidence that did not exist at the time of the trial are distinguishable. The movants in those cases created new evidence to try to correct deficiencies in their trial evidence as noted in the trial court's findings of fact. *See Baucom v. Sisco Stevedoring, LLC*, 2008 WL 2428930, *3-5 (S.D. Ala. June 12, 2008); *Columbia Gas Transmission, LLC v. Grove Ave. Developers, Inc.*, 2019 WL 8108061, *1 (E.D. Va. March 21, 2019); *IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp.*, 1993 WL 288266, *2-7 (S.D.N.Y. July 23, 1993). In contrast, TVA's September 10, 2021 letter was not created by ND at all (much less to correct a deficiency in ND's trial evidence as noted in the Court's order), but rather it was created by TVA and provides additional evidence to support ND's positions at trial that TVA's NRC regulatory authority arguments were pretextual, that TVA failed to exercise best efforts and that TVA acted in bad faith. *See Chilson v. Metro. Transit Auth.*, 796 F.2d 69 (5th Cir. 1986) (finding district court in error for deciding as a matter of law that an overpayment existing at the time of trial revealed by an audit conducted after the trial was not newly discovered evidence).

## Conclusion

If ND's Motion to Alter or Amend the Judgment is not granted, then the Court should order a new trial, reopen the record to take additional evidence and/or amend its findings of fact and conclusions of law, as set forth in ND's original brief and this

reply. Alternatively, the Court should enter judgment awarding ND the full amount of damages proven at trial.

Respectfully submitted on this 27th day of October, 2021.

        /s/ Caine O'Rear III
        CAINE O'REAR III   (OREAC6985)
        J. CRAIG CAMPBELL  (CAMPJ7981)
        HAND ARENDALL HARRISON SALE LLC
        P. O. Box 123
        Mobile, AL 36601
        (251) 432-5511
        Fax: (251) 694-6375
        corear@handfirm.com
        ccampbell@handfirm.com

        E. SHANE BLACK (BLACE7644)
        HAND ARENDALL HARRISON SALE LLC
        102 S. Jefferson Street
        Athens, AL 35611
        (256) 232-0202
        sblack@handfirm.com

        **ATTORNEYS FOR PLAINTIFF**

### CERTIFICATE OF SERVICE

I do hereby certify that, on October 27, 2021, I filed the foregoing pleading with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Matthew H. Lembke, Esq.
mlembke@bradley.com

David D. Ayliffe, Esq.
ddayliffe@tva.gov

        /s/ Caine O'Rear III