FILED

2022 Jul-18  AM 10:57
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| **NUCLEAR DEVELOPMENT LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:18-cv-1983-LCB** |
| | ) | |
| **TENNESSEE VALLEY** | ) | |
| **AUTHORITY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER

Before the Court are the Parties' post–trial motions. Plaintiff Nuclear Development, LLC asks the Court to amend its Final Judgment and award it specific performance or grant it a new trial. (Doc. 254; Doc. 260). Defendant Tennessee Valley Authority opposes Nuclear Development's motions (Doc. 264; Doc. 265), asks the Court to vacate its earlier Order requiring the Parties to abide by a joint stipulation (Doc. 25), and to amend its Final Judgment, changing the pre– and post–judgment interest rates to 6%. (Doc. 254).

### LEGAL STANDARDS

### I.   NEW TRIAL

Rule 59(a)(1)(B) of the Federal Rules of Civil Procedure provides that a court may "grant a new trial on all or some of the issues–and to any party–as follows: . . . for any reason for which a rehearing has heretofore been granted in a suit in equity

in federal court." "Further, ... [a]fter a nonjury trial, the court may, on motion for a new trial, open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). "A motion for new trial is left to the discretion of the trial court." *McCay v. Drummond Co., Inc*., 2012 WL 13089021, at *2 (N.D. Ala. Apr. 6, 2012) (first citing *Lambert v. Fulton Cty.*, 253 F.3d 588, 595 (11th Cir. 2001) and then citing *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 562 (11th Cir. 1987)).

## II.   MOTION TO ALTER OR AMEND

"A post-judgment motion may be treated as made pursuant to either Fed. R. Civ. P. 59 or 60—regardless of how the motion is styled by the movant[.]" *Mays v. U.S. Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997). Such motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008). Nor should a motion to reconsider be used to set forth new theories of law. *Mays*, 122 F.3d at 36.   "Simply put, a party may move for reconsideration only when one of the following has occurred: (1) an intervening change in controlling law, (2) the availability of new evidence, or (3) the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp.2d 1218,1247 (S.D. Ala. 2008) (cleaned up).

DISCUSSION

**I.      TVA's Motion to Vacate is granted. The Parties need not continue to abide by the Court's Pre–Trial Order.**

On December 26, 2018, the Parties stipulated to (and the Court entered an Order requiring) the following: (1) TVA would give five days' notice to the Court and Nuclear Development before it requested termination of the Bellefonte's Construction Permits; and (2) TVA would give the Court and Nuclear Development five days' written notice before it sold Bellefonte. (Doc. 17 at 1–2). These Stipulations were made, and the Order entered, in direct relation to Nuclear Development's request for a preliminary injunction. (Doc. 3). Now that Final Judgment has been entered (Doc. 247) and Nuclear Development's request for a preliminary injunction has been denied (Doc. 246 at 35), TVA asks the Court to vacate that Order. (Doc. 250 at 2). Nuclear Development opposition depends largely on the success of its post–trial Motions (Doc. 258). For the reasons outlined below, those Motions are unavailing. And the remaining reasons Nuclear Development offer for denying the Order aren't persuasive for the reasons TVA gave in its Reply. (*See* Doc. 262 at 2–3). Thus, the Court's Order holding the Parties to their Stipulations (Doc. 18) is vacated.

3

**II.     TVA's Motion to Alter / Amend is Granted. The Purchase and Sales Agreement's plain language set the pre– and post–judgment interest rates for any court proceeding.**

Federal law permits interest on any money judgment in a civil case recovered in a district court. 28 U.S.C. § 1961(a). And parties can set their own pre– and post–interest rates by express agreement. *See Discrete Wireless, Inc. v. Coleman Techs., Inc.*, 422 Fed. Appx. 777, 789 (11th Cir. 2011) (citing *Owens v. McGree 7 Oxford*, 238 Ga. App. 497 (Ga. Ct. App. 1999) and noting that pre–judgment interest was available where contract expressly set the interest rate); *Walker v. Life Insurance Company of North* America, 2021 WL 2982108, at *2 (N.D. Ala. July 15, 2021); *Arnold v. State Farm Fire & Cas. Co.*, 2017 U.S. Dist. LEXIS 187841, at *5 (S.D. Ala. November 14, 2017) (acknowledging validity of pre–judgment interest rate embedded in the parties' contract); *GEBAM, Inc. v. Inv. Realty Series I, LLC*, at *2– 3 (N.D. Ga. June 14, 2012) (recognizing parties can set pre–judgment interest rate). These agreements must be clear, unambiguous, and unequivocal. *Walker*, 2021 WL 2982108, at *3.

Section 33 of the Parties' Purchase and Sales Agreement ("PSA") provides: "With respect to any court proceeding between the Parties, the non-prevailing Party shall pay the prevailing Party (i) all court costs, and (ii) pre– and post–judgment interest at the rate of six percent (6%) per annum on the amount awarded from the date of the applicable breach until paid." (Doc. 249-1 at 20).

TVA asks the Court to amend its Final Judgment to adjust pre–judgment interest from 7.5% per annum to 6% per annum and to set post–judgment interest at 6%. (Doc. 254 at 2–4). TVA maintains this is proper because Section 33 of the PSA requires it in clear, express, and unequivocal language. (Doc. 249-1 at 12). Nuclear Development argues that the question of interest lies solely in the Court's discretion, that the cases TVA relies upon for its request are inapposite, and the Court shouldn't impose the agreed–upon rates because it found no breach of contract. (Doc 261 at 1–2).

Nuclear Development's first contention is unpersuasive. As noted above, parties are free to set their own rates via express agreement. And unless successfully challenged, a presiding court should apply an agreed–upon rate. The Court believes it would abuse its discretion by not applying these rates. And Nuclear Development hasn't persuaded the Court that these rates shouldn't apply. Nuclear Development's second contention is equally unavailing. As noted in TVA's Reply (Doc. 263 at 2), Nuclear Development doesn't explain why the inapposite procedural posture of the cases TVA relies upon precludes the Court from amending the Final Judgment to reflect the PSA's rates. And the Court hasn't found any reason to disagree with the black letter principle cabined in those authorities. Finally, the Court disagrees with Nuclear Development that the PSA's rates are inapplicable because the Court didn't find that TVA breached the agreement. (Doc. 261 at 2). The PSA's plain language

defeats this argument. Section 33 doesn't require courts to enforce this language exclusively in the event of breach. Rather, the section requires, in *any* court proceeding, that the loser pay these rates of pre– and post–judgment interest. Accordingly, TVA's Motion is granted.

The Court further notes for the record that it bears the responsibility for failing to notice and apply the PSA's language in this instance.  The Court should've applied the interest rate set in the PSA in its Final Judgment. The Parties shouldn't have had to come back and seek this correction by post trial motion.

### III.   Nuclear Development's Motion for New Trial is denied. The Court's decision to preclude evidence at trial wasn't improper.

Nuclear Development contends it deserves a new trial because Court's Order preventing it from presenting evidence on certain matters at trial substantially prejudiced it. (Doc. 260 at 4–5). It also argues that the Court's Order is founded on a misapplication of the law of the case doctrine. (*See* Doc. 260 at 5–6; *id.* at 3 (incorporating Doc. 174; Doc. 221; Doc. 222)). Nuclear Development further contends that, to the extent the Court relied on its earlier findings denying summary judgment in its findings of fact and conclusions of law, the Court erred again. (Doc. 260 at 9–10). Finally, Nuclear Development argues that, to the extent TVA was charged with full knowledge of the law, TVA violated Section 9(a) of the PSA and asks the Court to reopen the case to admit a letter into evidence, which, Nuclear

Development contends, shows that TVA used the Construction Permits as a pretext to prevent the Bellefonte sale. *Id*. at 12–15.

### A. Nuclear Development's law of the case argument is unavailing.

Before turning to the law of the case doctrine, the Court believes it useful to examine some previous rulings from this case and show how those decisions resulted in the exclusion of evidence that Nuclear Development believes the Court should've considered.

On April 1, 2021, the Court denied the Parties' cross Motions for Summary Judgment. (Doc. 165). There, the Court found that federal law governed the PSA's interpretation. (Doc. 165 at 25). In accord with principles of contract interpretation, the Court found that Section 6(a) of the PSA required, "with univocal clarity that closing was predicated on the condition that no law, statute, rule, regulation, or permit would otherwise prohibit or make illegal the consummate of the Bellefonte sale." (Doc. 165 at 26) (cleaned up). Therefore, "under the clear language of the condition, if it would have been unlawful to close without the NRC's approval of the Construction Permits' transfer to Nuclear Development, then the condition would not have been satisfied." *Id*. at 27. As TVA notes in Opposition, these legal conclusions foreclosed any presentation of parol evidence which could've evinced the Parties' contrary intent and rendered that evidence irrelevant. (Doc. 265 at 2).

Thereafter, the Court found as a matter of law that §101 of the Atomic Energy Act and the Nuclear Regulatory Commission's regulations required the NRC to approve the Bellefonte Construction Permits' transfer before TVA could legally sell the Site. This is because Bellefonte qualified as a utilization facility. (Doc. 165 at 36–39, 41–45). As noted in the Order,

> A plant that might not otherwise be considered a utilization facility will nevertheless be treated as one by the NRC as long as it is subject to a valid Section 103–issued license., And this is the ownership of a plant site tethered to the NRC's permitting authority; where there is a valid NRC–issued license, transfer of ownership required NRC approval. This outcome is dictated by far more than policy statements: the limitation on the transferability of site ownership is firmly established by NRC precedent. In a decision by the Commission itself, the NRC proclaimed that any transfer of ownership would require Commission approval.

*Id*. at 46. Consistent with these conclusions, the Court excluded four categories of evidence from trial. (Doc. 175). They included evidence of: (a) The Nuclear Regulatory Commission's approval of the Construction Permits' transfer was or was not a condition to closing; (b) Transfer of the Bellefonte site would or would not have violated the terms of the Construction Permits; (c) Transfer of the Bellefonte site would or would not have violated Section 101 of the Atomic Energy Act and its implementing regulations; and (d) Whether TVA should or should not be equitably estopped from avoiding its contractual obligations (Doc. 175 at 1–2)

At a pre–trial conference following the Summary Judgment Order, the Court heard argument from the Parties on the law of the case issue and the Order precluding

evidence from the categories listed above. (Doc. 179 at 4–6, 8–12, 21, 24, 38).  When

Nuclear Development asked the Court to reconsider its exclusionary ruling, the

Court stated:

> If you're here to present me today with, Judge, here's why you're
> wrong, and you had a legitimate issue where I missed the law, then I
> am wide open to hearing that. Short of that, though, I'm going to need
> a really good reason to prolong this trial basically to let you try a motion
> to reconsider what I've already decided is the law at trial. So that's just
> my thoughts. I don't say that to cut you off. I really say that to help you
> focus your argument into what I need to hear.

(Doc. 179 at 21) (cleaned up). At trial, the Court again considered Nuclear

Development's position, excluded the evidence Nuclear Development sought to

introduce, and permitted Nuclear Development to submit its offers of proof.

"Law-of-the-case rules have developed to maintain consistency and avoid

reconsideration of matters once decided during the course of a single lawsuit." 18B

WRIGHT & MILLER FED. PRAC. & PROC. JURIS. § 4478 Law of the Case (3d ed.). "As

rules that govern within a single action, they do not involve preclusion by final

judgment; instead, they regulate judicial affairs before final judgment." *Id*. "Legions

of cases, both in trial courts and appellate courts, illustrate law-of-the-case refusals

to reconsider matters once resolved in a continuing proceeding." *Id*.

This Court has previously stated that

> under the doctrine of the law of the case, whatever is once established
> between the same parties in the same case continues to be the law of
> that case, whether or not correct on general principles, so long as the

facts on which the decision was predicated continue to be the facts of the case.

*Com. Union Ins. Co. v. SEPCO Corp.*, 300 F. Supp. 2d 1198, 1201 (N.D. Ala. 2004) cleaned up). This Court has also noted the reluctance with which it should revisit prior rulings in accord with the law of the case doctrine:

> An exception to the law of the case doctrine allows a court to revisit prior decisions of its own . . . in any circumstance, although as a rule court should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice. This exception to the doctrine applies to legal errors.  Stated another way, in a close case, a court must defer to the legal conclusion of a coordinate court in the same case; only when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling. Thus, courts must rarely invoke this exception.

*Head v. Baisden*, 2017 WL 5197033, at *8 (N.D. Ala. June 29, 2017), *report and recommendation adopted*, 2017 WL 5195875 (N.D. Ala. Nov. 9, 2017) (cleaned up). On these principles, the Court concludes its Summary Judgment Order established the law of the case. Specifically, the law of the case included: (1) as a matter of law, Section 6(a) of the PSA established an express condition precedent to closing on the Bellefonte deal; (2) the NRC had to approve the transfer of the Construction Permits before TVA could lawfully sell Bellefonte; and (3) based on that express condition precedent, the Atomic Energy Act, and its enabling regulations' requirements, the Court couldn't consider Nuclear Development's parol evidence.

Nuclear Development says that can't be, citing *Hall v. Thomas*, 753 F.Supp.2d 1113 (N.D. Ala. 2010). *Hall*, Nuclear Development contends, shows the Court's Summary Judgment Order was interlocutory and not the law of the case. The Court disagrees. *Hall's* procedural history is, as noted in that decision, "torturous." *Hall*, 753 F.Supp.2d at 1120. Briefly, the court denied the defendant's preliminary motions to exclude an expert and for summary judgment early in the case. Following a protracted discovery period, *Hall* at 1122–28, the court granted the defendant's renewed motions for exclusion and summary judgment. *Hall*, at 1143–44. Beating–back the plaintiff's protestations that the Court's earlier denials amounted to the law of the case, the court stated those denials didn't set the law of the case because: (1) the defendant's earlier motions were explicitly preliminary in nature; (2) both were filed three weeks before the excluded expert's deposition was scheduled to be taken and discovery closed; and (3) the motions were summarily decided in a three–sentence order. *Id*. at 1144. That isn't the case here.

First, the Parties' Summary Judgment Motions weren't preliminary or filed early in this case. They contained fully–formed, substantive arguments founded in the law and upon evidence disclosed in discovery. Second, and relatedly, those Summary Judgment Motions weren't filed before discovery closed. After several extensions, discovery in this case closed on August 26, 2020. (Doc. 66). The Motions came one month later, on the deadline contained in the final order extending

discovery. (*See id*.; Doc. 70; Doc. 74). Finally, the Court didn't summarily deny those Motions. The Court reached substantive legal conclusions after engaging in painstaking examination. And, as noted above, the Court heard and re–heard Nuclear Development's contentions, found them unavailing, and received Nuclear Development's Offers of Proof.

The Court also finds the authorities Nuclear Development relies on to show that the Court's "improper exclusion of evidence" substantially prejudiced it unpersuasive. (Doc. 250 at 9). For instance, the ultimate issue presented in *Proctor v. Cluor Enterprises, Inc*., 494 F.3d 1337 (11th Cir. 2007) was more nuanced than the "district court's decision to exclude evidence of the defendant's borrowed servant defense at trial based on an erroneous interlocutory decision." (Doc. 250 at 8). Nor did the purported interlocutory nature of that decision (Doc. 250 at 9) factor into the Eleventh Circuit's decision to reverse the district court. Rather, the Eleventh Circuit held that the district court wrongly found that the appellant failed to successfully plead an affirmative defense. *Proctor,* 494 F.3d at 1346, 1350. Thereafter, the Eleventh Circuit found that the preclusion of evidence based on that defense affected the defendant's substantial rights warranting a new trial. *Id*. at 1354–55. There's no issue like that before the Court. Accordingly, Nuclear Development's Motion on these grounds is denied.

**B. Nuclear Development's equitable estoppel argument is unavailing; its positions show that any misrepresentation was legal.**

Equitable estoppel is appropriate where:

(1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe the party asserting the estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation.

*Dawkins v. Fulton Cty. Gov't*, 733 F.3d 1084, 1089 (11th Cir. 2013).

As the Court understands it, Nuclear Development's estoppel argument is as follows: the Court found as a matter of law that TVA couldn't sell Bellefonte to Nuclear Development without NRC approval (Doc. 260 at 9); this precluded Nuclear Development from presenting evidence on equitable estoppel at trial *id*.; the Court charged the Parties with the knowledge of the law and found that TVA didn't breach Section 9 of the Parties' PSA (*id*. at 10); and the Court also found that TVA didn't violate Section 7 of the PSA (*id*. at 10–11). Nuclear Development contends these penultimate and ultimate conclusions are inconsistent given the Court charged TVA with knowledge of the law. *Id*. at 11.

However, TVA's purported factual misrepresentations aren't factual, they're legal. First, Nuclear Development charges that TVA represented and warranted per Section 7(a) of the PSA that "no authorization consent, or approval or other order or action of or filing with any Governmental Authority is required for the execution

13

and delivery by the TVA of this Agreement or the consummation by the TVA of the transaction contemplated hereby." (Doc. 260 at 10) (quoting Doc. 249-1 at 8). But these representations and warranties relate directly to the law, not any *fact* regarding closing. Put differently, whether further legal approval was required to sell Bellefonte concerned legal substance and process. Whether TVA warranted or represented contrariwise didn't matter because the Parties were charged with the knowledge of the law. Accordingly, this doesn't meet the first element necessary to invoke equitable estoppel. Nuclear Development's second contention–that TVA's concerns regarding Bellefonte's sale–again amount to (if there were any at all) misrepresentations about the law. (Doc. 11 ta 17). This is clear given the fact that the concerns reported in June 2018 related to legal process.[1]

### C. Nuclear Development's request to re–open evidence and admit the NRC letter is unavailing

Nuclear Development asks the Court to open the Final Judgment to take additional evidence and amend its findings of fact and conclusions of law in accord with that evidence under Rule 59(a), and to the extent applicable, make findings of fact and conclusions of law in accord with Rule 52(b) and (c). The only evidence Nuclear Development offers with particularity is a letter TVA submitted to the NRC

---

[1] The Court notes that TVA's contention that Nuclear Development failed to present this argument before the Court's entry of Final Judgment falls flat. (Doc. 265 at 7). Nuclear Development raised this issue in its initial Motion to Reconsider on June 9, 2021, (Doc. 230 at 13), which the Court denied. (Doc. 246).

*after* the Court entered the Final Judgment in this matter. (Doc. 260 at 11 – 13). As the Court understands it, Nuclear Development asks the Court to grant it a new trial or amend its Findings of Fact and Conclusions of Law[2] based on newly discovered evidence.

> As a general rule, a motion for new trial can be granted on the basis of newly discovered evidence only where all of the following criteria are satisfied: (1) the evidence must be newly discovered since the trial; (2) due diligence on the part of the movant to discover the new evidence must be shown; (3) the evidence must not be merely cumulative or impeaching; (4) the evidence must be material; and (5) the evidence must be such that a new trial would probably produce a new result.

*Baucom v. Sisco Stevedoring, LLC*, 2008 WL 2428930, at \*4 (S.D. Ala. June 12, 2008) (quoting *Toole v. Baxter Healthcare Corp.,* 235 F.3d 1307, 1316 (11th Cir. 2000)) (cleaned up). In addition to those criteria, precedent requires that evidence will only be considered newly discovered for purposes of a motion for new trial if it was "in existence at the time of trial." *Id*. (quoting *N.L.R.B. v. Jacob E. Decker and Sons*, 569 F.2d 357, 364 (5th Cir. 1978). It's undisputed that the letter hadn't been written prior to trial. Therefore, Nuclear Development's request must be denied.

## IV.    Nuclear Development's request for a new trial is denied.

Finally, Nuclear development asks, generally, for a new trial based on the Court's decision that TVA didn't breach the PSA. (Doc. 260 at 15). Considering the

---

[2] TVA frames the argument this way in its Opposition and Nuclear Development hasn't disputed that framing.

Summary Judgment Order, findings of fact and conclusions of law, and the analysis contained in this Order, the Court denies Nuclear Development's request.

**V.   Nuclear Development's Motion to Alter / Amend is denied. It relies on the same arguments and grounds in its Motion for New Trial.**

Nuclear Development requests, alternative a new trial, that the Court alter or amend its Final Judgment. (Doc. 259). Nuclear Development bases its request, however, on the same grounds it advanced at summary judgment and in its new trial motion. (*See* Doc. 259 at 3–6) (condition precedent argument); (*id*. at 6–7) (legality as a condition precedent); (*id*. at 8–9) (utilization facility definition argument). The former points have been addressed supra. And the final point doesn't satisfy Nuclear Development's burden under Rule 59. Accordingly, Nuclear Development's Motion is denied.

## CONCLUSION

1. TVA's Motion to Vacate the Order holding the Parties to their Joint Stipulations (Doc. 250) is Granted;

2. TVA's Motion to Alter or Amend the Final Judgment (Doc. 254) is Granted

3. Nuclear Development's Motion for New Trial (Doc. 260) is Denied

4. Nuclear Development's Motion to Alter / Amend (Doc. 259) is Denied.

5. An Amended Final Judgment reflecting the correct pre– and post– judgment interest rates will be entered contemporaneously with this Order.

**DONE** and **ORDERED** July 18, 2022.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE